IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JANE DOE I AND JOHN DOE, | ) | |
| Individually and as Next Friends of | ) | |
| JANE DOE II, a Minor, | ) | |
| | ) | CIVIL ACTION |
| Plaintiffs, | ) | FILE NO. 1:23-cv-00799 |
| | ) | |
| v. | ) | |
| | ) | |
| | | |
| FULTON COUNTY SCHOOLS; | ) | |
| FULTON ACADEMY OF SCIENCE | ) | |
| AND TECHNOLOGY; | ) | |
| FOUNDING FOURTEEN, INC; | ) | |
| DR. MIKE LOONEY, | ) | |
| In His Individual Capacity; | ) | |
| DR. CINDY LOE, In Her Individual | ) | |
| Capacity; DR. JEFF ROSE, In His | ) | |
| Individual Capacity ANDREA COOPER | ) | |
| GATEWOOD, In Her Individual Capacity; | ) | |
| ANNETTE HIGGINS, In Her Individual | ) | |
| Capacity; CHRISTOPHER | ) | |
| MAHONEY, In His Individual | ) | |
| Capacity; ASHLEY STINGER, In Her | ) | |
| Individual Capacity; STAN J. | ) | |
| BEINER, In His Individual Capacity; | ) | |
| PETER EPSTEIN, In His Individual | ) | |
| Capacity; JUNE ERICKSON, In Her | ) | |
| Individual Capacity; and JOSEPH AKPAN, | ) | |
| In His Individual Capacity | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

COME NOW Plaintiffs in the above-styled action and file this Complaint, as follows:

## INTRODUCTION

1.

Robert Allen Vandel ("Vandel") was hired as a teacher at the Fulton Academy of Science and Technology ("FAST") charter school despite a documented record of sexually harassing and assaulting minor female students in his care. According to Vandel's file with the Georgia Professional Standards Commission ("GPSC"), at least seven (7) students and fourteen (14) teachers presented written complaints against Vandel for grooming, sexual harassment, and sexual assault prior to his hiring at FAST.[1]   While employed at FAST, Vandel's misconduct continued, and he was reported on at least six (6) different occasions by teachers, students, and a parent for his continuing practice of grooming, sexual harassment, and sexual assault. Vandel's ongoing misconduct at FAST was remarkable in its similarity to and continuity with his well-documented prior misconduct at other schools. Even though FAST and Defendants were aware of these reports, they refused to take

---

[1] In addition, the GPSC had disciplined Vandel for "misrepresentation or falsification" for failing to disclose that he had been convicted for writing bad checks, and been charged with sexual battery and simple battery. Moreover, GPSC had suspended his teacher's certification more than once (for violation of Code of Ethics of Educators Standard 2 ("Abuse of Students") for sexually harassing behavior and Standard 10 for conduct impairing his ability to function professionally and conduct detrimental to the health, welfare, discipline, and morals of his students.

2

action to appropriately investigate Vandel's behavior, separate him from minor female students, or terminate his employment.  Because of the Defendants' deliberate indifference to Vandel's misconduct, the misconduct continued.  As a direct result of Defendants' indifference and these reckless breakdowns of supervision, Vandel was able to isolate Jane Doe II, then a 13-year-old 7th grade student at FAST, groom her, sexually harass her, sexually assault her, and rape her.

2.

Vandel, a sexual predator of minors, was never properly supervised and consequently Minor Jane Doe II, formerly a 7th grader at Fulton Academy of Science and Technology ("FAST") charter school, was groomed, sexually harassed, sexually assaulted, and raped during the Second Semester of the 2019-2020 school year by Vandel, a teacher employed by Fulton County Schools at FAST.

3.

Vandel's history of sexual misconduct, sexual harassment, grooming, and sexual violence against his students was known by Fulton County Schools ("FCS") and FAST.  Yet, Annette Higgins, Principal of FAST hired Vandel to work at the school.

4.

While he was a teacher at FAST, Vandel sexual harassed, sexually assaulted, had inappropriate physical contact with students and staff members, and made

inappropriate sexual comments to students and staff members, which was known by Principal Higgins, Principal Stinger, Principal Mahoney, Principal Beiner, Assistant Principal Epstein, Chair of the Board of FAST Joseph Akpan, and board member of FAST June Erickson.  Yet, none of these individuals along with FFI, FAST, and FCS as their employers ever acted to take appropriate steps to protect students like Jane Doe II from Vandel.

5.

The sexual assault of Jane Doe II by Vandel was the direct consequence of the willful refusal to act to protect students like Jane Doe II by the school system and school, its leaders, and its employees and by the Georgia corporation Founding Fourteen, Inc. (collectively, the Defendants) as demonstrated by the following.  First, sexual harassment, assault, and rape are a systemic problem in this school and school district.   Second, Vandel had an established history, known to Defendants, of inappropriate behavior, inappropriate physical contact, and sexual harassment and assault of students and staff at FAST.  Third, Principal Higgins hired Vandel despite the numerous complaints made against Vandel at previous institutions, other criminal, dangerous, and/or dishonest conduct by Vandel, and the clear threat that he posed to students.  Fourth, Principals Higgins, Mahoney, Stinger and Beiner allowed Vandel to continue in his employment with full access to students after being made aware of complaints of inappropriate sexual conduct involving Vandel

up to and including January 2020, in violation of clear and unambiguous policies, and state law.

6.

Plaintiffs hereby bring claims under Georgia state law and Federal law, and each and every permissible, proper, and authorized claim for damages and attorney fees, including claims under 20 U.S.C. § 1681, *et. seq.*, and 42 U.S.C. § 1983 ("Section 1983 claim"), Title IX of the Education Amendments Act of 1972 ("Title IX claim"), and state law claims against the above-named Defendants for the injuries Jane Doe II suffered as a result of Defendants' deliberate indifference leading to her sexual harassment and assault.

**PARTIES**

7.

Jane Doe I, John Doe and Jane Doe II are pseudonyms for the real parties in interest in this action. Plaintiffs are entitled to use these pseudonyms to prosecute this action because the matters involved in this action are of a highly sensitive and personal nature and the right of Plaintiffs, including their minor daughter, to privacy with respect to those matters outweigh any other interest that may exist.

8.

Plaintiffs Jane Doe I, Jane Doe II, and John Doe are citizens of the United States and are residents of Fulton County, Georgia.

9.

Plaintiffs Jane Doe I and John Doe are the parents and natural guardians of Jane Doe II.

10.

Plaintiffs Jane Doe I and John Doe are bringing this action in their individual capacity and on behalf of their daughter Jane Doe II.

11.

Jane Doe II resided in Fulton County, Georgia at all relevant times.

12.

Defendant Fulton County Schools ("FCS") is a subdivision of the State of Georgia having its principal place of business in Fulton County, Georgia.

13.

Defendant FCS may be served with process by personal service on Superintendent Dr. Mike Looney at 6201 Powers Ferry Road NW, Atlanta, GA 30339.

14.

Defendant Fulton Academy of Science and Technology ("FAST") is a charter school within the Fulton County School System having its principal place of business in Fulton County, Georgia.

15.

Defendant FAST can be served with process by personal service on Principal Mary Miller at 11365 Crabapple Road, Roswell, Georgia 30075.

16.

Defendant Founding Fourteen, Inc. ("Founding Fourteen" or "FFI") is a Georgia Nonprofit Corporation that contracted with Fulton County Schools to operate FAST. FFI was formed for the purpose of creating and operating FAST as a charter school. FFI is liable for the actions of its agents, employees, and board members through the doctrine of respondeat superior.

17.

Defendant FFI can be served through its registered agent, June Erickson, at 2265 Azalea Drive, Roswell, Georgia 30075.

18.

Defendant Dr. Mike Looney ("Looney") is the Superintendent of FCS, including FAST, and has held the position since June 2019. He is being sued in his individual capacity. Looney was responsible for instituting reasonable policies and measures designed to address sexual harassment, abuse and inappropriate contact between adult FCS employees and students. Looney failed to institute reasonable policies and measures designed to prevent sexual harassment, assault and inappropriate contact between adult FCS employees and students. Looney failed to

supervise subordinates to ensure that they were following FCS policies and procedures and executing their job duties in accordance with federal and state law. Looney also failed to provide sufficient training to school officials and employees on how to handle complaints of sexual harassment, assault and inappropriate contact between adult FCS employees and students.

19.

Defendant Looney can be served via personal service at 6201 Powers Ferry Road NW, Atlanta, Georgia 30339.

20.

Defendant Dr. Cindy Loe ("Loe") was the Interim Superintendent of FCS, including FAST, from January 1, 2019 until Looney became superintendent in June, 2019. Loe is being sued in her individual capacity.  Loe was responsible for instituting reasonable policies and measures designed to address sexual harassment, abuse and inappropriate contact between adult FCS employees and students.  Loe failed to institute reasonable policies and measures designed to prevent sexual harassment, assault and inappropriate contact between adult FCS employees and students.  Loe failed to supervise subordinates to ensure that they were following FCS policies and procedures and executing their job duties in accordance with federal and state law.  Loe also failed to provide sufficient training to school officials and employees on how to handle complaints of sexual harassment, assault and

8

inappropriate contact between adult FCS employees and students.

21.

Defendant Loe can be served via personal service 9200 Seasons Terrace, Vero Beach, FL 32963.

22.

Defendant Dr. Jeff Rose ("Rose") was the Superintendent of FCS, including FAST, from June 2016 until December 2018. He is being sued in his individual capacity. Rose was responsible for instituting reasonable policies and measures designed to address sexual harassment, abuse and inappropriate contact between adult FCS employees and students. Rose failed to institute reasonable policies and measures designed to prevent sexual harassment, assault and inappropriate contact between adult FCS employees and students. Rose failed to supervise subordinates to ensure that they were following FCS policies and procedures and executing their job duties in accordance with federal and state law. Rose also failed to provide sufficient training to school officials and employees on how to handle complaints of sexual harassment, assault and inappropriate contact between adult FCS employees and students.

23.

Defendant Rose can be served via personal service at 605 Tatum Court, # 13C, Alpharetta, GA 30022.

9

24.

Defendant Andrea Cooper Gatewood ("Gatewood") was the Charter Schools Coordinator for FCS, including FAST, at all times relevant in this Complaint. She is being sued in her individual capacity.  Gatewood was responsible for instituting reasonable policies and measures designed to address sexual harassment, abuse and inappropriate contact between adult FCS employees and students.  Gatewood failed to institute reasonable policies and measures designed to prevent sexual harassment, assault and inappropriate contact between adult FCS employees and students. Gatewood failed to supervise subordinates to ensure that they were following FCS policies and procedures and executing their job duties in accordance with federal and state law.  Gatewood also failed to provide sufficient training to school officials and employees on how to handle complaints of sexual harassment, assault and inappropriate contact between adult FCS employees and students.

25.

Defendant Gatewood can be served via personal service at 6201 Powers Ferry Road NW, Atlanta, Georgia 30339.

26.

Defendant Annette Higgins ("Higgins") was principal of FAST from the school's opening in 2016 until the end of the 2017-2018 school year.  At the start of the 2017 school year Higgins hired Vandel as a science teacher at the school.

Higgins ignored, and failed to properly investigate, Vandel's teaching history, including the multiple instances and allegations of sexual harassment and violence that tracked his entire teaching career. Higgins created and maintained a culture at FAST which discouraged teachers and students from making reports or complaints to the administration. Higgins allowed Vandel to remain at FAST, unsupervised and with no restrictions around the students of FAST. As principal of FAST, Higgins had the authority to fire, suspend, reprimand, report, and issue corrective measures to protect students.

27.

Defendant Higgins may be served via personal service at 14550 Freemanville Road, Milton, GA 30004.

28.

Defendant Christopher Mahoney ("Mahoney") was principal of FAST for the fall semester of the 2018-2019 school year. Mahoney created and maintained a culture at FAST which discouraged teachers and students from making reports or complaints to the administration. Mahoney allowed Vandel to remain at FAST, unsupervised and with no restrictions around the students of FAST. As principal of FAST, Mahoney had the authority to fire, suspend, reprimand, report, and issue corrective measures to protect students.

29.

Defendant Mahoney may be served via personal service at 124 S. Fields Circle, Chapel Hill, NC 27516.

30.

Defendant Ashley Stinger ("Stinger") was principal of FAST for the spring semester of the 2018-2019 school year. Stinger created and maintained a culture at FAST which discouraged teachers and students from making reports or complaints to the administration.  Stinger received multiple reports of sexual harassment by Vandel upon female students and staff at FAST and failed to start an investigation, report the allegations to the GPSC, or reprimand Vandel in any manner.  Stinger allowed Vandel to remain at FAST, unsupervised and with no restrictions around the students of FAST.  As principal of FAST, Stinger had the authority to fire, suspend, reprimand, report, and issue corrective measures to protect students.

31.

Defendant Stinger may be served via personal service at 4115 Three Chimneys Lane, Cumming, GA 30041.

32.

Defendant Stan Beiner ("Beiner") was principal of FAST, a position he began with the 2019-2020 school year. Beiner created and maintained a culture at FAST which discouraged teachers and students from making reports or complaints to the

administration.  Beiner received multiple reports of sexual harassment by Vandel upon female students and staff at FAST and failed to start an investigation, report the allegations to the GPSC, or reprimand Vandel in any manner.  Beiner allowed Vandel to remain at FAST, unsupervised and with no restrictions around the students of FAST. As principal of FAST, Beiner had the authority to fire, suspend, reprimand, report, and issue corrective measures to protect students.

33.

Defendant Beiner may be served via personal service at 11365 Crabapple Road, Roswell, Georgia 30075.

34.

Defendant Peter Epstein ("Epstein") was assistant principal at FAST for the middle school.  Epstein maintained a culture at FAST which discouraged teachers and students from making reports or complaints to the administration.  Epstein received multiple reports of sexual harassment by Vandel upon female students and staff at FAST and failed to start an investigation, report the allegations to the GPSC, or reprimand Vandel in any manner.  Epstein allowed Vandel to remain at FAST, unsupervised and with no restrictions around the students of FAST.

35.

Defendant Epstein may be served via personal service at 11365 Crabapple Road, Roswell, Georgia 30075.

36.

Defendant Joseph Akpan is Chair/CEO of the Board of Founding Fourteen, Inc., and Chair of the Board of FAST. Akpan failed to institute reasonable policies and measures designed to prevent sexual harassment, assault and inappropriate contact between teachers and students. Akpan failed to supervise his subordinates, including Higgins, Mahoney, Stinger, Beiner, and Epstein to ensure that they were following FAST policies and procedures and executing their job duties in accordance with federal and state law.

37.

Defendant Akpan may be served via personal service at 11365 Crabapple Rd, Roswell, Georgia 30075.

38.

Defendant June Erickson ("Erickson") is formerly the Chair/CEO of Founding Fourteen, Inc. and Chair of the board of FAST, and after leaving that role continued as a board member of both Founding Fourteen, Inc. and FAST through all relevant time periods of this complaint.  Erickson received multiple reports of sexual harassment by Vandel upon female students and staff at FAST and failed to take any actions to correct or prevent the abuse.  Erickson declined to allow an appropriate investigation and discipline of Vandel.   Erickson failed to supervise her subordinates, including Higgins, Mahoney, Stinger, Beiner, and Epstein to ensure

that they were following FAST policies and procedures and executing their job duties in accordance with federal and state law.

39.

Defendant Erickson may be served via personal service at 2265 Azalea Dr., Roswell, Georgia 30075.

## **JURISDICTION AND VENUE**

40.

This Court has original jurisdiction over Plaintiffs' Section 1983 claims because they arise under the Constitution and laws of the United States. 28 U.S.C. § 1331; U.S. Const., Amend. 14; 28 U.S.C. § 1331; U.S. Const., Amend. 14; 42 U.S.C. § 1983.

41.

This Court has original jurisdiction over Plaintiffs' Title IX claims because they arise under the Constitution and laws of the United States. 28 U.S.C. § 1331; U.S. Const., Amend. 14; 20 U.S.C. § 1681(a).

42.

This Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367.

43.

Venue is proper in the Atlanta Division of the United States District Court for

the Northern District of Georgia as a substantial part of the events and omissions

giving rise to the claims in this action occurred in Fulton County, Georgia, which is

encompassed within the Atlanta Division of the Northern District of Georgia.

## FACTUAL BACKGROUND

### Defendants had a Duty to Maintain and Foster a Safe Educational Environment for Jane Doe II and All Students at FAST

44.

Fulton County School System is an "educational program or activity receiving

federal financial assistance" within the meaning of Title IX of the Education

Amendments of 1972, 20 U.S.C. § 1681(a).

45.

FCS, by and through the Fulton County Board of Education, operated and

maintained, at all relevant times, the public-school system for school-age children

in Fulton County, Georgia.

46.

FFI petitioned the Fulton County Board of Education to create FAST as a

charter school within the FCS public-school system in 2014.

47.

FAST was created as a charter school within the FCS public-school system in

2015.

48.

FAST has been operated by Defendant FFI since its creation.

49.

The boards of FAST and FFI include the same personnel.

50.

FCS and FAST received, at all relevant times, federal funds to ensure that all students have equal educational opportunities and access to education.

51.

During the 2019-2020 school year, Jane Doe II was a student at FAST.

52.

In the Spring Semester of the 2019-2020 school year, Jane Doe II was 13 years old.

53.

While employed at FAST and FCS and under the supervision of the principals and board of FAST, Vandel engaged in criminal, sexual predatory acts against Jane Doe II and other students at FAST.  The Defendants failed to protect Jane Doe II and the other students at FAST.

54.

Defendants Looney, Loe, Rose, Gatewood, Higgins, Mahoney, Stinger, Beiner, and Epstein were, at all relevant times, "mandatory reporters" under Title

IX, FCS policies, and Georgia law.

## Vandel's History of Sexual Violence and Harassment of Female Students at Previous Schools Was Known by FCS

55.

In 2003, while employed as a teacher at Midland Middle School in Columbus, Georgia, multiple students, teachers, and parents reported inappropriate sexual behavior by Vandel to another teacher at the school.  Multiple students accused Vandel of inappropriate contact by touching their shoulders, thighs, buttocks, and hitting them with a ruler.  Additionally, Vandel was accused of inappropriate communications by using pet names for, and making sexual comments to, female students.

56.

Vandel's pattern of grooming, sexual harassment, and sexual assault at Midland Middle School included, but was not limited to, the following:

a. Grooming and creating relationships of intimacy and trust with minor female students (including using candy, favoritism, isolation, and inappropriately sexual and familiar interactions to groom young girls).

b. Giving certain students flirtatious, sexually suggestive, and inappropriate nicknames (such as "cutie pie," "flirt," "care bear," and "perv").

c. Making overtly sexually suggestive and harassing comments to students and teachers.

    d.  Touching minor female students inappropriately and sexually, including

        massaging their shoulders, touching their inner thighs, and touching their

        buttocks.

    e.  Suggesting minor female students call him outside of school hours.

    f.  Inviting minor female students to his home to pick up personal gifts, candy,

        etc., when his wife was not home.

57.

The GPSC investigated the allegations made against Vandel, and interviewed multiple students and teachers regarding their experiences with Vandel.  The GPSC investigation was publicly available.

58.

Fourteen (14) teachers expressed concerns regarding Vandel's behavior at Midland Middle School and his interactions with female students.  These concerns included:

- Teacher 1 reported an interaction between a student and Vandel where Vandel had grabbed a student's thigh, and made sexually suggestive remarks.

- Teacher 2 reported that Vandal gave a student the nickname "Cutie Pie" and gave her "back rubs."  Teacher 2 confirmed that Vandel gave or attempted to give similar "back rubs" to "a lot of the female staff

members."

- Teacher 3 reported witnessing repeated problematic interactions between Vandel and female students, including preferential treatment, wrapping his arms around female students' waists, and making sexually suggestive remarks regarding female students.

- Teacher 4 reported that Vandel made them feel very uncomfortable by the remarks he made to female students. The teacher also reported that she received unwanted back rubs from Vandel. The teacher reported that many other female teachers reported similar levels of discomfort with Vandel.

- Teacher 5 reported that a female student complained that Vandel had rubbed the student's back and made her uncomfortable.

- Teacher 6 reported that she witnessed Vandel "hit a student on the behind with a ruler."

- Teacher 7 complained of "extensive sexual harassment" by Vandel.

- Teacher 8, Teacher 9, Teacher 10 and Teacher 11 reported Vandel for making them feel uncomfortable as a result of sexually inappropriate conduct, for isolating female students for extended periods of time, for having inappropriate physical contact with female students, and for making sexually suggestive comments to students.

- Teacher 12 and Teacher 13 complained of sexually inappropriate conduct by Vandel, and Teacher 13 reported that students came to her with similar complaints about Vandel's sexually inappropriate behavior.

- Teacher 14 reported that a student told her that Vandel treated her differently than other female students, and that he would inappropriately get very physically close to her and make her feel uncomfortable.

59.

Seven (7) students at Midland Middle School reported issues with Vandel. Their reports included, but were not limited to, the following:

- Student 1 reported that, "When [Vandel] talks to me he puts his hand on my behind," that Vandel showed her preferential treatment including that he invited her to his house to pick up a Christmas present, that "[o]ne time when I was talking to [Vandel] he put his hand on my inner thigh and rubbed my thigh up and down."

- Student 2 reported that, "When he talks to me he puts his hand on my behind and makes me mad," and "one time when me and [my friend were] talking to him, he put his hand on our inner thigh and rubbed my thigh up and down," and that Vandel showed her preferential treatment

including inviting her to his house to pick up a Christmas present.

- Student 3 reported that "Mr. Vandel has touched my butt when I ask questions he will put his hand on my butt and still talk to me while holding my butt," and "[Another female student] was talking to him about her grade and he was sitting in his chair and [she] walked right up to him and he like grabbed her by her waist and pulled her to him and then he held her butt."

- Student 4 reported, "he touched my butt once," and "when I ask questions he comes over me and rubs my shoulder which makes me uncomfortable."

- Student 5 reported, "Before Christmas Mr. Vandel came by and hit me on the bottom with a ruler and my friend [and] we came back from Christmas break he smacked me on the bottom with a ruler again."

- Student 6 reported, that Mr. Vandel made explicit sexually suggestive comments to her while describing two gummy bears stuck together in a head-to-toe position, that "another time he walked around his desk and grabbed my thigh," "another day he walked behind me and grabbed me around my waist," and that "sometimes he would wink and stare at me for a long time, and even this made me feel very, very weird, and uneasy."

- Student 7 reported that Vandel made repeated inappropriate comments towards her, including calling her 'cutie' on a daily basis, and suggesting that he would date her if he was 50 years younger.

60.

Vandel was subsequently arrested and charged with four counts of sexual battery and one count of simple battery against students.

61.

Vandel resigned from Midland Middle School in the wake of his arrest and the reports of sexual harassment and assault made against him.

62.

In 2006, the GPSC released the findings of their investigation, finding the student and teacher witnesses to be credible, and finding that Vandel's defenses were not credible.

63.

An Administrative Law Judge of the Office of State Administrative Hearings determined that Vandel "committed clear violations" of the Code of Ethics for Educators Standard 2, "Abuse of Students" by "failing to maintain a professional relationship with his students and by repeatedly engaging in sexually harassing behavior through his words and actions," and Standard 10, "Professional Conduct," "by engaging in conduct that seriously impaired his ability to function professionally

in his employment position" and finding that Vandel's conduct "was detrimental to the health, welfare, discipline and morals of his students." Consequently, Vandel's teaching certificate was suspended for eighteen (18) months.

64.

After a subsequent review of the case, the GPSC reviewed the initial decision of suspension for eighteen (18) months and increased the suspension to two (2) years.

65.

These charges, investigations, orders, and suspensions were available to the Defendants, and listed on Vandel's teaching certificate record.

66.

Additionally in 2006, Vandel was also investigated and reprimanded by the GPSC for "misrepresentation or falsification" by failing to disclose and report to the GPSC that he had written bad checks and been convicted of doing so, and that he had been charged with sexual battery and simple battery.

67.

In 2019, Vandel's teacher's Certification was again suspended by GPSC for showing up at school after drinking and smelling heavily of alcohol. Several female teachers reported Vandel for this incident, which Vandel admitted.

68.

FCS and FAST policies require fingerprinting of all new hires, background checks, and a pay-for-service investigation search engine for all their hires. Defendants knew and/or should have known of Vandel's history of misconduct and discipline.

69.

Despite Vandel's documented history of grooming, sexually harassing and sexually assaulting middle school students and female teachers, prior criminal charges for crimes of dishonesty (writing bad checks, for which he was convicted and which he failed to report to GPSC as required), prior discipline for showing up at school under the influence of alcohol, findings of violations of the Code of Ethics, and multiple teaching Certificate suspensions, Defendants FCS, FAST, FFI, and Higgins hired Vandel to work as a teacher at FAST.

**Vandel's Predatory Behavior Towards Female Students and Staff Continued at FAST and was Known by Teachers, Administrators, and Members of the Founding Fourteen Board**

70.

Before Vandel's attack on Jane Doe II, FAST school officials and board members, and FFI board members had actual knowledge of multiple prior incidents involving Vandel and female students and staff at FAST.

71.

Vandel's pattern of grooming, sexual harassment, and sexual assault at FAST was almost identical to his behavior at Midland that was investigated by the GPSC and was contained within public records, including his teaching records. Vandel's continued pattern of abuse and grooming at FAST included the following:

a. Grooming and creating relationships of intimacy and trust with minor female students (including using candy, favoritism, isolation, and inappropriately sexual and familiar interactions to groom young girls).

b. Giving certain students flirtatious, sexually suggestive, and inappropriate nicknames.

c. Making overtly sexually suggestive and harassing comments to students and teachers.

d. Touching minor female students inappropriately and sexually including massaging their shoulders, touching their inner thighs, and touching their buttocks.

e. Suggesting minor female students call him outside of school hours.

f. Inviting minor female students to his home to pick up personal gifts, candy, etc., when his wife was not home.

72.

It was widely known among the teachers, administrators and staff working at

FAST, that Vandel would routinely invite individual and small groups of female students to his room during lunch breaks.  This was prohibited by school policy.

73.

Multiple female students at FAST were subjected to grooming and sexual harassment by Vandel, through Vandel showing favoritism, providing female students with additional candy, making up nicknames for female students, and through touching female students' shoulders, breasts, buttocks, and thighs.

74.

Teacher 15 was a teacher at FAST who reported concerns about Vandel to FAST.  Teacher 15's conduct and knowledge of FAST 's attitudes towards Vandel includes the following:

    a. On March 24, 2019 Teacher 15, a teacher at FAST, emailed Defendant Stinger and two members of the FFI board/FAST governing board, including Defendant Erickson, and reported "They [the Principal and administration] were aware of this man's behavior towards children and other teachers before. . . a long, long time ago."

    b. The email reported that Teacher 15 was deeply concerned that Vandel was creating situations to be alone with girls.  She pulled her own daughter out of school, and Vandel was one of the main reasons why.

c.  Teacher 15 reported that Vandel would make sexualized comments about younger teachers and how they looked in their tight jeans, etc.

d.  Vandel was sexually suggestive and inappropriate with several young female students.

e.  Teacher 15 articulated: "I have to say something."

f.  "When I went to Principal Stinger, she got mad at me.  She said she couldn't believe I'd say something like that about Vandel."  She [Stinger] shamed Teacher 15 because Teacher 15's daughter has special needs and was in the hospital, and Vandel took her a Thanksgiving meal.  The teacher said she was telling Principal Stinger so she "could keep an eye on him".  Principal Stinger replied that she was disgusted with Teacher 15.

g.  Principal Stinger told Vandel about the Teacher 15's report about him.

h.  According to Teacher 15, Vandel's inappropriate behavior kept happening.  She would see Vandel talking to and interacting with young female students in totally inappropriate ways.

i.  In a separate incident, teacher 15 encountered a female student who said that she would kill people.  Teacher 15 told the girl's mother because she was worried she would get in trouble if she did not report her. Principal Stinger became upset with Teacher 15 because she told the mother.  Teacher 15 was told not to come back.  The teacher wanted to say goodbye.

Principal Stinger said no, she could not, and in fact she owed the school money because she broke her contract.  This incident further reflected FAST's unofficial custom or policy regarding reports of misconduct, and meeting those reports with disbelief, ridicule, and punishment.

j.  Teacher 15 emailed the only school Board member with an educational background about her concerns, who the teacher was, communicated her awareness of the law and her obligation to report, and copied Principal Stinger and another Board member.  Months went by.

k.  After becoming Principal of FAST, Principal Mahoney admitted to this teacher that Vandel "should never have been hired."  Principal Mahoney admitted that he knew about Vandel previously losing his certification over having inappropriate relations with students.

l.  Teacher 15 has wondered, if they knew about Vandel's prior incidents, why didn't the administration believe her complaints regarding strikingly similar misconduct?  She explained that, even if they doubt her, there should have been a thorough, formal investigation.

m. According to Teacher 15, FAST through its administrators and board members said Teacher 15 was "being dramatic" for bringing these concerns to light.  They were very tough on her from that point forward.

n.  The FAST administration told Teacher 15 that her perspective was her fault.  They said she came from a good school district, and she did not understand the challenges of being a start-up Charter School.

o.  Teacher 15 was aware that Vandel treated one female student who was overweight very badly, telling her to shut up, telling her she was stupid, and mocking her weight.  Teacher 15 is aware that Asst. Principal Epstein thought Vandel's behavior was funny and not a cause for concern.  This reflects the unofficial custom developing around Vandel at FAST.  Teacher 15 is reports that another teacher was reported when she told a student to shut up, and she was reprimanded by FAST administrators.  But Vandel received no similar rebuke for almost identical behavior.

p.  Vandel told Teacher 15 she looked just as good as an attractive young kindergarten teacher when this teacher wore her tight jeans.  This made her very uncomfortable, and she started wearing long shirts because of Vandel's comments about her and others' bottoms looking good.

q.  Teacher 15 was concerned about Vandel's flirting and sexualized interactions with two female students in particular.  Teacher 15 observed that he seemed to flirt with young fit girls with long hair.  He seemed to have a type.

r.  Rarely has Teacher 15 had these kinds of feelings and concerns about someone's behavior.  She was alarmed.  She reported it.  And, according to this teacher, "then everyone saw what happened to me."  "There's no way anyone would go and say anything about Robert [Vandel] after they saw what happened to me."

s.  Teacher 15 reported there was a custom and practice at FAST of not following the ethics training because they viewed a Charter School as a start-up environment in which such things were not necessary.  She had to explain what a mandatory reporter was.

t.  She reported that the FAST administration "would get so, so angry with anyone who tried to improve" on this situation."  "It was one of those situations where it was acceptable behavior to not be doing the right thing."

u.  Another FAST staff member told Teacher 15 that the FAST administration had asked her to keep an eye on Vandel because they were aware of the accusations against him.  This reflected the failure of the school to follow actual sexual harassment policy in favor of unofficial custom and policy of not conducting any formal investigation, not conducting any formal review, avoiding creating written records, and being deliberately indifferent to the very real risks posed to young female students.

v. Teacher 15 believed that Fulton County hated any bad press brought on by teacher conduct, and tried to avoid creating records allowing it.  This created a "breeding ground" for bad things to happen because human resources would come after reporters.  "I've seen this happen over and over again."

w. Another teacher asked her if she thought "I'll be ok if I do" report Vandel.  Teacher 15 said she must take her commitment to the kids more seriously than the worry about what human resources will do.

x. Regarding younger teachers making complaints, "They were young and scared and they didn't want to do anything."

y. Teacher 15 observed Vandel would give girls candy and ice cream regularly.  This was against official school policy but unofficial school custom and policy knowingly allowed Vandel to do this regularly anyway.

75.

Teacher 16, a teacher at FAST, also reported Vandel for similar behavior:

a. Teacher 16 reported Vandel to the administration, after having conversations with several young female students who expressed their concerns about sexualized interactions.  For example, Vandel went behind these girls and touched their hair and tucked it behind the ear.  He would compliment and insult the girls in very personal, age-inappropriate ways

to manipulate them.

b.  Epstein would not respond and formally address the complaint.

c.  Teacher 16 made at least four (4) separate reports to the FAST administration about her concerns about Vandel's interactions with young female students (Student 8 and Student 9) and a young female teacher (Teacher 17).  She was worried that she would get in trouble for her reporting.

d.  Two (2) of Teacher 16's reports were about what she described as "sexual misconduct."

e.  Teacher 16 reported that Teacher 17 sort her out and told her that Vandel would touch and rub her shoulders and neck a lot in a way that felt very inappropriate.  Teacher 17 asked Vandel to stop.  He never stopped.  When he talked to her, he would lean in too close and violated the Teacher 17's space in an obvious and sexualized way.

f.  Teacher 16 took these concerns to Principal Stinger.  Principal Stinger refused to believe this actually happened.  Stinger said she cannot and will not do anything about it.  There would be no investigation.

g.  After saying inappropriate things to this teacher, Vandel stopped her in the hallway and told Teacher 16, "I know you won't tell anyone sweetie."

h.  Teacher 16 also reported Vandel for animal abuse.

76.

Another FAST teacher, Teacher 18, reported that Vandel would let female students in his room with no other adults present during recess.  Teacher 18 reported this to the FAST Principal at the time and the FAST Principal reacted as though Teacher 18 was in the wrong.

77.

An additional teacher, Teacher 19, reported to Principal Stinger that a co-worker, Teacher 20, became uncomfortable when Vandel called Teacher 20 "cutie."

78.

In late November or early December of 2019, two male students (Student 10 and Student 11) approached Teacher 21, a teacher at FAST, on three separate occasions to report inappropriate sexual behavior by Vandel to another female student, Student 12.

79.

Teacher 21 reached out to Student 12 and confirmed the allegations the male students made regarding Vandel's inappropriate conduct to Student 12.

80.

Vandel massaged Student 12's shoulders, had pet names for Student 12, put his hand on Student 12's back for extended periods of time, and smacked Student 12's butt with a ruler.  Student 12 described Vandel as a "touchy old man."

81.

Teacher 21 emailed Principal Beiner regarding the issues raised by Students 10, 11, and 12 and requested a meeting with Principal Beiner to discuss the complaints and issues regarding Vandel.

82.

Teacher 21 met with Principal Beiner to inform him of the sexual harassment committed by Vandel.

83.

Following this meeting, Beiner requested a meeting with Teacher 21 and Student 12, to hear directly from the student as to what she was experiencing.

84.

On or about December 2, 2019, Beiner and Epstein met with Teacher 21 and Student 12, without the knowledge or consent of Student 12's parents, to discuss Vandel's sexual harassment of Student 12.  During the meeting Beiner claimed to believe Student 12 but also stated "Mr. Vandel wouldn't do that."

85.

In an attempt to support Student 12 and compel Beiner and Epstein to believe that Vandel was a problem, Teacher 21 shared her own story of being sexually harassed by Vandel.  She told Beiner and Epstein that when she was bending over the copier to fix it, Vandel told her "if she kept bending over like that he was going

to have to do something about it."  Teacher 21 told Beiner and Epstein that this comment was made in front of students and caused Teacher 21 considerable embarrassment.

86.

During the meeting with Teacher 21, Beiner claimed he would take steps, but he did not.  He did no investigation, and nothing was done.  Vandel's behavior continued, unabated.

87.

Following the meetings with Beiner, Teacher 21 and Student 12 did not believe that Beiner had taken the report seriously, or that Vandel would receive anything more than a slap on the wrist.

88.

Teacher 21 felt that Beiner and Epstein intended to sweep the allegations against Vandel under the rug.

89.

Teacher 21 also heard from another female student, Student 13, that Vandel had been messaging Student 13 late at night.

90.

After finding out about Vandel's harassment of Student 12, and learning of Beiner and Epstein's interview of Student 12, Student 12's parents withdrew her

from FAST.

91.

On January 17, 2020 the parents of Student 12 sent an email to the FAST Governing Board/FFI Board regarding their daughter and the reasons that they were withdrawing her from the school. They stated that they were dissatisfied with FAST's response to the allegations of sexual misconduct, and that "the two pieces of information that [Student 12] shared with us . . . are indeed things that [Vandel] should not have done, and did, in fact make [Student 12] uncomfortable."

92.

In response, the chair of the FAST/FFI boards, Defendant Akpan, confirmed that there would be an investigation, and that he would follow up at the conclusion of the investigation.

93.

The family of Student 12 never received any follow-up regarding the conclusion of any investigation. Upon information and belief, no investigation was conducted.

94.

Defendants FCS, FAST, FFI, Stinger, Mahoney, Beiner, Epstein, Akpan, and Erickson failed to adequately investigate the allegations against Vandel, and failed to institute reasonable measures to prevent Vandel from grooming, sexually

harassing, sexually assaulting or raping other female students in the future. Consequently, Defendants FCS, FAST, FFI, Stinger, Mahoney, Beiner, Epstein, Akpan and Erickson put Jane Doe II and other students at substantial risk of being victims of future assaults and harassment by Vandel.

95.

Prior to the attack on Jane Doe II by Vandel, FAST, FFI and FCS through their employees and agents engaged in continued and unofficial customs, policies, and practices of deliberate indifference to the risk of harassment and assault of young female students. These unofficial customs, policies, and practices included:

a.  Placing Vandel in a room separated from the remainder of the teaching and administrative staff, which allowed him to engage in the exact same inappropriate behavior towards young female students at FAST that he did at Midland Middle School;

b.  Ignoring an official policy that prohibited teachers from giving candy or ice cream to students, and allowing Vandel to openly and brazenly give students candy and ice cream to facilitate his grooming efforts;

c.  Ignoring an official policy that prohibited teachers from using the intruder blinds in their classrooms unless there was an active shooter drill and instead allowing teachers to use the blinds for privacy, which permitted Vandel to use the blinds when isolating, grooming and

ultimately raping Jane Doe II;

d.  Ignoring official policies to create written reports for reports of sexual harassment, abuse and molestation, and instead encouraging only verbal reports to avoid creating documented actionable incidents that would reflect badly on the school;

e.  Deleting emails, messages, and other compromising information regarding complaints at the school;

f.  Sweeping serious concerns and reports under the rug to avoid bad publicity;

g.  Refusing to follow the Fulton County sexual harassment policies and training, and the State and Federal requirements of mandatory reporting of sexual harassment and assault, including harassment and assault of students and teachers by Vandel;

h.  Refusing to report accusations of Vandel's inappropriate behavior with young female students or sexual misconduct by Vandel; and

i.  Downplaying and victim-blaming credible concerns about sexual harassment and assault by Vandel.

96.

Prior to the attack on Jane Doe II, despite having actual knowledge of the reports regarding Vandel's inappropriate student contact at FAST, Defendants FCS,

FAST, FFI, Looney, Loe, Rose, Gatewood, Stinger, Beiner, Epstein, Akpan and Erickson failed to:

    a.   Investigate the multiple complaints regarding Vandel's inappropriate contact and harassment of students;

    b.   Adequately supervise Vandel to prevent him from physically and sexually harassing other students, including victims like Jane Doe II;

    c.   Conduct a formal or informal disciplinary hearing for Vandel;

    d.   Remove Vandel from his position at FAST;

    e.   Institute reasonable corrective measures aimed at ferreting out the possibility of employees like Vandel harassing and assaulting students like Jane Doe II again;

    f.   Warn school employees and students of Vandel's inappropriate behavior;

    g.   Protect Jane Doe II and other students from physical abuse and sexual harassment;

    h.   Adequately train school employees on how to handle complaints of inappropriate contact;

    i.   Record incidents involving physical and sexual harassment against Jane Doe II and others;

    j.   Maintain records of physical and sexual harassment complaints and

student disciplinary records; and

    k.   Enforce FCS rules, policies and regulations.

97.

Prior to the sexual assault and rape of Jane Doe II, Defendants FCS, FAST, FFI, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson had actual knowledge of Vandel's history of inappropriate contact and harassment of students.

98.

Defendants FCS, FAST, FFI, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson's actual knowledge of the threat presented by Vandel posed a substantial risk that Vandel would commit future acts of sexual harassment and abuse that were severe, pervasive and objectively offensive.

99.

Despite multiple reports of inappropriate conduct and harassment on the part of Vandel, no Defendant decided to intervene appropriately.

100.

A culture was created at FAST where teachers refused to come forward and make formal reports regarding misconduct.

101.

Consistent with FCS, FAST and FFI's policy, practice and unofficial custom of failing to appropriately discipline employees, Defendants failed to take

appropriate disciplinary action against Vandel as a result of any of the reports of harassment and inappropriate contact with students.

102.

FCS, FAST and FFI were willfully and deliberately indifferent to Vandel's history of inappropriate contact with students at FAST and other schools and the threat posed by Vandel to the students of FAST in at least one of the following ways:

    a.  Failing to appropriately discipline employees, including Vandel;

    b.  Failing to investigate complaints raised by students and employees regarding sexual harassment, physical abuse, or inappropriate contact by Vandel;

    c.  Failing to protect students like Jane Doe II from sexual harassment, physical abuse or inappropriate contact;

    d.  Failing to adequately supervise employees like Vandel that posed a substantial risk of harm to students at FAST;

    e.  Failing to adequately supervise and monitor students like Jane Doe II;

    f.  Failing to know of the whereabouts of all employees and students;

    g.  Failing to monitor and employ effective key control measures;

    h.  Failing to suspend, discipline, remove, or report employees like Vandel who had a history of inappropriate contact with students;

    i.  Failing to properly notify parents/legal guardians whenever an

42

employee engages in inappropriate conduct with a student;

j.  Failing to institute reasonable corrective measures aimed at preventing known aggressors and harassers like Vandel from assaulting students;

k.  Failing to warn students, parents/legal guardians, and other employees of employees like Vandel that have a history of inappropriate contact with students;

l.  Failing to adequately train school employees on how to handle complaints of sexual harassment, physical abuse or inappropriate contact;

m. Failing to make a record of incidents involving harassment, abuse or inappropriate contact involving employees like Vandel; and

n.  Failing to remove violent and dangerous employees from their positions.

103.

Defendant's response or lack thereof was clearly unreasonable in light of the known circumstances.

**Vandel Grooms, Harasses, and Rapes Jane Doe II**

104.

Vandel targeted Jane Doe II during the course of her time at FAST.  Vandel groomed Jane Doe II by showing her favoritism in class and providing her with

candy. Jane Doe II was repeatedly invited to spend lunch breaks in Vandel's room, along with a small selection of other female students, many of whom were also subjected to similar sexual harassment.  Vandel subjected Jane Doe II to sexual harassment and inappropriate touching, with Vandel rubbing her shoulders and groping her breasts.

105.

In the early months of 2020, Vandel created an opportunity to drastically escalate the sexual violence towards Jane Doe II by using his position of authority at FAST to coerce Jane Doe II to come to his classroom by sending another student to get Jane Doe II while she was lined up in the hall for recess.

106.

Once Vandel isolated Jane Doe II in his classroom, with the blinds down, Vandel locked the door to the room, and further bolted the door (with a device designed for use only during intruder drills) to ensure that nobody could enter the classroom.

107.

Vandel removed his pants, exposing his penis to Jane Doe II, and then manhandled her on a table.  Vandel pulled down her skort.  Jane Doe II squirmed, resisted, and told Vandel to stop.

108.

Vandel forcibly raped Jane Doe II by inserting his penis in Jane Doe II's vagina, causing her to bleed.

109.

After completing the rape, Vandel took a towel from his desk, cleaned himself and then used it to clean the blood off of Jane Doe II and kissed her on the forehead.

110.

Throughout the rape, Vandel told Jane Doe II that she was a "good girl."

111.

After cleaning up, Vandel gave Jane Doe II some ice cream, and told her that he wouldn't tell anyone what Jane Doe II had done.

112.

Vandel admitted to and pleaded guilty to the sexual assault, rape, and imprisonment of Jane Doe II.  Vandel was criminally convicted of these crimes.

**<u>Robert Vandel Leaves FAST and Voluntarily Surrenders his Teaching License</u>**

113.

After moving to online educational instruction in the face of the Covid-19 Pandemic, IT Director for FAST, Jenny Steele, found multiple inappropriate messages that Vandel initiated with female students using the new virtual technology.

114.

Ms. Steele immediately alerted Principal Beiner to the messages.

115.

On June 9, 2020 Vandel left FAST.

116.

The messages Vandel sent students using the virtual technology were of the same or similar nature to the verbal and physical inappropriate comments and conduct he had directed towards students at at least one school prior to FAST, and towards students while at FAST.

117.

On October 8, 2020, Vandel voluntarily surrendered his Georgia teaching certification.

118.

Vandel became a teacher at another school, Lyndon Academy.  No Defendant informed or warned Lyndon Academy of Vandel's history of sexually inappropriate, harassing, and assaulting conduct towards students and teachers.

**Defendants Failed Jane Doe II in Their Response to the Arrest of Robert Vandel for Raping and Sexually Assaulting Jane Doe II**

119.

On August 31, 2021, Jane Doe II reported Vandel's rape and sexual assault to her mother, Jane Doe.

120.

On August 31, 2021, Jane Doe II's parents, John Doe and Jane Doe, reported Vandel's rape and sexual assault to the police.

121.

On September 1, 2021, police requested a forensic interview, and Jane Doe II gave that interview on September 2, 2021.

122.

On the afternoon of September 2, 2021, Robert Vandel was arrested at his new teaching position at Lyndon Academy.

123.

On September 3, 2021, Beiner sent an email to all parents of FAST, and posted the email online, regarding the arrest of Vandel. In the email, Beiner implies that the child (Jane Doe II) was not telling the truth about the encounter with Vandel ("We must remember there is a child to be protected and a man's life that's balancing on the truth being told.").

**Jane Doe II Has Suffered and Continues to Suffer as a Result of Defendants'**
**Deliberate Indifference Resulting in Her**
**Sexual Harassment, Sexual Assault, and Rape**

124.

The sexual violence that Jane Doe II was subjected to in the early months of 2020 and subsequent harassment barred her from accessing an educational

opportunity and benefit.  Jane Doe II lost all confidence in her safety at FAST. As a result of this horrific attack and instances of harassment, Jane Doe II requires professional counseling, suffers from depression, suffers from Post-Traumatic Stress Disorder, and has lost her self-confidence and sense of identity.

125.

The rape and sexual violence that Jane Doe II was subjected to in the early months of 2020 created an intimidating, hostile, and offensive educational environment that seriously affected the psychological well-being of Jane Doe II.

126.

On March 24, 2021, Jane Doe II was admitted into the Ridgeview Institute following an attempt to commit suicide.

127.

Later in the Spring of 2021, while taking a test in the same classroom where Vandel raped and sexually assaulted Jane Doe II, Jane Doe II suffered severe emotional distress, and as a result went to the bathroom and engaged in self-harm by cutting herself.

128.

As a direct and proximate result of the Defendants' wrongful conduct, Jane Doe II suffered serious injuries including physical injuries, extreme indignities and humiliation, severe emotional distress, mental anguish, loss of liberty, and a

48

complete violation of that what she considers most sacred and personal.

### 129.

Jane Doe II has received treatment from medical doctors and other health care professionals for the serious physical, emotional, and mental injuries she sustained and will continue to require such treatment in the future.  Jane Doe I and John Doe have incurred and will continue to incur medical expenses and consequential damages in connection with the violations Jane Doe II has suffered as a direct and proximate result of the Defendants' wrongful conduct.

### 130.

The Defendants are collectively responsible for the injuries Jane Doe II has suffered and will suffer in the future as a result of the incident at issue as well as the medical expenses and other consequential damages Jane Doe I and John Doe have incurred and will incur in the future as a result of Jane Doe II's injuries and Defendants' wrongful conduct.

## **CAUSES OF ACTION**

### **Count I: Negligent Hiring**
### **(Defendants FFI, Higgins In Her Individual Capacity)**

### 131.

FFI, as a Georgia Registered Nonprofit corporation, is subject to state law claims.

132.

Pursuant to the Hidden Predator Act, O.C.G.A. § 9-3-33.1, the State has waived sovereign immunity for childhood sexual abuse cases brought against government entities and employees.

133.

Defendant Higgins was an employee and agent of Defendant FFI at the time Vandel was hired to work as a teacher at FAST.

134.

At the time that Vandel was hired, Annette Higgins was the Principal of FAST and was in charge of the interviewing and hiring process of all new teachers, including Robert Vandel.

135.

Vandel submitted an application for employment as a teacher at FAST on June 20, 2017.

136.

FAST utilized fingerprinting, background checks, and a pay-for-service investigation search engine for all their hires.  Therefore, Defendant Higgins as FFI's employee, agent, and decisionmaker on hiring knew or should have learned of Vandel's history of sexual misconduct and resulting disciplinary actions.

137.

Prior to being hired as a teacher at FAST, Vandel had been investigated by the GPSC for multiple allegations of sexual misconduct against female students. (*See* ¶ 58-67.)

138.

Annette Higgins knew about Vandel's pattern of grooming, sexual harassment, and sexual assault at Midland Middle School.  Higgins' knowledge of Vandel's conduct included, but was not limited to, the Vandel doing the following:

a.  Grooming and creating relationships of intimacy and trust with minor female students (including using candy, favoritism, isolation, and inappropriately sexual and familiar interactions to groom young girls).

b.  Giving certain students flirtatious, sexually suggestive, and inappropriate nicknames (such as "cutie pie," "flirt," "care bear," and "perv").

c.  Making overtly sexually suggestive and harassing comments to students and teachers.

d.  Touching minor female students inappropriately and sexually, including massaging their shoulders, touching their inner thighs, and touching their buttocks.

e.  Suggesting minor female students call him outside of school hours.

f.  Inviting minor female students to his home to pick up personal gifts, candy,

etc., when his wife was not home.

139.

Annette Higgins knew that the GPSC investigated the allegations made against Vandel, and interviewed multiple students and teachers regarding their experiences with Vandel.  The GPSC investigation was publicly available.

140.

Annette Higgins knew that fourteen (14) teachers expressed concerns regarding Vandel's behavior at Midland Middle School and his interactions with female students.  These concerns included:

- Teacher 1 reported an interaction between a student and Vandel where Vandel had grabbed a student's thigh, and made sexually suggestive remarks.

- Teacher 2 reported that Vandal gave a student the nickname "Cutie Pie" and gave her "back rubs."  Teacher 2 confirmed that Vandel gave or attempted to give similar "back rubs" to "a lot of the female staff members."

- Teacher 3 reported witnessing repeated problematic interactions between Vandel and female students, including preferential treatment, wrapping his arms around female students' waists, and making sexually suggestive remarks regarding female students.

- Teacher 4 reported that Vandel made them feel very uncomfortable by the remarks he made to female students.  The teacher also reported that she received unwanted back rubs from Vandel.  The teacher reported that many other female teachers reported similar levels of discomfort with Vandel.

- Teacher 5 reported that a female student complained that Vandel had rubbed the student's back and made her uncomfortable.

- Teacher 6 reported that she witnessed Vandel "hit a student on the behind with a ruler."

- Teacher 7 complained of "extensive sexual harassment" by Vandel.

- Teacher 8, Teacher 9, Teacher 10 and Teacher 11 reported Vandel for making them feel uncomfortable as a result of sexually inappropriate conduct, for isolating female students for extended periods of time, for having inappropriate physical contact with female students, and for making sexually suggestive comments to students.

- Teacher 12 and Teacher 13 complained of sexually inappropriate conduct by Vandel, and Teacher 13 reported that students came to her with similar complaints about Vandel's sexually inappropriate behavior.

- Teacher 14 reported that a student told her that Vandel treated her

differently than other female students, and that he would inappropriately get very physically close to her and make her feel uncomfortable.

141.

Annette Higgins knew seven (7) students at Midland Middle School reported issues with Vandel.  Their reports included, but were not limited to, the following:

- Student 1 reported that, "When [Vandel] talks to me he puts his hand on my behind," that Vandel showed her preferential treatment including that he invited her to his house to pick up a Christmas present, that "[o]ne time when I was talking to [Vandel] he put his hand on my inner thigh and rubbed my thigh up and down."

- Student 2 reported that, "When he talks to me he puts his hand on my behind and makes me mad," and "one time when me and [my friend were] talking to him, he put his hand on our inner thigh and rubbed my thigh up and down," and that Vandel showed her preferential treatment including inviting her to his house to pick up a Christmas present.

- Student 3 reported that "Mr. Vandel has touched my butt when I ask questions he will put his hand on my butt and still talk to me while holding my butt," and "[Another female student] was talking to him about her grade and he was sitting in his chair and [she] walked right

up to him and he like grabbed her by her waist and pulled her to him and then he held her butt."

- Student 4 reported, "he touched my butt once," and "when I ask questions he comes over me and rubs my shoulder which makes me uncomfortable."

- Student 5 reported, "Before Christmas Mr. Vandel came by and hit me on the bottom with a ruler and my friend [and] we came back from Christmas break he smacked me on the bottom with a ruler again."

- Student 6 reported, that Mr. Vandel made explicit sexually suggestive comments to her while describing two gummy bears stuck together in a head-to-toe position, that "another time he walked around his desk and grabbed my thigh," "another day he walked behind me and grabbed me around my waist," and that "sometimes he would wink and stare at me for a long time, and even this made me feel very, very weird, and uneasy."

- Student 7 reported that Vandel made repeated inappropriate comments towards her, including calling her 'cutie' on a daily basis, and suggesting that he would date her if he was 50 years younger.

142.

Annette Higgins knew that the GPSC investigation to the suspension of

Robert Vandel's teaching license after an Administrative Law Judge concluded that Vandel had committed clear violations of the Code of Ethics for Educators including the abuse of students.

143.

FFI knew about Vandel's pattern of grooming, sexual harassment, and sexual assault at Midland Middle School.  FFI's knowledge of Vandel's conduct included, but was not limited to, the Vandel doing the following:

a. Grooming and creating relationships of intimacy and trust with minor female students (including using candy, favoritism, isolation, and inappropriately sexual and familiar interactions to groom young girls).

b. Giving certain students flirtatious, sexually suggestive, and inappropriate nicknames (such as "cutie pie," "flirt," "care bear," and "perv").

c. Making overtly sexually suggestive and harassing comments to students and teachers.

d. Touching minor female students inappropriately and sexually, including massaging their shoulders, touching their inner thighs, and touching their buttocks.

e. Suggesting minor female students call him outside of school hours.

f. Inviting minor female students to his home to pick up personal gifts, candy, etc., when his wife was not home.

144.

FFI knew that the GPSC investigated the allegations made against Vandel, and interviewed multiple students and teachers regarding their experiences with Vandel. The GPSC investigation was publicly available.

145.

FFI knew that fourteen (14) teachers expressed concerns regarding Vandel's behavior at Midland Middle School and his interactions with female students. These concerns included:

- Teacher 1 reported an interaction between a student and Vandel where Vandel had grabbed a student's thigh, and made sexually suggestive remarks.

- Teacher 2 reported that Vandal gave a student the nickname "Cutie Pie" and gave her "back rubs." Teacher 2 confirmed that Vandel gave or attempted to give similar "back rubs" to "a lot of the female staff members."

- Teacher 3 reported witnessing repeated problematic interactions between Vandel and female students, including preferential treatment, wrapping his arms around female students' waists, and making sexually suggestive remarks regarding female students.

- Teacher 4 reported that Vandel made them feel very uncomfortable by

the remarks he made to female students.  The teacher also reported that she received unwanted back rubs from Vandel.  The teacher reported that many other female teachers reported similar levels of discomfort with Vandel.

- Teacher 5 reported that a female student complained that Vandel had rubbed the student's back and made her uncomfortable.

- Teacher 6 reported that she witnessed Vandel "hit a student on the behind with a ruler."

- Teacher 7 complained of "extensive sexual harassment" by Vandel.

- Teacher 8, Teacher 9, Teacher 10 and Teacher 11 reported Vandel for making them feel uncomfortable as a result of sexually inappropriate conduct, for isolating female students for extended periods of time, for having inappropriate physical contact with female students, and for making sexually suggestive comments to students.

- Teacher 12 and Teacher 13 complained of sexually inappropriate conduct by Vandel, and Teacher 13 reported that students came to her with similar complaints about Vandel's sexually inappropriate behavior.

- Teacher 14 reported that a student told her that Vandel treated her differently than other female students, and that he would

inappropriately get very physically close to her and make her feel uncomfortable.

146.

FFI knew seven (7) students at Midland Middle School reported issues with Vandel. Their reports included, but were not limited to, the following:

- Student 1 reported that, "When [Vandel] talks to me he puts his hand on my behind," that Vandel showed her preferential treatment including that he invited her to his house to pick up a Christmas present, that "[o]ne time when I was talking to [Vandel] he put his hand on my inner thigh and rubbed my thigh up and down."

- Student 2 reported that, "When he talks to me he puts his hand on my behind and makes me mad," and "one time when me and [my friend were] talking to him, he put his hand on our inner thigh and rubbed my thigh up and down," and that Vandel showed her preferential treatment including inviting her to his house to pick up a Christmas present.

- Student 3 reported that "Mr. Vandel has touched my butt when I ask questions he will put his hand on my butt and still talk to me while holding my butt," and "[Another female student] was talking to him about her grade and he was sitting in his chair and [she] walked right up to him and he like grabbed her by her waist and pulled her to him

59

and then he held her butt."

- Student 4 reported, "he touched my butt once," and "when I ask questions he comes over me and rubs my shoulder which makes me uncomfortable."

- Student 5 reported, "Before Christmas Mr. Vandel came by and hit me on the bottom with a ruler and my friend [and] we came back from Christmas break he smacked me on the bottom with a ruler again."

- Student 6 reported, that Mr. Vandel made explicit sexually suggestive comments to her while describing two gummy bears stuck together in a head-to-toe position, that "another time he walked around his desk and grabbed my thigh," "another day he walked behind me and grabbed me around my waist," and that "sometimes he would wink and stare at me for a long time, and even this made me feel very, very weird, and uneasy."

- Student 7 reported that Vandel made repeated inappropriate comments towards her, including calling her 'cutie' on a daily basis, and suggesting that he would date her if he was 50 years younger.

147.

FFI knew that the GPSC investigation to the suspension of Robert Vandel's teaching license after an Administrative Law Judge concluded that Vandel had

committed clear violations of the Code of Ethics for Educators including the abuse of students.

148.

Despite his publicly available record of impropriety Vandel was hired as a teacher at FAST prior to the start of the 2017-2018 school year.

149.

Defendant FFI had a duty to exercise ordinary care and diligence and not to hire a person that it knew or should know poses a risk of harm to the students at FAST.

150.

Defendant Higgins had a duty to exercise ordinary care and diligence and not to hire a person that she knew or should know poses a risk of harm to the students at FAST.

151.

Defendant FFI knew Vandel was not suited for employment as a teacher at FAST due to his history of sexual misconduct against female students.

152.

Defendant Higgins knew Vandel was not suited for employment as a teacher at FAST due to his history of sexual misconduct against female students.

153.

Despite knowing that Vandel posed a risk to female students Defendant FFI hired Vandel to work at FAST.

154.

Despite knowing that Vandel posed a risk to female students Defendant Higgins hired Vandel to work at FAST.

155.

The decision by Defendant Higgins and FFI to hire Vandel despite knowing that Vandel posed a risk to female students was the direct and proximate cause of Vandel's sexual harassment, sexual assault and rape of Jane Doe II and was the direct and proximate cause of the damages alleged in this complaint.

**Count II: Negligent Hiring**
**(Defendants FAST and Higgins in her Individual Capacity)**

156.

In addition to, or in the alternative to, Count I, Defendants FAST and Higgins, were negligent in the ways set forth here, in Count II.

157.

Pursuant to the Hidden Predator Act, O.C.G.A. § 9-3-33.1, the State has waived sovereign immunity for childhood sexual abuse cases brought against government entities and employees.

158.

Defendant Higgins was an employee and agent of Defendant FAST at the time Vandel was hired to work as a teacher at FAST.

159.

At the time that Vandel was hired, Annette Higgins was the Principal of FAST and was in charge of the interviewing and hiring process of all new teachers, including Robert Vandel.

160.

Vandel submitted an application for employment as a teacher at FAST on June 20, 2017.

161.

FAST utilized fingerprinting, background checks, and a pay-for-service investigation search engine for all their hires.  Therefore, Defendant Higgins as FAST's employee, agent, and decisionmaker on hiring knew or should have learned of Vandel's history of sexual misconduct and resulting disciplinary actions.

162.

Prior to being hired as a teacher at FAST, Vandel had been investigated by the GPSC for multiple allegations of sexual misconduct against female students. (*See* ¶ 58-67.)

163.

Annette Higgins knew about Vandel's pattern of grooming, sexual harassment, and sexual assault at Midland Middle School.  Higgins' knowledge of Vandel's conduct included, but was not limited to, the Vandel doing the following:

a.  Grooming and creating relationships of intimacy and trust with minor female students (including using candy, favoritism, isolation, and inappropriately sexual and familiar interactions to groom young girls).

b.  Giving certain students flirtatious, sexually suggestive, and inappropriate nicknames (such as "cutie pie," "flirt," "care bear," and "perv").

c.  Making overtly sexually suggestive and harassing comments to students and teachers.

d.  Touching minor female students inappropriately and sexually, including massaging their shoulders, touching their inner thighs, and touching their buttocks.

e.  Suggesting minor female students call him outside of school hours.

f.  Inviting minor female students to his home to pick up personal gifts, candy, etc., when his wife was not home.

164.

Annette Higgins knew that the GPSC investigated the allegations made against Vandel, and interviewed multiple students and teachers regarding their

experiences with Vandel.  The GPSC investigation was publicly available.

165.

Annette Higgins knew that fourteen (14) teachers expressed concerns regarding Vandel's behavior at Midland Middle School and his interactions with female students.  These concerns included:

- Teacher 1 reported an interaction between a student and Vandel where Vandel had grabbed a student's thigh, and made sexually suggestive remarks.

- Teacher 2 reported that Vandal gave a student the nickname "Cutie Pie" and gave her "back rubs."  Teacher 2 confirmed that Vandel gave or attempted to give similar "back rubs" to "a lot of the female staff members."

- Teacher 3 reported witnessing repeated problematic interactions between Vandel and female students, including preferential treatment, wrapping his arms around female students' waists, and making sexually suggestive remarks regarding female students.

- Teacher 4 reported that Vandal made them feel very uncomfortable by the remarks he made to female students.  The teacher also reported that she received unwanted back rubs from Vandel.  The teacher reported that many other female teachers reported similar levels of discomfort

with Vandel.

- Teacher 5 reported that a female student complained that Vandel had rubbed the student's back and made her uncomfortable.

- Teacher 6 reported that she witnessed Vandel "hit a student on the behind with a ruler."

- Teacher 7 complained of "extensive sexual harassment" by Vandel.

- Teacher 8, Teacher 9, Teacher 10 and Teacher 11 reported Vandel for making them feel uncomfortable as a result of sexually inappropriate conduct, for isolating female students for extended periods of time, for having inappropriate physical contact with female students, and for making sexually suggestive comments to students.

- Teacher 12 and Teacher 13 complained of sexually inappropriate conduct by Vandel, and Teacher 13 reported that students came to her with similar complaints about Vandel's sexually inappropriate behavior.

- Teacher 14 reported that a student told her that Vandel treated her differently than other female students, and that he would inappropriately get very physically close to her and make her feel uncomfortable.

166.

Annette Higgins knew seven (7) students at Midland Middle School reported issues with Vandel.  Their reports included, but were not limited to, the following:

- Student 1 reported that, "When [Vandel] talks to me he puts his hand on my behind," that Vandel showed her preferential treatment including that he invited her to his house to pick up a Christmas present, that "[o]ne time when I was talking to [Vandel] he put his hand on my inner thigh and rubbed my thigh up and down."

- Student 2 reported that, "When he talks to me he puts his hand on my behind and makes me mad," and "one time when me and [my friend were] talking to him, he put his hand on our inner thigh and rubbed my thigh up and down," and that Vandel showed her preferential treatment including inviting her to his house to pick up a Christmas present.

- Student 3 reported that "Mr. Vandel has touched my butt when I ask questions he will put his hand on my butt and still talk to me while holding my butt," and "[Another female student] was talking to him about her grade and he was sitting in his chair and [she] walked right up to him and he like grabbed her by her waist and pulled her to him and then he held her butt."

- Student 4 reported, "he touched my butt once," and "when I ask

questions he comes over me and rubs my shoulder which makes me uncomfortable."

- Student 5 reported, "Before Christmas Mr. Vandel came by and hit me on the bottom with a ruler and my friend [and] we came back from Christmas break he smacked me on the bottom with a ruler again."

- Student 6 reported, that Mr. Vandel made explicit sexually suggestive comments to her while describing two gummy bears stuck together in a head-to-toe position, that "another time he walked around his desk and grabbed my thigh," "another day he walked behind me and grabbed me around my waist," and that "sometimes he would wink and stare at me for a long time, and even this made me feel very, very weird, and uneasy."

- Student 7 reported that Vandel made repeated inappropriate comments towards her, including calling her 'cutie' on a daily basis, and suggesting that he would date her if he was 50 years younger.

167.

Annette Higgins knew that the GPSC investigation to the suspension of Robert Vandel's teaching license after an Administrative Law Judge concluded that Vandel had committed clear violations of the Code of Ethics for Educators including the abuse of students.

168.

FAST knew about Vandel's pattern of grooming, sexual harassment, and sexual assault at Midland Middle School.  FAST's knowledge of Vandel's conduct included, but was not limited to, the Vandel doing the following:

a.  Grooming and creating relationships of intimacy and trust with minor female students (including using candy, favoritism, isolation, and inappropriately sexual and familiar interactions to groom young girls).

b.  Giving certain students flirtatious, sexually suggestive, and inappropriate nicknames (such as "cutie pie," "flirt," "care bear," and "perv").

c.  Making overtly sexually suggestive and harassing comments to students and teachers.

d.  Touching minor female students inappropriately and sexually, including massaging their shoulders, touching their inner thighs, and touching their buttocks.

e.  Suggesting minor female students call him outside of school hours.

f.  Inviting minor female students to his home to pick up personal gifts, candy, etc., when his wife was not home.

169.

FAST knew that the GPSC investigated the allegations made against Vandel, and interviewed multiple students and teachers regarding their experiences with

Vandel.  The GPSC investigation was publicly available.

170.

FAST knew that fourteen (14) teachers expressed concerns regarding Vandel's behavior at Midland Middle School and his interactions with female students.  These concerns included:

- Teacher 1 reported an interaction between a student and Vandel where Vandel had grabbed a student's thigh, and made sexually suggestive remarks.

- Teacher 2 reported that Vandal gave a student the nickname "Cutie Pie" and gave her "back rubs."  Teacher 2 confirmed that Vandel gave or attempted to give similar "back rubs" to "a lot of the female staff members."

- Teacher 3 reported witnessing repeated problematic interactions between Vandel and female students, including preferential treatment, wrapping his arms around female students' waists, and making sexually suggestive remarks regarding female students.

- Teacher 4 reported that Vandal made them feel very uncomfortable by the remarks he made to female students.  The teacher also reported that she received unwanted back rubs from Vandel.  The teacher reported that many other female teachers reported similar levels of discomfort

with Vandel.

- Teacher 5 reported that a female student complained that Vandel had rubbed the student's back and made her uncomfortable.

- Teacher 6 reported that she witnessed Vandel "hit a student on the behind with a ruler."

- Teacher 7 complained of "extensive sexual harassment" by Vandel.

- Teacher 8, Teacher 9, Teacher 10 and Teacher 11 reported Vandel for making them feel uncomfortable as a result of sexually inappropriate conduct, for isolating female students for extended periods of time, for having inappropriate physical contact with female students, and for making sexually suggestive comments to students.

- Teacher 12 and Teacher 13 complained of sexually inappropriate conduct by Vandel, and Teacher 13 reported that students came to her with similar complaints about Vandel's sexually inappropriate behavior.

- Teacher 14 reported that a student told her that Vandel treated her differently than other female students, and that he would inappropriately get very physically close to her and make her feel uncomfortable.

171.

FAST knew seven (7) students at Midland Middle School reported issues with Vandel.  Their reports included, but were not limited to, the following:

- Student 1 reported that, "When [Vandel] talks to me he puts his hand on my behind," that Vandel showed her preferential treatment including that he invited her to his house to pick up a Christmas present, that "[o]ne time when I was talking to [Vandel] he put his hand on my inner thigh and rubbed my thigh up and down."

- Student 2 reported that, "When he talks to me he puts his hand on my behind and makes me mad," and "one time when me and [my friend were] talking to him, he put his hand on our inner thigh and rubbed my thigh up and down," and that Vandel showed her preferential treatment including inviting her to his house to pick up a Christmas present.

- Student 3 reported that "Mr. Vandel has touched my butt when I ask questions he will put his hand on my butt and still talk to me while holding my butt," and "[Another female student] was talking to him about her grade and he was sitting in his chair and [she] walked right up to him and he like grabbed her by her waist and pulled her to him and then he held her butt."

- Student 4 reported, "he touched my butt once," and "when I ask

questions he comes over me and rubs my shoulder which makes me uncomfortable."

- Student 5 reported, "Before Christmas Mr. Vandel came by and hit me on the bottom with a ruler and my friend [and] we came back from Christmas break he smacked me on the bottom with a ruler again."

- Student 6 reported, that Mr. Vandel made explicit sexually suggestive comments to her while describing two gummy bears stuck together in a head-to-toe position, that "another time he walked around his desk and grabbed my thigh," "another day he walked behind me and grabbed me around my waist," and that "sometimes he would wink and stare at me for a long time, and even this made me feel very, very weird, and uneasy."

- Student 7 reported that Vandel made repeated inappropriate comments towards her, including calling her 'cutie' on a daily basis, and suggesting that he would date her if he was 50 years younger.

172.

FAST knew that the GPSC investigation to the suspension of Robert Vandel's teaching license after an Administrative Law Judge concluded that Vandel had committed clear violations of the Code of Ethics for Educators including the abuse of students.

173.

Despite his publicly available record of impropriety Vandel was hired as a teacher at FAST prior to the start of the 2017-2018 school year.

174.

Defendant FAST had a duty to exercise ordinary care and diligence and not to hire a person that it knew or should know poses a risk of harm to the students at FAST.

175.

Defendant Higgins had a duty to exercise ordinary care and diligence and not to hire a person that she knew or should know poses a risk of harm to the students at FAST.

176.

Defendant FAST knew Vandel was not suited for employment as a teacher at FAST due to his history of sexual misconduct against female students.

177.

Defendant Higgins knew Vandel was not suited for employment as a teacher at FAST due to his history of sexual misconduct against female students.

178.

Despite knowing that Vandel posed a risk to female students Defendant FAST hired Vandel to work at FAST.

179.

Despite knowing that Vandel posed a risk to female students Defendant Higgins hired Vandel to work at FAST.

180.

The decision by Defendants Higgins and FAST to hire Vandel despite knowing that Vandel posed a risk to female students was the direct and proximate cause of Vandel's sexual harassment, sexual assault and rape of Jane Doe II and was the direct and proximate cause of the damages alleged in this complaint.

**Count III: Negligent Supervision, Retention, Undertaking
(Defendants FFI, FAST, Higgins in her Individual Capacity, Mahoney in his Individual Capacity, Stinger in her Individual Capacity, Beiner in his Individual Capacity, Epstein in his Individual Capacity, Akpan in his Individual Capacity, and Erickson in her Individual Capacity)**

181.

FFI, as a Georgia Registered Nonprofit corporation, is subject to state law claims.

182.

Defendants Akpan and Erickson are not state employees or agents and are not entitled to immunity.

183.

Pursuant to the Hidden Predator Act, O.C.G.A. § 9-3-33.1, the State has waived sovereign immunity for childhood sexual abuse cases brought against

government entities and employees.

184.

Defendants FFI, FAST, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson undertook the duty of providing educational services and protection for FAST students, including Jane Doe II.

185.

Defendants FFI, FAST, Higgins, Mahoney, Stinger, Beiner, and Epstein, owed a duty of care to the students of FAST, including Jane Doe II, to ensure that they properly supervised all teachers at FAST, to make sure that the teachers of FAST followed all policies and procedures, and to appropriately respond to improper conduct by teachers of FAST towards students at FAST.

186.

Between the start of the 2017-2018 school year and his termination on June 9, 2020, Vandel worked as a teacher at FAST under the supervision of Defendants FFI, Higgins, Mahoney, Stinger, Beiner, and Epstein.

187.

In addition to, or in the alternative to, paragraph 177, between the start of the 2017-2018 school year and his termination on June 9, 2020, Vandel worked as a teacher at FAST under the supervision of Defendants FAST, Higgins, Mahoney, Stinger, Beiner, and Epstein.

188.

Defendant FFI had a duty to exercise due care and diligence in supervising and controlling Vandel as a teacher.

189.

Defendant FAST had a duty to exercise due care and diligence in supervising and controlling Vandel as a teacher.

190.

Defendant Higgins had a duty to exercise due care and diligence in supervising and controlling Vandel as a teacher.

191.

Defendant Mahoney had a duty to exercise due care and diligence in supervising and controlling Vandel as a teacher.

192.

Defendant Stinger had a duty to exercise due care and diligence in supervising and controlling Vandel as a teacher.

193.

Defendant Beiner had a duty to exercise due care and diligence in supervising and controlling Vandel as a teacher.

194.

Defendants Epstein had a duty to exercise due care and diligence in supervising and controlling Vandel as a teacher.

195.

Defendant Erickson had a duty to exercise due care and diligence in supervising and controlling their subordinates Defendants Higgins, Mahoney, Stinger, and Beiner.

196.

Defendant Akpan had a duty to exercise due care and diligence in supervising and controlling their subordinates Defendants Higgins, Mahoney, Stinger, and Beiner.

197.

Defendant Akpan and Erickson had a duty to exercise due care and diligence in their supervision, direction, management, and stewardship of FFI and FAST.

198.

Defendant Akpan and Erickson had a duty to exercise due care and diligence in their supervision, direction, management, and stewardship of FFI and FAST.

199.

Defendant FFI breached the duty it owed to Jane Doe II to ensure that she, as

a student of FAST, was safe, through the conduct of FFI's agents and employees who:

    a. Ignored the findings of the investigation by the GPSC and decision of an Administrative Law Judge who concluded Vandel had violated the code of ethics for educators through his abuse of students.  Ignored the credible reports of fourteen teachers and seven students who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

    b. Ignored reports from at least four teachers at FAST, at least 3 students at FAST, at least one parent of a student at FAST who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

c. Retained Vandel as a teacher at FAST despite knowing about Vandel's history of grooming, sexual harassment, and sexual assault of female students at Midland Middle School, as investigated and documented by GPSC.

d. Failed to adopt and enforce policies that would have prevented Vandel from engaging in grooming, sexual assault, sexual harassment, and the rape of Jane Doe II, including: allowing Vandel to fragrantly ignore school policies regarding use of blinds in his room, providing candy to students, and allowing female students to congregate in his classroom during breaks. For other policy failures, Plaintiff incorporates the allegations of paragraph 95 of their complaint.

e. Failed to adequately control the campus and manage, monitor, and oversee the location and safety of students at FAST, which allowed Vandel to isolate Jane Doe II in his classroom.

f. Failed to appropriately report sexual misconduct at FAST as required by Fulton County and State and Federal requirements of mandatory reporting.

g. Failed to properly investigate reports of sexual misconduct by Vandel against female students at FAST.

200.

In addition to, or in the alternative to, paragraph 191, Defendant FAST, breached the duty it owed to Jane Doe II to ensure that she, as a student of FAST, was safe, through the conduct of FFI's agents and employees who:

a. Ignored the findings of the investigation by the GPSC and decision of an Administrative Law Judge who concluded Vandel had violated the code of ethics for educators through his abuse of students.  Ignored the credible reports of fourteen teachers and seven students who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

b. Ignored reports from at least five teachers at FAST, at least 3 students at FAST, at least one parent of a student at FAST who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work

hours, and (6) invited female students to his home to pick up gifts from him.

c. Retained Vandel as a teacher at FAST despite knowing about Vandel's history of grooming, sexual harassment, and sexual assault of female students at Midland Middle School, as investigated and documented by GPSC.

d. Failed to adopt and enforce policies that would have prevented Vandel from engaging in grooming, sexual assault, sexual harassment, and the rape of Jane Doe II, including: allowing Vandel to fragrantly ignore school policies regarding use of blinds in his room, providing candy to students, and allowing female students to congregate in his classroom during breaks. For other policy failures, Plaintiff incorporates the allegations of paragraph 95 of their complaint.

e. Failed to adequately control the campus and manage, monitor, and oversee the location and safety of students at FAST, which allowed Vandel to isolate Jane Doe II in his classroom.

f. Failed to appropriately report sexual misconduct at FAST as required by Fulton County and State and Federal requirements of mandatory reporting.

g. Failed to properly investigate reports of sexual misconduct by Vandel

against female students at FAST.

201.

Defendant Higgins breached the duty she owed to Jane Doe II to ensure that she, as a student of FAST, was safe, during her tenure as Principal of FAST, by:

a. Ignoring the findings of the investigation by the GPSC and decision of an Administrative Law Judge who concluded Vandel had violated the code of ethics for educators through his abuse of students. Ignored the credible reports of fourteen teachers and seven students who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

b. Ignoring reports from teachers at FAST who alleged among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

    c. Failing to adopt and enforce policies that would have prevented Vandel from engaging in grooming, sexual assault, sexual harassment, and the rape of Jane Doe II, including: (1) placing Vandel in a room separated from the remainder of the teaching and administrative staff, which allowed him to engage in the exact same inappropriate behavior towards young female students at FAST that he did at Midland Middle School, (2) allowing Vandel to show preferential treatment to female students by providing candy to students, and (3) allowing female students to congregate in Vandel's classroom during breaks.

202.

Defendant Mahoney breached the duty he owed to Jane Doe II to ensure that she, as a student of FAST, was safe, during her tenure as Principal of FAST, by:

    a. Ignored the findings of the investigation by the GPSC and decision of an Administrative Law Judge who concluded Vandel had violated the code of ethics for educators through his abuse of students.  Ignored the credible reports of fourteen teachers and seven students who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work

hours, and (6) invited female students to his home to pick up gifts from him.

b.  Ignored reports from teachers at FAST who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

c.  Failing to adopt and enforce policies that would have prevented Vandel from engaging in grooming, sexual assault, sexual harassment, and the rape of Jane Doe II, including: (1) placing Vandel in a room separated from the remainder of the teaching and administrative staff, which allowed him to engage in the exact same inappropriate behavior towards young female students at FAST that he did at Midland Middle School, (2) allowing Vandel to show preferential treatment to female students by providing candy to students, (3) allowing female students to congregate in Vandel's classroom during breaks, (4) ignoring policies to create written reports for reports of sexual harassment, abuse and molestation, (5) sweeping serious concerns and reports under the rug to avoid publicity, (6) Refusing to follow the Fulton County sexual

harassment policies and training, and the State and Federal requirements of mandatory reporting of sexual harassment and assault, and (7) Refusing to report accusations of Vandel's inappropriate behavior with young female students or sexual misconduct by Vandel.

203.

Defendant Stinger breached the duty she owed to Jane Doe II to ensure that she, as a student of FAST, was safe, during her tenure as Principal of FAST, by:

a. Ignored the findings of the investigation by the GPSC and decision of an Administrative Law Judge who concluded Vandel had violated the code of ethics for educators through his abuse of students. Ignored the credible reports of fourteen teachers and seven students who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

b. Ignored reports from at least four teachers at FAST who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and

harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

c.  Failing to adopt and enforce policies that would have prevented Vandel from engaging in grooming, sexual assault, sexual harassment, and the rape of Jane Doe II, including: (1) placing Vandel in a room separated from the remainder of the teaching and administrative staff, which allowed him to engage in the exact same inappropriate behavior towards young female students at FAST that he did at Midland Middle School, (2) allowing Vandel to show preferential treatment to female students by providing candy to students, (3) allowing female students to congregate in Vandel's classroom during breaks, (4) ignoring policies to create written reports for reports of sexual harassment, abuse and molestation, (5) sweeping serious concerns and reports under the rug to avoid publicity, (6) Refusing to follow the Fulton County sexual harassment policies and training, and the State and Federal requirements of mandatory reporting of sexual harassment and assault, (7) Refusing to report accusations of Vandel's inappropriate behavior with young female students or sexual misconduct by Vandel, and (8)

downplaying and victim-blaming credible concerns about sexual harassment and assault by Vandel.

d.  Failing to appropriately report sexual misconduct at FAST as required by Fulton County and State and Federal requirements of mandatory reporting.

e.  Failing to properly investigate reports of sexual misconduct by Vandel against female students at FAST.

204.

Defendant Beiner breached the duty he owed to Jane Doe II to ensure that she, as a student of FAST, was safe, during his tenure as Principal of FAST, by:

a.  Ignoring the findings of the investigation by the GPSC and decision of an Administrative Law Judge who concluded Vandel had violated the code of ethics for educators through his abuse of students.  Ignored the credible reports of fourteen teachers and seven students who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

b.  Ignoring reports from at least five teachers at FAST, at least 3 students at FAST, at least one parent of a student at FAST who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

c.  Failing to adopt and enforce policies that would have prevented Vandel from engaging in grooming, sexual assault, sexual harassment, and the rape of Jane Doe II, including: (1) allowing Vandel to show preferential treatment to female students by providing candy to students, (2) allowing female students to congregate in Vandel's classroom during breaks, (3) ignoring policies to create written reports for reports of sexual harassment, abuse and molestation, (4) sweeping serious concerns and reports under the rug to avoid publicity, (5) refusing to follow the Fulton County sexual harassment policies and training, and the State and Federal requirements of mandatory reporting of sexual harassment and assault, (6) refusing to report accusations of Vandel's inappropriate behavior with young female students or sexual

misconduct by Vandel, (7) downplaying and victim-blaming credible concerns about sexual harassment and assault by Vandel, and (8) ignoring an official policy that prohibited teachers from using the intruder blinds in their classrooms unless there was an active shooter drill and instead allowing teachers to use the blinds for privacy, which permitted Vandel to use the blinds when isolating, grooming and ultimately raping Jane Doe II.

d. Failing to adequately control the campus manage, monitor, and oversee the location and safety of students at FAST, which allowed Vandel to isolate Jane Doe II in his classroom.

e. Ignoring reports from other teachers at FAST, students at FAST and a parent of a student at FAST regarding Vandel's grooming, sexual harassment, and sexual assault of female students and staff.

f. Failing to appropriately report sexual misconduct at FAST as required by Fulton County and State and Federal requirements of mandatory reporting.

g. Failing to properly investigate reports of sexual misconduct by Vandel against female students at FAST.

205.

Defendant Epstein breached the duty he owed to Jane Doe II to ensure that

she, as a student of FAST, was safe, during his tenure as Assistant Principal of FAST, by:

    a.  Ignoring the findings of the investigation by the GPSC and decision of an Administrative Law Judge who concluded Vandel had violated the code of ethics for educators through his abuse of students.  Ignored the credible reports of fourteen teachers and seven students who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

    b.  Ignoring reports from at least five teachers at FAST, at least 3 students at FAST, at least one parent of a student at FAST who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

c.  Failing to adopt and enforce policies that would have prevented Vandel from engaging in grooming, sexual assault, sexual harassment, and the rape of Jane Doe II, including: (1) allowing Vandel to show preferential treatment to female students by providing candy to students, (2) allowing female students to congregate in Vandel's classroom during breaks, (3) ignoring policies to create written reports for reports of sexual harassment, abuse and molestation, (4) sweeping serious concerns and reports under the rug to avoid publicity, (5) refusing to follow the Fulton County sexual harassment policies and training, and the State and Federal requirements of mandatory reporting of sexual harassment and assault, (6) refusing to report accusations of Vandel's inappropriate behavior with young female students or sexual misconduct by Vandel, (7) downplaying and victim-blaming credible concerns about sexual harassment and assault by Vandel, and (8) ignoring an official policy that prohibited teachers from using the intruder blinds in their classrooms unless there was an active shooter drill and instead allowing teachers to use the blinds for privacy, which permitted Vandel to use the blinds when isolating, grooming and ultimately raping Jane Doe II.

d.  Failing to adequately control the campus manage, monitor, and oversee

the location and safety of students at FAST, which allowed Vandel to isolate Jane Doe II in his classroom.

e. Ignoring reports from other teachers at FAST, students at FAST and a parent of a student at FAST regarding Vandel's grooming, sexual harassment, and sexual assault of female students and staff.

f. Failing to appropriately report sexual misconduct at FAST as required by Fulton County and State and Federal requirements of mandatory reporting.

g. Failing to properly investigate reports of sexual misconduct by Vandel against female students at FAST.

206.

Defendant Akpan breached the duty he owed to Jane Doe II to ensure that she, as a student of FAST, was safe, during his tenure as Chair of the Board of FFI/FAST, by:

a. Failing to institute, implement, and maintain reasonable policies and measures designed to prevent sexual harassment, assault and inappropriate contact between teachers and students.

b. Improperly supervising his subordinates including Principal Beiner and Epstein to ensure that they were following FAST policies and procedures and executing their job duties in accordance with federal

and state law.

c. Ignoring reports from a parent of a student at FAST regarding Vandel's grooming, sexual harassment, and sexual assault of a female student.

d. Failing to appropriately report sexual misconduct at FAST as required by Fulton County and State and Federal requirements of mandatory reporting.

e. Failing to properly investigate reports of sexual misconduct by Vandel against a female student at FAST.

207.

Defendant Erickson breached the duty she owed to Jane Doe II to ensure that she, as a student of FAST, was safe, during her tenure as Chair of the Board of FFI/FAST, and during her tenure as a board member of FFI/FAST by:

a. Failing to institute, implement, and maintain reasonable policies and measures designed to prevent sexual harassment, assault and inappropriate contact between teachers and students.

b. Improperly supervising her subordinates including Principal Beiner and Epstein to ensure that they were following FAST policies and procedures and executing their job duties in accordance with federal and state law.

c. Ignoring reports from teachers, and a parent of a student at FAST

Vandel's grooming, sexual harassment, and sexual assault of female students and staff.

d.  Failing to appropriately report sexual misconduct at FAST as required by Fulton County and State and Federal requirements of mandatory reporting.

e.  Failing to properly investigate reports of sexual misconduct by Vandel against female students and female staff members at FAST.

208.

As a direct and proximate result of the acts and omissions of Defendants FFI, Higgins, Mahoney, Stinger, Beiner, Epstein, Akpan, and Erickson Jane Doe II suffered severe physical and emotional damages, which will continue into the future. Plaintiffs have incurred substantial and significant medical expenses for care and treatment relating to the injuries and damages Jane Doe II suffered as a result of Defendant's negligence.

**Count IV:   Negligent Undertaking**
**(FCS, Looney in his Individual Capacity, Loe in her Individual Capacity,**
**Rose in his Individual Capacity, and Gatewood in her Individual Capacity)**

209.

Pursuant to the Hidden Predator Act, O.C.G.A. § 9-3-33.1, the State has waived sovereign immunity for childhood sexual abuse cases brought against government entities.

210.

In addition to, or in the alternative to Count III, Defendants FCS, Looney, Loe, Rose, and Gatewood were negligent in the ways set forth in Count IV.

211.

Defendant FCS, undertook, for consideration, the duty of providing educational services and protection for its students, including Jane Doe II.

212.

Defendant Looney undertook, for consideration, the duty of providing educational services and protection for its students, including Jane Doe II.

213.

Defendant Loe undertook, for consideration, the duty of providing educational services and protection for its students, including Jane Doe II.

214.

Defendant Rose undertook, for consideration, the duty of providing educational services and protection for its students, including Jane Doe II.

215.

Defendant Gatewood undertook, for consideration, the duty of providing educational services and protection for its students, including Jane Doe II.

216.

FCS, Looney, Loe, Rose, and Gatewood should have recognized as necessary

the protection of Jane Doe II's person and promulgated policies and procedures to protect minor students from inappropriate misconduct by teachers.

217.

Defendant FCS failed to ensure that FAST and its employees/agents including Defendants Higgins, Mahoney, Stinger, Beiner, Epstein adopted and implemented policies and procedures consistent with FCS policies and procedures, and in doing so allowed FAST to adopt and promulgate policies and procedures that were inconsistent with FCS policies and procedures, including:

a. Hiring and retaining Vandel despite the findings of the investigation by the GPSC and decision of an Administrative Law Judge who concluded Vandel had violated the code of ethics for educators through his abuse of students. Ignored the credible reports of fourteen teachers and seven students who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

b. Retaining Vandel despite reports from at least five teachers at FAST, at least 3 students at FAST, at least one parent of a student at FAST who

alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

c. Failing to comply with Fulton County sexual harassment policies and training, and the State and Federal requirements of mandatory reporting of sexual harassment and assault, including the harassment and assault of students and teachers by Vandel;

d. Downplaying and victim-blaming credible concerns about sexual harassment and assault by Vandel;

e. Failing to complete written reports of sexual harassment, abuse and molestation, and instead encouraging only verbal reports to avoid creating documented actionable incidents that would reflect badly on FAST and FCS;

f. Failing to properly investigate allegations of sexual harassment, abuse and molestation; and

g. Sweeping serious concerns and reports under the rug to avoid negative publicity.

218.

Defendant Looney failed to ensure that FAST and its employees/agents including Defendants Beiner and Epstein adopted and implemented policies and procedures consistent with FCS policies and procedures, and in doing so allowed FAST to adopt and promulgate policies and procedures that were inconsistent with FCS policies and procedures, including:

a. Retaining Vandel despite the findings of the investigation by the GPSC and decision of an Administrative Law Judge who concluded Vandel had violated the code of ethics for educators through his abuse of students. Ignored the credible reports of fourteen teachers and seven students who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

b. Retaining Vandel despite reports from at least five teachers at FAST, at least 3 students at FAST, at least one parent of a student at FAST who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly

sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

c.  Failing to comply with Fulton County sexual harassment policies and training, and the State and Federal requirements of mandatory reporting of sexual harassment and assault, including the harassment and assault of students and teachers by Vandel;

d.  Downplaying and victim-blaming credible concerns about sexual harassment and assault by Vandel;

e.  Failing to complete written reports of sexual harassment, abuse and molestation, and instead encouraging only verbal reports to avoid creating documented actionable incidents that would reflect badly on FAST and FCS;

f.  Failing to properly investigate allegations of sexual harassment, abuse and molestation; and

g.  Sweeping serious concerns and reports under the rug to avoid negative publicity.

219.

Defendant Loe failed to ensure that FAST and its employees/agents including

Defendant Stinger adopted and implemented policies and procedures consistent with FCS policies and procedures, and in doing so allowed FAST to adopt and promulgate policies and procedures that were inconsistent with FCS policies and procedures, including:

a. Retaining Vandel despite the findings of the investigation by the GPSC and decision of an Administrative Law Judge who concluded Vandel had violated the code of ethics for educators through his abuse of students.  Ignored the credible reports of fourteen teachers and seven students who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

b. Retaining Vandel despite reports from at least five teachers at FAST, at least 3 students at FAST, at least one parent of a student at FAST who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him

outside of work hours, and (6) invited female students to his home to pick up gifts from him.

c.  Failing to comply with Fulton County sexual harassment policies and training, and the State and Federal requirements of mandatory reporting of sexual harassment and assault, including the harassment and assault of students and teachers by Vandel;

d.  Downplaying and victim-blaming credible concerns about sexual harassment and assault by Vandel;

e.  Failing to complete written reports of sexual harassment, abuse and molestation, and instead encouraging only verbal reports to avoid creating documented actionable incidents that would reflect badly on FAST and FCS;

f.  Failing to properly investigate allegations of sexual harassment, abuse and molestation; and

g.  Sweeping serious concerns and reports under the rug to avoid negative publicity.

220.

Defendant Rose failed to ensure that FAST and its employees/agents including Defendant Higgins and Mahoney adopted and implemented policies and procedures consistent with FCS policies and procedures, and in doing so allowed

FAST to adopt and promulgate policies and procedures that were inconsistent with FCS policies and procedures, including:

   a. Hiring and retaining Vandel despite the findings of the investigation by the GPSC and decision of an Administrative Law Judge who concluded Vandel had violated the code of ethics for educators through his abuse of students. Ignored the credible reports of fourteen teachers and seven students who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

   b. Retaining Vandel despite reports from at least five teachers at FAST, at least 3 students at FAST, at least one parent of a student at FAST who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

c. Failing to comply with Fulton County sexual harassment policies and training, and the State and Federal requirements of mandatory reporting of sexual harassment and assault, including the harassment and assault of students and teachers by Vandel;

d. Downplaying and victim-blaming credible concerns about sexual harassment and assault by Vandel;

e. Failing to complete written reports of sexual harassment, abuse and molestation, and instead encouraging only verbal reports to avoid creating documented actionable incidents that would reflect badly on FAST and FCS;

f. Failing to properly investigate allegations of sexual harassment, abuse and molestation; and

g. Sweeping serious concerns and reports under the rug to avoid negative publicity.

221.

Defendant Gatewood failed to ensure that FAST and its employees/agents including Defendants Higgins, Mahoney, Stinger, Beiner, Epstein adopted and implemented policies and procedures consistent with FCS policies and procedures, and in doing so allowed FAST to adopt and promulgate policies and procedures that were inconsistent with FCS policies and procedures, including:

a. Retaining Vandel despite the findings of the investigation by the GPSC and decision of an Administrative Law Judge who concluded Vandel had violated the code of ethics for educators through his abuse of students.  Ignored the credible reports of fourteen teachers and seven students who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

b. Retaining Vandel despite reports from at least five teachers at FAST, at least 3 students at FAST, at least one parent of a student at FAST who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

c. Failing to comply with Fulton County sexual harassment policies and training, and the State and Federal requirements of mandatory

reporting of sexual harassment and assault, including the harassment
and assault of students and teachers by Vandel;

d.  Downplaying and victim-blaming credible concerns about sexual
harassment and assault by Vandel;

e.  Failing to complete written reports of sexual harassment, abuse and
molestation, and instead encouraging only verbal reports to avoid
creating documented actionable incidents that would reflect badly
on FAST and FCS;

f.  Failing to properly investigate allegations of sexual harassment,
abuse and molestation; and

g.  Sweeping serious concerns and reports under the rug to avoid
negative publicity.

222.

As a direct and proximate result of FCS, Looney, Loe, Rose, and Gatewood's
acts and omissions Vandel was able to isolate Jane Doe II and was able to sexually
harass, sexually assault and rape Jane Doe II.

223.

As a direct and proximate result of the acts and omissions of Defendants FCS,
Looney, Loe, Rose, and Gatewood, Jane Doe II suffered severe physical and
emotional damages, which will continue into the future.  Plaintiffs have incurred

substantial and significant medical expenses for care and treatment relating to the

injuries and damages Jane Doe II suffered as a result of Defendant's negligence.

**Count V:    Violation of Substantive Due Process (42 U.S.C. § 1983):**
**Fourteenth Amendment Due to a Willful Failure by Defendants to Follow**
**Their own Policies and Procedures and an Unofficial Custom, Policy, or**
**Practice of Allowing Misconduct by Vandel.**
**(Defendants FAST, Higgins in her Individual Capacity, Mahoney in his**
**Individual Capacity, Stinger in her Individual Capacity, Beiner in his**
**Individual Capacity, Akpan in his Individual Capacity, and Erickson in her**
**Individual Capacity)**

224.

Plaintiffs bring this action under 42 U.S.C. § 1983, which allows for claims

against defendants acting under the color of law for the deprivation of rights that are

afforded under the constitution, specifically for the deprivation of the substantive

due process rights to Jane Doe II, which are provided by the 14th amendment.

225.

This Count relates to two separate failures by Defendants relating to Robert

Vandel: (1) hiring Vandel despite his substantial history of sexual misconduct, and

(2) willfully ignoring their own policies which in ignoring reports of sexual

misconduct made against Vandel by FAST teachers, students and a parent.

226.

At all relevant times FAST acted under color of state law.

227.

At all relevant times Higgins acted under color of state law.

228.

At all relevant times Mahoney acted under color of state law.

229.

At all relevant times Stinger acted under color of state law.

230.

At all relevant times Beiner acted under color of state law.

231.

In addition to, or in the alternative to, the allegations of paragraph 176 Defendant Akpan was acting under color of state law.

232.

In addition to, or in the alternative to, the allegations of paragraph 176 Defendant Erickson was acting under color of state law.

233.

At all relevant times, Jane Doe II was a US citizen afforded the protections of the constitution of the United States of America.

234.

Jane Doe II had a constitutional right to liberty and bodily security which was

violated through the adoption of unofficial customs and policies, and decisions made by the final decisionmakers which led to Jane Doe II being sexually harassed, sexually assaulted, and raped while in the care and supervision of Defendants.

235.

Defendant Higgins was the final decisionmaker and policy maker regarding the employment of Vandel.

236.

FAST's principals and governing board members were final decision makers on policies regarding: (1) selection, retention, transfer, promotion, termination, and discipling of faculty and staff; (2) how to investigate, respond to, and manage reports of sexual harassment and assault against students by employees, including teachers; and (3) reporting to parents the dangers posed by employees of FAST between the start of the 2017-18 school year and the sexual harassment, assault, and rape of Minor Jane Doe II.

237.

The final policy maker(s) deliberately and willfully hired Vandel as a faculty member at the school despite knowing of his history of grooming, sexual harassment, and sexual assault of female middle school students.

238.

The final policy maker(s)  hired Vandel despite knowing of his history sexual

misconduct at Midland Middle School. Vandel's had previously been investigated for, and found responsible for the repeated grooming, sexual harassment, and sexual assault of female middle school students.  Yet, Vandel was hired to take a position at FAST that placed him around female middle school students.

239.

The final decision maker(s) at all relevant times, had authority to decide and/or adopt a course of action in response to each of the complaints of grooming, sexual harassment, sexual assault, and bullying raised by students, teachers, and parents against Vandel.

240.

At the time of and prior to the rape and attack of Jane Doe II, the final decisionmakers had actual knowledge of prior complaints regarding Vandel's inappropriate contact and sexual harassment with students at FAST, and with students at other institutions prior to his employment with FAST.  This prior information included:

    a. Reports from fourteen (14) teachers and staff at Midland Middle School, which were contained within the GPSC for Robert Vandel;

    b. Reports from six (6) students at Midland Middle School, which were contained within the GPSC file for Robert Vandel;

    c. Reports from at least five (5) teachers at FAST academy;

d. Reports from at least three (3) students at FAST academy; and

e. At least one (1) report from a parent at FAST academy.

241.

FCS and FAST's express policies required the Defendants to:

a. Conduct a background check on all new hires, prior to hiring them;

b. Appropriately discipline employees for misconduct, including sexual misconduct;

c. Investigate complaints raised by students and employees regarding sexual harassment, physical abuse, or inappropriate contact by a teacher;

d. Protect students, like Jane Doe II, from sexual harassment, physical abuse or inappropriate contact;

e. Adequately supervise employees that posed a substantial risk of harm to others;

f. Adequately supervise and monitor students like Jane Doe II;

g. Know of the whereabouts of all employees and students;

h. Suspend, discipline, remove, or report employees who were having inappropriate contact, including sexual contact, with students;

i. Properly notify parents/legal guardians whenever an employee engages in inappropriate conduct and/or sexually harasses a student;

j.  Institute reasonable corrective measures aimed at preventing known aggressors and harassers from assaulting students;

k.  Warn students, parents/legal guardians, and other employees of employees that have a history of inappropriate contact with students;

l.  Adequately train school employees on how to respond to complaints of sexual harassment, physical abuse or inappropriate contact;

m.  Adequately train school employees on how to make complaints of sexual harassment, physical abuse or inappropriate contact;

n.  Record incidents involving harassment, abuse or inappropriate contact involving employees;

o.  Prevent violent and dangerous employees from remaining in their positions; and

p.  Report cases of sexual harassment and inappropriate contact between teachers and students to the GPSC.

242.

Notwithstanding their own express policies, FAST through the final policy makers willfully had an unofficial policy, practice or custom of failing to:

a.  Properly investigate the background of Vandel, prior to hiring him;

b.  Review the public records for Vandel that are contained within the GPSC;

c.  Appropriately discipline Vandel;

d.  Investigate complaints raised by students, employees, and parents regarding sexual harassment, physical abuse, or inappropriate contact of students by Vandel;

e.  Protect Jane Doe II and other female students from sexual harassment, sexual assault, or rape or inappropriate contact by Vandel;

f.  Adequately supervise Vandel, despite knowledge that he posed a substantial risk of harm to others;

g.  Adequately supervise and monitor students including Jane Doe II;

h.  Know of the whereabouts of all employees and students, including Vandel and Jane Doe II;

i.  Suspend, discipline, remove, or report Vandel, who had a history of inappropriate contact with students, despite having final authority to do so;

j.  Properly notify parents/legal guardians when Vandel engaged in inappropriate conduct with a student;

k.  Institute reasonable corrective measures aimed at preventing Vandel, a known aggressor and harasser, from assaulting students, despite having final authority to do so;

l.  Warn students, parents/legal guardians, and other employees of

Vandel's history of grooming, sexual harassment and sexual assault of female students;

m. Adequately train school employees on how to respond to complaints of sexual harassment, physical abuse or inappropriate contact;

n. Adequately train school employees on how to make complaints of sexual harassment, physical abuse or inappropriate contact;

o. Make a record of incidents involving harassment, abuse or inappropriate contact involving Vandel;

p. Remove Vandel from his position, despite having the final authority to do so; and

q. Report cases of sexual harassment and inappropriate contact between Vandel and students to the GPSC.

243.

Prior to the attack on Jane Doe II by Vandel, there were continued and unofficial customs, policies, and practices of deliberate indifference to the risk of harassment and assault of young female students at FAST. These customs, policies, and practices included:

a. Placing Vandel in a room separated from the remainder of the teaching and administrative staff, which allowed him to engage in the exact same inappropriate behavior towards young female students at FAST that he

did at Midland Middle School;

b. Ignoring an official policy that prohibited teachers from giving candy or ice cream to students, and instead adopting an unofficial custom and policy of allowing Vandel to openly and brazenly give students candy and ice cream to facilitate his grooming efforts;

c. Ignoring an official policy that prohibited teachers from using the intruder blinds in their classrooms unless there was an active shooter drill and instead adopting an unofficial custom and policy of allowing teachers to use the blinds for privacy, which permitted Vandel to use the blinds when isolating, grooming and ultimately raping Jane Doe II;

d. Ignoring official policies to create written reports for reports of sexual harassment, abuse and molestation, and instead adopting an unofficial custom and policy of encouraging only verbal reports to avoid creating documented actionable incidents that would reflect badly on the school;

e. Deleting emails, messages, and other compromising information regarding complaints at the school;

f. Sweeping serious concerns and reports under the rug to avoid bad publicity;

g. Refusing to follow the Fulton County sexual harassment policies and training, and the State and Federal requirements of mandatory reporting

of sexual harassment and assault, including harassment and assault of

students and teachers by Vandel;

h.  Refusing to report accusations of Vandel's inappropriate behavior with

young female students or sexual misconduct by Vandel; and

i.  Downplaying and victim-blaming credible concerns about sexual

harassment and assault by Vandel.

244.

In spite of Vandel's grooming, sexual harassment, and sexual assault of other

female students and faculty members, both at FAST and previous institutions, no

action was ever taken to protect students from Vandel. No formal investigation into

Vandel was conducted.  Vandel was repeatedly protected from investigation, and

provided him with no reprimands, sanctions, or suspensions prior to the sexual

assault and rape of Jane Doe II.

245.

FAST willfully placed Jane Doe II and other female students at FAST at risk

of sexual attack by Vandel, by:

a.  Retaining Vandel as a teacher despite the findings of the investigation

by the GPSC and decision of an Administrative Law Judge who

concluded Vandel had violated the code of ethics for educators through

his abuse of students.  Ignored the credible reports of fourteen teachers

and seven students who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

b. Ignoring reports from at least five teachers at FAST, at least 3 students at FAST, at least one parent of a student at FAST who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

c. Failing to adopt and enforce policies that would have prevented Vandel from engaging in grooming, sexual assault, sexual harassment, and the rape of Jane Doe II and instead adopting unofficial customs, policies and practices including: (1) allowing Vandel to show preferential treatment to female students by providing candy to students, (2) allowing female students to congregate in Vandel's classroom during

breaks, (3) ignoring policies to create written reports for reports of sexual harassment, abuse and molestation, (4) sweeping serious concerns and reports under the rug to avoid publicity, (5) refusing to follow the Fulton County sexual harassment policies and training, and the State and Federal requirements of mandatory reporting of sexual harassment and assault, (6) refusing to report accusations of Vandel's inappropriate behavior with young female students or sexual misconduct by Vandel, (7) downplaying and victim-blaming credible concerns about sexual harassment and assault by Vandel, and (8) ignoring an official policy that prohibited teachers from using the intruder blinds in their classrooms unless there was an active shooter drill and instead allowing teachers to use the blinds for privacy, which permitted Vandel to use the blinds when isolating, grooming and ultimately raping Jane Doe II.

246.

During her tenure as Principal, Defendant Higgins willfully placed Jane Doe II and other female students at FAST at risk of sexual attack by Vandel, by:

    a. Hiring and retaining Vandel despite the findings of the investigation by the GPSC and decision of an Administrative Law Judge who concluded Vandel had violated the code of ethics for educators through his abuse

of students.  Ignored the credible reports of fourteen teachers and seven students who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

b.  Hiring Vandel despite knowing that Vandel had previously been arrested for sexual and simple battery against minor children and that a state investigation into his behavior was conducted.

c.  Ignoring reports from teachers at FAST who alleged among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

d.  Failing to adopt and enforce policies that would have prevented Vandel from engaging in grooming, sexual assault, sexual harassment, and instead adopting unofficial customs, policies and practices specifically for Vandel that increased the risk of harassment and assault of young

female students at FAST, including: (1) placing Vandel in a room separated from the remainder of the teaching and administrative staff, which allowed him to engage in the exact same inappropriate behavior towards young female students at FAST that he did at Midland Middle School, (2) allowing Vandel to show preferential treatment to female students by providing candy to students, (3) allowing female students to congregate in Vandel's classroom during breaks, (4) ignoring policies to create written reports for reports of sexual harassment, abuse and molestation, (5) sweeping serious concerns and reports under the rug to avoid publicity, (6) refusing to follow the Fulton County sexual harassment policies and training, and the State and Federal requirements of mandatory reporting of sexual harassment and assault, (7) refusing to report accusations of Vandel's inappropriate behavior with young female students or sexual misconduct by Vandel.

247.

During his tenure as Principal, Defendant Mahoney willfully placed Jane Doe II and other female students at FAST at risk of sexual attack by Vandel, by:

a. Retaining Vanel as a teacher at FAST despite the findings of the investigation by the GPSC and decision of an Administrative Law Judge who concluded Vandel had violated the code of ethics for

educators through his abuse of students.  Ignored the credible reports of fourteen teachers and seven students who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

b. Ignoring reports from teachers at FAST who alleged among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him..

c. Failing to adopt and enforce policies that would have prevented Vandel from engaging in grooming, sexual assault, sexual harassment, and instead adopting unofficial customs, policies and practices specifically for Vandel that increased the risk of harassment and assault of young female students at FAST, including: (1) placing Vandel in a room separated from the remainder of the teaching and administrative staff, which allowed him to engage in the exact same inappropriate behavior

towards young female students at FAST that he did at Midland Middle School, (2) allowing Vandel to show preferential treatment to female students by providing candy to students, (3) allowing female students to congregate in Vandel's classroom during breaks, (4) ignoring policies to create written reports for reports of sexual harassment, abuse and molestation, (5) sweeping serious concerns and reports under the rug to avoid publicity, (6) refusing to follow the Fulton County sexual harassment policies and training, and the State and Federal requirements of mandatory reporting of sexual harassment and assault, (7) refusing to report accusations of Vandel's inappropriate behavior with young female students or sexual misconduct by Vandel,.

248.

During her tenure as Principal, Defendant Stinger willfully placed Jane Doe II and other female students at FAST at risk of sexual attack by Vandel, by:

a. Retaining Vanel as a teacher at FAST despite the findings of the investigation by the GPSC and decision of an Administrative Law Judge who concluded Vandel had violated the code of ethics for educators through his abuse of students. Ignored the credible reports of fourteen teachers and seven students who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually

suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

b. Ignoring reports from teachers at FAST who alleged among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him..

c. Failing to adopt and enforce policies that would have prevented Vandel from engaging in grooming, sexual assault, sexual harassment, and instead adopting unofficial customs, policies and practices specifically for Vandel that increased the risk of harassment and assault of young female students at FAST, including: (1) placing Vandel in a room separated from the remainder of the teaching and administrative staff, which allowed him to engage in the exact same inappropriate behavior towards young female students at FAST that he did at Midland Middle School, (2) allowing Vandel to show preferential treatment to female students by providing candy to students, (3) allowing female students

to congregate in Vandel's classroom during breaks, (4) ignoring policies to create written reports for reports of sexual harassment, abuse and molestation, (5) sweeping serious concerns and reports under the rug to avoid publicity, (6) refusing to follow the Fulton County sexual harassment policies and training, and the State and Federal requirements of mandatory reporting of sexual harassment and assault, (7) refusing to report accusations of Vandel's inappropriate behavior with young female students or sexual misconduct by Vandel, (8) downplaying and victim-blaming credible concerns about sexual harassment and assault by Vandel,.

249.

During his tenure as Principal, Defendant Beiner willfully placed Jane Doe II and other female students at FAST at risk of sexual attack by Vandel, by:

a. Retaining Vandel as a teacher despite the findings of the investigation by the GPSC and decision of an Administrative Law Judge who concluded Vandel had violated the code of ethics for educators through his abuse of students.  Ignored the credible reports of fourteen teachers and seven students who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to

students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

b.  Ignoring reports from at least five teachers at FAST, at least 3 students at FAST, at least one parent of a student at FAST who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

c.  Failing to adopt and enforce policies that would have prevented Vandel from engaging in grooming, sexual assault, sexual harassment, and the rape of Jane Doe II and instead adopting unofficial customs, policies and practices including: (1) allowing Vandel to show preferential treatment to female students by providing candy to students, (2) allowing female students to congregate in Vandel's classroom during breaks, (3) ignoring policies to create written reports for reports of sexual harassment, abuse and molestation, (4) sweeping serious concerns and reports under the rug to avoid publicity, (5) refusing to

follow the Fulton County sexual harassment policies and training, and the State and Federal requirements of mandatory reporting of sexual harassment and assault, (6) refusing to report accusations of Vandel's inappropriate behavior with young female students or sexual misconduct by Vandel, (7) downplaying and victim-blaming credible concerns about sexual harassment and assault by Vandel, and (8) ignoring an official policy that prohibited teachers from using the intruder blinds in their classrooms unless there was an active shooter drill and instead allowing teachers to use the blinds for privacy, which permitted Vandel to use the blinds when isolating, grooming and ultimately raping Jane Doe II.

250.

Defendant Erickson willfully placed Jane Doe II and other female students at FAST at risk of sexual attack by Vandel, by:

a.  Hiring and retaining Vandel as a teacher despite the findings of the investigation by the GPSC and decision of an Administrative Law Judge who concluded Vandel had violated the code of ethics for educators through his abuse of students.  Ignored the credible reports of fourteen teachers and seven students who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually

126

suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

b. Ignoring reports from at least five teachers at FAST, at least 3 students at FAST, at least one parent of a student at FAST who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

c. Failing to adopt and enforce policies that would have prevented Vandel from engaging in grooming, sexual assault, sexual harassment, and the rape of Jane Doe II and instead adopting unofficial customs, policies and practices including: (1) allowing Vandel to show preferential treatment to female students by providing candy to students, (2) allowing female students to congregate in Vandel's classroom during breaks, (3) ignoring policies to create written reports for reports of sexual harassment, abuse and molestation, (4) sweeping serious

concerns and reports under the rug to avoid publicity, (5) refusing to follow the Fulton County sexual harassment policies and training, and the State and Federal requirements of mandatory reporting of sexual harassment and assault, (6) refusing to report accusations of Vandel's inappropriate behavior with young female students or sexual misconduct by Vandel, (7) downplaying and victim-blaming credible concerns about sexual harassment and assault by Vandel, and (8) ignoring an official policy that prohibited teachers from using the intruder blinds in their classrooms unless there was an active shooter drill and instead allowing teachers to use the blinds for privacy, which permitted Vandel to use the blinds when isolating, grooming and ultimately raping Jane Doe II.

d. Hiring Vandel despite knowing that Vandel had previously been arrested for sexual and simple battery against minor children and that a state investigation into his behavior was conducted.

251.

Defendant Akpan willfully placed Jane Doe II and other female students at FAST at risk of sexual attack by Vandel, by:

a. Hiring and retaining Vandel as a teacher despite the findings of the investigation by the GPSC and decision of an Administrative Law

Judge who concluded Vandel had violated the code of ethics for educators through his abuse of students.  Ignored the credible reports of fourteen teachers and seven students who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

b. Ignoring reports from at least five teachers at FAST, at least 3 students at FAST, at least one parent of a student at FAST who alleged, among other things, that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

c. Failing to adopt and enforce policies that would have prevented Vandel from engaging in grooming, sexual assault, sexual harassment, and the rape of Jane Doe II and instead adopting unofficial customs, policies and practices including: (1) allowing Vandel to show preferential

treatment to female students by providing candy to students, (2) allowing female students to congregate in Vandel's classroom during breaks, (3) ignoring policies to create written reports for reports of sexual harassment, abuse and molestation, (4) sweeping serious concerns and reports under the rug to avoid publicity, (5) refusing to follow the Fulton County sexual harassment policies and training, and the State and Federal requirements of mandatory reporting of sexual harassment and assault, (6) refusing to report accusations of Vandel's inappropriate behavior with young female students or sexual misconduct by Vandel, (7) downplaying and victim-blaming credible concerns about sexual harassment and assault by Vandel, and (8) ignoring an official policy that prohibited teachers from using the intruder blinds in their classrooms unless there was an active shooter drill and instead allowing teachers to use the blinds for privacy, which permitted Vandel to use the blinds when isolating, grooming and ultimately raping Jane Doe II.

d. Hiring Vandel despite knowing that Vandel had previously been arrested for sexual and simple battery against minor children and that a state investigation into his behavior was conducted.

252.

Defendant FAST's willful actions led to the deprivation of rights afforded to Jane Doe II under the 14th amendment of the United States Constitution.

253.

Defendant Higgins' willful actions led to the deprivation of rights afforded to Jane Doe II under the 14th amendment of the United States Constitution.

254.

Defendant Mahoney's willful actions led to the deprivation of rights afforded to Jane Doe II under the 14th amendment of the United States Constitution.

255.

Defendant Stinger's willful actions led to the deprivation of rights afforded to Jane Doe II under the 14th amendment of the United States Constitution.

256.

Defendant Beiner's willful actions led to the deprivation of rights afforded to Jane Doe II under the 14th amendment of the United States Constitution.

257.

Defendant Akpan's willful actions led to the deprivation of rights afforded to Jane Doe II under the 14th amendment of the United States Constitution.

258.

Defendant Erickson's willful actions led to the deprivation of rights afforded

to Jane Doe II under the 14th amendment of the United States Constitution.

259.

As a direct and proximate result of Defendants FAST, Higgins, Mahoney, Stinger, Beiner, Akpan, and Erickson willful failure to enforce their policies and procedures Jane Doe II suffered physical, emotion and psychological injury.

260.

Plaintiffs are entitled to recover from Defendants all compensatory, special, economic, consequential, general, and all other damages permissible under federal law.

**Count VI:   Violation of Substantive Due Process (42 U.S.C. § 1983): Fourteenth Amendment due to a Failure to Take Corrective Action. (Defendants, FAST, Higgins in her Individual Capacity, Mahoney in his Individual Capacity, Stinger in her Individual Capacity, Beiner in his Individual Capacity, Akpan in his Individual Capacity, and Erickson in her Individual Capacity)**

261.

Plaintiffs bring this action under 42 U.S.C. § 1983, which allows for claims against defendants acting under the color of law for the deprivation of rights that are afforded under the constitution, for the invasion of the bodily integrity of Jane Doe II by Vandel as protected by the 14th amendment.

262.

At all relevant times, FCS acted under color of state law.

263.

At all relevant times FAST acted under color of state law.

264.

At all relevant times, Higgins acted under color of state law.

265.

At all relevant times, Mahoney acted under color of state law.

266.

At all relevant times Stinger acted under color of state law.

267.

At all relevant times, Beiner acted under color of state law.

268.

In addition to, or in the alternative to, the allegations of paragraph 176 Defendant Akpan was acting under color of state law.

269.

In addition to, or in the alternative to, the allegations of paragraph 176 Defendants Erickson was acting under color of state law.

270.

At all relevant times Jane Doe II was a citizen of the United States of America and protected by the rights afforded to her under the constitution of the United States of America.

271.

Under the 14th amendment of the Constitution, Jane Doe II had a constitutional right to liberty and bodily security which Defendants violated through both the adoption of unofficial customs and policies, and decisions made by the final decisionmakers which led to Jane Doe II being sexually harassed, sexually assaulted, and raped while in the care and supervision of Defendants.

272.

FAST's principals and governing board members were final decision makers on policies regarding: (1) selection, retention, transfer, promotion, termination, and disciplinary of faculty and staff; (2) how to investigate, respond to, and manage reports of sexual harassment and assault against students by employees, including teachers; and (3) reporting to parents the dangers posed by employees of FAST between the start of the 2017-18 school year and the sexual harassment, assault, and rape of Minor Jane Doe II.

273.

Jane Doe II was deprived of the protections afforded to her by the Constitution when Defendants allowed Vandel to continue to groom, sexually assault and harass female students at FAST culminating in Jane Doe II's rape and sexually assault.

274.

During his time employed at FAST Robert Vandel engaged in a persistent

pattern of abuse of young female students by grooming, sexually harassing, and sexually assaulting them.

275.

Teacher 15 was a teacher at FAST who reported concerns about Vandel to FAST.  Teacher 15's conduct and knowledge of FAST 's attitudes towards Vandel includes the following:

a. On March 24, 2019 Teacher 15, a teacher at FAST, emailed Defendant Stinger and two members of the FFI board/FAST governing board, including Defendant Erickson, and reported "They [the Principal and administration] were aware of this man's behavior towards children and other teachers before. . . a long, long time ago."

b. The email reported that Teacher 15 was deeply concerned that Vandel was creating situations to be alone with girls.  She pulled her own daughter out of school, and Vandel was one of the main reasons why.

c. Teacher 15 reported that Vandel would make sexualized comments about younger teachers and how they looked in their tight jeans, etc.

d. Vandel was sexually suggestive and inappropriate with several young female students.

e. Teacher 15 articulated: "I have to say something."

f. "When I went to Principal Stinger, she got mad at me.  She said she couldn't believe I'd say something like that about Vandel."  She [Stinger] shamed Teacher 15 because Teacher 15's daughter has special needs and was in the hospital, and Vandel took her a Thanksgiving meal.  The teacher said she was telling Principal Stinger so she "could keep an eye on him".  Principal Stinger replied that she was disgusted with Teacher 15.

g. Principal Stinger told Vandel about the Teacher 15's report about him.

h. According to Teacher 15, Vandel's inappropriate behavior kept happening.  She would see Vandel talking to and interacting with young female students in totally inappropriate ways.

i. In a separate incident, teacher 15 encountered a female student who said that she would kill people.  Teacher 15 told the girl's mother because she was worried she would get in trouble if she did not report her. Principal Stinger became upset with Teacher 15 because she told the mother.  Teacher 15 was  told not to come back.  The teacher wanted to say goodbye.  Principal Stinger said no, she could not, and in fact she owed the school money because she broke her contract.  This incident further reflected FAST's unofficial custom or policy regarding reports of misconduct, and meeting those reports with disbelief, ridicule, and punishment.

j. Teacher 15 emailed the only school Board member with an educational background about her concerns, who the teacher was, communicated her awareness of the law and her obligation to report, and copied Principal Stinger and another Board member.  Months went by.

k. After becoming Principal of FAST, Principal Mahoney admitted to this teacher that Vandel "should never have been hired."  Principal Mahoney admitted that he knew about Vandel previously losing his certification over having inappropriate relations with students.

l. Teacher 15 has wondered, if they knew about Vandel's prior incidents, why didn't the administration believe her complaints regarding strikingly similar misconduct?  She explained that, even if they doubt her, there should have been a thorough, formal investigation.

m. According to Teacher 15, FAST through its administrators and board members said Teacher 15 was "being dramatic" for bringing these concerns to light.  They were very tough on her from that point forward.

n. The FAST administration told Teacher 15 that her perspective was her fault.  They said she came from a good school district, and she did not understand the challenges of being a start-up Charter School.

o. Teacher 15 was aware that Vandel treated one female student who was overweight very badly, telling her to shut up, telling her she was stupid,

and mocking her weight.  Teacher 15 is aware that Asst. Principal Epstein thought Vandel's behavior was funny and not a cause for concern.  This reflects the unofficial custom developing around Vandel at FAST.  Teacher 15 is reports that another teacher was reported when she told a student to shut up, and she was reprimanded by FAST administrators.  But Vandel received no similar rebuke for almost identical behavior.

p.  Vandel told Teacher 15 she looked just as good as an attractive young kindergarten teacher when this teacher wore her tight jeans.  This made her very uncomfortable, and she started wearing long shirts because of Vandel's comments about her and others' bottoms looking good.

q.  Teacher 15 was concerned about Vandel's flirting and sexualized interactions with two female students in particular.  Teacher 15 observed that he seemed to flirt with young fit girls with long hair.  He seemed to have a type.

r.  Rarely has Teacher 15 had these kinds of feelings and concerns about someone's behavior.  She was alarmed.  She reported it.  And, according to this teacher, "then everyone saw what happened to me."  "There's no way anyone would go and say anything about Robert [Vandel] after they saw what happened to me."

s.  Teacher 15 reported there was a custom and practice at FAST of not following the ethics training because they viewed a Charter School as a start-up environment in which such things were not necessary.  She had to explain what a mandatory reporter was.

t.  She reported that the FAST administration "would get so, so angry with anyone who tried to improve" on this situation."  "It was one of those situations where it was acceptable behavior to not be doing the right thing."

u.  Another FAST staff member told Teacher 15 that the FAST administration had asked her to keep an eye on Vandel because they were aware of the accusations against him.  This reflected the failure of the school to follow actual sexual harassment policy in favor of unofficial custom and policy of not conducting any formal investigation, not conducting any formal review, avoiding creating written records, and being deliberately indifferent to the very real risks posed to young female students.

v.  Teacher 15 believed that Fulton County hated any bad press brought on by teacher conduct, and tried to avoid creating records allowing it.  This created a "breeding ground" for bad things to happen because human resources would come after reporters.  "I've seen this happen over and over again."

w. Another teacher asked her if she thought "I'll be ok if I do" report Vandel. Teacher 15 said she must take her commitment to the kids more seriously than the worry about what human resources will do.

x. Regarding younger teachers making complaints, "They were young and scared and they didn't want to do anything."

y. Teacher 15 observed Vandel would give girls candy and ice cream regularly.  This was against official school policy but unofficial school custom and policy knowingly allowed Vandel to do this regularly anyway.

276.

Teacher 16, a teacher at FAST, also reported Vandel for similar behavior:

a. Teacher 16 reported Vandel to the administration, after having conversations with several young female students who expressed their concerns about sexualized interactions.  For example, Vandel went behind these girls and touched their hair and tucked it behind the ear.  He would compliment and insult the girls in very personal, age-inappropriate ways to manipulate them.

b. Epstein would not respond and formally address the complaint.

c. Teacher 16 made at least four (4) separate reports to the FAST administration about her concerns about Vandel's interactions with young female students (Student 8 and Student 9) and a young female teacher

(Teacher 17).  She was worried that she would get in trouble for her reporting.

d.  Two (2) of Teacher 16's reports were about what she described as "sexual misconduct."

e.  Teacher 16 reported that Teacher 17 sort her out and told her that Vandel would touch and rub her shoulders and neck a lot in a way that felt very inappropriate.  Teacher 17 asked Vandel to stop.  He never stopped.  When he talked to her, he would lean in too close and violated the Teacher 17's space in an obvious and sexualized way.

f.  Teacher 16 took these concerns to Principal Stinger.  Principal Stinger refused to believe this actually happened.  Stinger said she cannot and will not do anything about it.  There would be no investigation.

g.  After saying inappropriate things to this teacher, Vandel stopped her in the hallway and told Teacher 16, "I know you won't tell anyone sweetie."

h.  Teacher 16 also reported Vandel for animal abuse.

277.

Another FAST teacher, Teacher 18, reported that Vandel would let female students in his room with no other adults present during recess.  Teacher 18 reported this to the FAST Principal at the time and the FAST Principal reacted as though

Teacher 18 was in the wrong.

278.

An additional teacher, Teacher 19, reported to Principal Stinger that a co-worker, Teacher 20, became uncomfortable when Vandel called Teacher 20 "cutie."

279.

In late November or early December of 2019, two male students (Student 10 and Student 11) approached Teacher 21, a teacher at FAST, on three separate occasions to report inappropriate sexual behavior by Vandel to another female student, Student 12.

280.

Teacher 21 reached out to Student 12 and confirmed the allegations the male students made regarding Vandel's inappropriate conduct to Student 12.

281.

Vandel massaged Student 12's shoulders, had pet names for Student 12, put his hand on Student 12's back for extended periods of time, and smacked Student 12's butt with a ruler.  Student 12 described Vandal as a "touchy old man."

282.

Teacher 21 emailed Principal Beiner regarding the issues raised by Students 10, 11, and 12 and requested a meeting with Principal Beiner to discuss the complaints and issues regarding Vandel.

283.

Teacher 21 met with Principal Beiner to inform him of the sexual harassment committed by Vandel.

284.

Following this meeting, Beiner requested a meeting with Teacher 21 and Student 12, to hear directly from the student as to what she was experiencing.

285.

On or about December 2, 2019, Beiner and Epstein met with Teacher 21 and Student 12, without the knowledge or consent of Student 12's parents, to discuss Vandel's sexual harassment of Student 12.  During the meeting Beiner claimed to believe Student 12 but also stated "Mr. Vandel wouldn't do that."

286.

In an attempt to support Student 12 and compel Beiner and Epstein to believe that Vandel was a problem, Teacher 21 shared her own story of being sexually harassed by Vandel.  She told Beiner and Epstein that when she was bending over the copier to fix it, Vandel told her "if she kept bending over like that he was going to have to do something about it."  Teacher 21 told Beiner and Epstein that this comment was made in front of students and caused Teacher 21 considerable embarrassment.

287.

During the meeting with Teacher 21, Beiner claimed he would take steps, but he did not.  He did no investigation, and nothing was done.  Vandel's behavior continued, unabated.

288.

Following the meetings with Beiner, Teacher 21 and Student 12 did not believe that Beiner had taken the report seriously, or that Vandel would receive anything more than a slap on the wrist.

289.

Teacher 21 felt that Beiner and Epstein intended to sweep the allegations against Vandel under the rug.

290.

Teacher 21 also heard from another female student, Student 13, that Vandel had been messaging Student 13 late at night.

291.

After finding out about Vandel's harassment of Student 12, and learning of, Beiner and Epstein's interview of Student 12, Student 12's parents withdrew her from FAST.

292.

On January 17, 2020 the parents of Student 12 sent an email to the FAST

Governing Board/FFI Board regarding their daughter and the reasons that they were withdrawing her from the school.  They stated that they were dissatisfied with FAST's response to the allegations of sexual misconduct, and that "the two pieces of information that [Student 12] shared with us . . . are indeed things that [Vandel] should not have done, and did, in fact make [Student 12] uncomfortable."

293.

In response, the chair of the FAST/FFI boards, Defendant Akpan, confirmed that there would be an investigation, and that he would follow up at the conclusion of the investigation.

294.

The family of Student 12 never received any follow-up regarding the conclusion of any investigation.  Upon information and belief, no investigation was conducted.

295.

Defendant FAST was aware of a persistent pattern of abuse by Robert Vandel of young female students and teachers based upon reports from teachers, students, and a parent.  FAST was specifically aware that Vandel (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6)

invited female students to his home to pick up gifts from him.

296.

Defendant Higgins was aware Vandel's persistent pattern of abuse of young female students based upon reports from teachers at FAST. Higgins was specifically aware that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

297.

Defendant Mahoney was aware Vandel's persistent pattern of abuse of young female students based upon reports from teachers at FAST. Mahoney was specifically aware that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

298.

Defendant Stinger was aware Vandel's persistent pattern of abuse of young

female students based upon reports from teachers at FAST. Stinger was specifically aware that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

299.

Defendant Beiner was aware Vandel's persistent pattern of abuse of young female student based upon reports from teachers, students, and a parent. Beiner was specifically aware that that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

300.

Defendant Erickson was aware Vandel's persistent pattern of abuse of young female student based upon reports from teachers, and a parent. Erickson was specifically aware that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female

students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

301.

Defendant Akpan was aware Vandel's persistent pattern of abuse of young female student based upon reports from teachers, and a parent. Akpan was specifically aware that Vandel: (1) groomed female students, (2) gave students sexually suggestive nicknames, (3) made overtly sexual and harassing comments to students, (4) touched minor female students in a sexual manner, (5) suggested female students call him outside of work hours, and (6) invited female students to his home to pick up gifts from him.

302.

Prior to Jane Doe II's rape Defendant FAST deliberately and willfully ignored the reported abuse it received by failing to:

    a.  Report the abuse to the appropriate individuals and entities;

    b.  Appropriately investigate the allegations of abuse;

    c.  Reprimand Vandel or in anyway limit his ability to isolate and be alone with female students;

    d.  Suspend Vandel; and/or

    e.  Remove Vandel from his position as a teacher at FAST.

303.

Prior to Jane Doe II's rape Defendant Higgins deliberately and willfully ignored the reported abuse she received by failing to:

a. Report the abuse to the appropriate individuals and entities;

b. Appropriately investigate the allegations of abuse;

c. Reprimand Vandel or in anyway limit his ability to isolate and be alone with female students;

d. Suspend Vandel; and/or

e. Remove Vandel from his position as a teacher at FAST.

304.

Prior to Jane Doe II's rape Defendant Mahoney deliberately and willfully ignored the reported abuse he received by failing to:

a. Report the abuse to the appropriate individuals and entities;

b. Appropriately investigate the allegations of abuse;

c. Reprimand Vandel or in anyway limit his ability to isolate and be alone with female students;

d. Suspend Vandel; and/or

e. Remove Vandel from his position as a teacher at FAST.

305.

Prior to Jane Doe II's rape Defendant Stinger deliberately and willfully

ignored the reported abuse she received by failing to:

    a.  Report the abuse to the appropriate individuals and entities;

    b.  Appropriately investigate the allegations of abuse;

    c.  Reprimand Vandel or in anyway limit his ability to isolate and be alone with female students;

    d.  Suspend Vandel; and/or

    e.  Remove Vandel from his position as a teacher at FAST.

306.

Prior to Jane Doe II's rape Defendants Beiner deliberately and willfully ignored the reported abuse he received by failing to:

    a.  Report the abuse to the appropriate individuals and entities;

    b.  Appropriately investigate the allegations of abuse;

    c.  Reprimand Vandel or in anyway limit his ability to isolate and be alone with female students;

    d.  Suspend Vandel; and/or

    e.  Remove Vandel from his position as a teacher at FAST.

307.

Prior to Jane Doe II's rape Defendant Erickson deliberately and willfully ignored the reported abuse she received by failing to:

    a.  Report the abuse to the appropriate individuals and entities;

b. Appropriately investigate the allegations of abuse;

c. Reprimand Vandel or in anyway limit his ability to isolate and be alone with female students;

d. Suspend Vandel; and/or

e. Remove Vandel from his position as a teacher at FAST.

308.

Prior to Jane Doe II's rape Defendant Akpan deliberately and willfully ignored the reported abuse he received by failing to:

a. Report the abuse to the appropriate individuals and entities;

b. Appropriately investigate the allegations of abuse;

c. Reprimand Vandel or in anyway limit his ability to isolate and be alone with female students;

d. Suspend Vandel; and/or

e. Remove Vandel from his position as a teacher at FAST.

309.

Defendant FAST's willful actions led to the deprivation of rights afforded to Jane Doe II under the 14th amendment of the United States Constitution.

310.

Defendant Higgins' willful actions led to the deprivation of rights afforded to Jane Doe II under the 14th amendment of the United States Constitution.

311.

Defendant Mahoney's willful actions led to the deprivation of rights afforded to Jane Doe II under the 14th amendment of the United States Constitution.

312.

Defendant Stinger's willful actions led to the deprivation of rights afforded to Jane Doe II under the 14th amendment of the United States Constitution.

313.

Defendant Beiner's willful actions led to the deprivation of rights afforded to Jane Doe II under the 14th amendment of the United States Constitution.

314.

Defendant Akpan's willful actions led to the deprivation of rights afforded to Jane Doe II under the 14th amendment of the United States Constitution.

315.

Defendant Erickson's willful actions led to the deprivation of rights afforded to Jane Doe II under the 14th amendment of the United States Constitution.

316.

Plaintiffs are entitled to recover from Defendants all compensatory, special, economic, consequential, general, and all other damages permissible under federal law.

**Count VII:   Violation of Substantive Due Process (42 U.S.C. § 1983):
Fourteenth Amendment Due to a Willful Failure by Defendants to Follow
Their own Policies and Procedures and an Unofficial Custom, Policy, or
Practice of Allowing Misconduct by Vandel.
(Defendants FCS, Looney in his Individual Capacity, Loe in her Individual
Capacity, Rose in his Individual Capacity, and Gatewood in her Individual
Capacity)**

317.

Plaintiffs bring this action under 42 U.S.C. § 1983, which allows for claims
against defendants acting under the color of law for the deprivation of rights that are
afforded under the constitution, specifically for the deprivation of the substantive
due process rights to Jane Doe II, which are provided by the 14th amendment.

318.

At all relevant times, Defendant FCS acted under color of state law in its
administration of and obligation to monitor and protect students at FAST.

319.

At all relevant times, Defendant Looney acted under color of state law in his
administration of and obligation to monitor and protect students at FAST.

320.

At all relevant times, Defendants Loe acted under color of state law in their
administration of and obligation to monitor and protect students at FAST.

321.

At all relevant times, Defendants Rose acted under color of state law in their

administration of and obligation to monitor and protect students at FAST.

322.

At all relevant times, Defendants Gatewood acted under color of state law in their administration of and obligation to monitor and protect students at FAST.

323.

At all relevant times, Jane Doe II was a US citizen afforded the protections of the constitution of the United States of America.

324.

Jane Doe II had a constitutional right to liberty and bodily security which was violated by being sexually harassed and assaulted while in the care of Defendants and the staff and employees at FAST.

325.

Defendants Looney, Loe, and Rose as superintendents of the Fulton County School system, and Defendant Gatewood, as assistant superintendent for charter schools in the Fulton County School System, were the final policymakers for policies and procedures for responding to reports of sexual violence in Fulton County School System's charter schools, including at FAST.

326.

Defendant FCS adopted improper customs, practices and policies for the Fulton County School System that demonstrated deliberate indifference to the sexual

assault of students by teachers in the school system.  This deliberate indifference is demonstrated through:

     a. Failure to provide sufficient training to administrators, teachers and staff in the Fulton County School System regarding response to reports of sexual harassment and violence against students;

     b. Failure to properly implement the Fulton County School System sexual assault policy and investigative process; and

     c. Failure to require charter schools and administrators who hear of sexual harassment and molestation committed by teachers to put in place interim measures to protect students while the complaints are fully investigated.

327.

Defendant Looney adopted improper customs, practices and policies for the Fulton County School System that demonstrated deliberate indifference to the sexual assault of students by teachers in the school system.  This deliberate indifference is demonstrated through:

     a. Failure to provide sufficient training to administrators, teachers and staff in the Fulton County School System regarding response to reports of sexual harassment and violence against students;

     b. Failure to properly implement the Fulton County School System sexual

assault policy and investigative process; and

c. Failure to require charter schools and administrators who hear of sexual harassment and molestation committed by teachers to put in place interim measures to protect students while the complaints are fully investigated.

328.

Defendant Loe adopted improper customs, practices and policies for the Fulton County School System that demonstrated deliberate indifference to the sexual assault of students by teachers in the school system. This deliberate indifference is demonstrated through:

a. Failure to provide sufficient training to administrators, teachers and staff in the Fulton County School System regarding response to reports of sexual harassment and violence against students;

b. Failure to properly implement the Fulton County School System sexual assault policy and investigative process; and

c. Failure to require charter schools and administrators who hear of sexual harassment and molestation committed by teachers to put in place interim measures to protect students while the complaints are fully investigated.

329.

Defendant Rose adopted improper customs, practices and policies for the Fulton County School System that demonstrated deliberate indifference to the sexual assault of students by teachers in the school system.  This deliberate indifference is demonstrated through:

a. Failure to provide sufficient training to administrators, teachers and staff in the Fulton County School System regarding response to reports of sexual harassment and violence against students;

b. Failure to properly implement the Fulton County School System sexual assault policy and investigative process; and

c. Failure to require charter schools and administrators who hear of sexual harassment and molestation committed by teachers to put in place interim measures to protect students while the complaints are fully investigated.

330.

Defendant Gatewood adopted improper customs, practices and policies for the Fulton County School System that demonstrated deliberate indifference to the sexual assault of students by teachers in the school system.  This deliberate indifference is demonstrated through:

a. Failure to provide sufficient training to administrators, teachers and

staff in the Fulton County School System regarding response to reports of sexual harassment and violence against students;

b. Failure to properly implement the Fulton County School System sexual assault policy and investigative process; and

c. Failure to require charter schools and administrators who hear of sexual harassment and molestation committed by teachers to put in place interim measures to protect students while the complaints are fully investigated.

331.

FCS official policies required FCS, Looney, Loe, Rose, and Gatewood to require all schools to:

a. Investigate all personnel accused of violations of the Fulton County School's sexual assault policy;

b. Appoint an investigator to evaluate reports of sexual harassment and molestation;

c. Impose interim measures on teachers accused of violating the sexual assault policy; and

d. Sanction teachers found to have violated the sexual assault policy.

332.

FCS engaged in continued and unofficial customs, policies, and practices of

deliberate indifference to the risk of harassment and assault of young female students. These customs, policies, and practices included:

a. Failure to require Robert Vandel to be investigated for violations of the Fulton County Schools' sexual assault policy;

b. Failure of Fulton County School System to appoint an investigator to evaluate the reports of sexual harassment and molestation made against Robert Vandel;

c. Failure to require Robert Vandel to be subject to interim measures while he was investigated for sexual harassment and molestation of female students and teachers at FAST; and

d. Failure to require Robert Vandel to be sanctioned for violations of the sexual assault policy.

333.

Looney engaged in continued and unofficial customs, policies, and practices of deliberate indifference to the risk of harassment and assault of young female students. These customs, policies, and practices included:

a. Failure to require Robert Vandel to be investigated for violations of the Fulton County Schools' sexual assault policy;

b. Failure of Fulton County School System to appoint an investigator to evaluate the reports of sexual harassment and molestation made against

Robert Vandel;

c. Failure to require Robert Vandel to be subject to interim measures while he was investigated for sexual harassment and molestation of female students and teachers at FAST; and

d. Failure to require Robert Vandel to be sanctioned for violations of the sexual assault policy.

334.

Loe engaged in continued and unofficial customs, policies, and practices of deliberate indifference to the risk of harassment and assault of young female students. These customs, policies, and practices included:

a. Failure to require Robert Vandel to be investigated for violations of the Fulton County Schools' sexual assault policy;

b. Failure of Fulton County School System to appoint an investigator to evaluate the reports of sexual harassment and molestation made against Robert Vandel;

c. Failure to require Robert Vandel to be subject to interim measures while he was investigated for sexual harassment and molestation of female students and teachers at FAST; and

d. Failure to require Robert Vandel to be sanctioned for violations of the sexual assault policy.

335.

Rose engaged in continued and unofficial customs, policies, and practices of deliberate indifference to the risk of harassment and assault of young female students. These customs, policies, and practices included:

    a. Failure to require Robert Vandel to be investigated for violations of the Fulton County Schools' sexual assault policy;

    b. Failure of Fulton County School System to appoint an investigator to evaluate the reports of sexual harassment and molestation made against Robert Vandel;

    c. Failure to require Robert Vandel to be subject to interim measures while he was investigated for sexual harassment and molestation of female students and teachers at FAST; and

    d. Failure to require Robert Vandel to be sanctioned for violations of the sexual assault policy.

336.

Gatewood engaged in continued and unofficial customs, policies, and practices of deliberate indifference to the risk of harassment and assault of young female students. These customs, policies, and practices included:

    a. Failure to require Robert Vandel to be investigated for violations of the

Fulton County Schools' sexual assault policy;

b.  Failure of Fulton County School System to appoint an investigator to evaluate the reports of sexual harassment and molestation made against Robert Vandel;

c.  Failure to require Robert Vandel to be subject to interim measures while he was investigated for sexual harassment and molestation of female students and teachers at FAST; and

d.  Failure to require Robert Vandel to be sanctioned for violations of the sexual assault policy.

337.

Due to the violations of Fulton County Schools' policies, Jane Doe II came into contact with Vandel and was sexually harassed, sexually assaulted, and raped.

338.

As a direct and proximate result of Defendants FCS, Looney, Loe, Rose, and Gatewood's willful failure to enforce Fulton County Schools' policies and procedures Jane Doe II suffered physical, emotional and psychological injury.

339.

Plaintiffs are entitled to recover from Defendants all compensatory, special, economic, consequential, general, and all other damages permissible under federal

law.

**Count VIII: Violation of Equal Protection (42 U.S.C. § 1983): Fourteenth Amendment Due to Defendant's Discrimination Against Jane Doe II Due to Her Sex and Gender**
**(Defendants FAST, FCS, Higgins in her Individual Capacity, Mahoney in his Individual Capacity, Stinger in her Individual Capacity, Beiner in his Individual Capacity, Akpan in his Individual Capacity and Erickson in her Individual Capacity)**

340.

Plaintiffs bring this action under 42 U.S.C. § 1983, which allows for claims against defendants acting under the color of law depriving an individual of their constitutionally protected rights, for treating reports made of sexual harassment against females differently than other genders thereby violating the 14th Amendment, and that this violation was the direct and proximate cause of the injuries suffered by Jane Doe II.

341.

Gender and sex are constitutionally protected interests that give rise to a cause of action under 42 U.S.C. § 1983.

342.

As a female, Jane Doe II was a member of a constitutionally protected class.

343.

Defendant FCS is a State institution acting under color of law.

344.

Defendant FAST is a State institution acting under color of law.

345.

Defendant Higgins at all relevant times was an employee and agent of FAST and FCS and therefore an employee of the State acting under color of law.

346.

Defendant Mahoney at all relevant times was an employee and agent of FAST and FCS and therefore an employee of the State acting under color of law.

347.

Defendant Stinger at all relevant times was an employee and agent of FAST and FCS and therefore an employee of the State acting under color of law.

348.

Defendant Beiner at all relevant times was an employee and agent of FAST and FCS and therefore an employee of the State acting under color of law.

349.

Defendant Akpan at all relevant times was an employee and agent of FAST and FCS and therefore an employee of the State acting under color of law.

350.

Defendant Erickson at all relevant times was an employee and agent of FAST and FCS and therefore an employee of the State acting under color of law.

351.

FAST's principals (Higgins, Mahoney, Stinger, Beiner) and governing board members (Erickson and Akpan) were final decision makers for FAST and FCS on policies regarding: (1) selection, retention, transfer, promotion, termination, and disciplining of faculty and staff at FAST; (2) how to investigate, respond to, and manage reports of sexual harassment and assault against students by employees, including teachers at FAST; and (3) reporting to parents the dangers posed by employees of FAST between the start of the 2017-18 school year and the sexual harassment, assault, and rape of Minor Jane Doe II.

352.

FAST and FCS's final policy makers each participated in the decision making concerning the discipline and investigation of Vandel during his time as a FAST employee.

353.

Defendants FCS and FAST's express policies required employees of FCS and FAST to adequately train or supervise school employees to:

a. Appropriately discipline employees, including Vandel;

b.  Investigate complaints raised by students, employees, and parents regarding sexual harassment, physical abuse, or inappropriate contact of students by Vandel;

c.  Protect students like Jane Doe II from sexual harassment, physical abuse or inappropriate contact;

d.  Adequately supervise employees like Vandel that posed a substantial risk of harm to others;

e.  Adequately supervise and monitor students like Jane Doe II;

f.  Know of the whereabouts of all employees and students;

g.  Suspend, discipline, remove, or report employees like Vandel who had a history of inappropriate contact with students;

h.  Properly notify parents/legal guardians whenever an employee engages in inappropriate conduct with a student;

i.  Institute reasonable corrective measures aimed at preventing known aggressors and harassers like Vandel from assaulting students;

j.  Warn students, parents/legal guardians, and other employees of employees like Vandel that have a history of inappropriate contact with students;

k.  Make a record of incidents involving harassment, abuse or inappropriate contact involving employees like Vandel;

l.  Remove violent and dangerous employees from their positions; and

m. Report cases of sexual harassment and inappropriate contact between teachers and students to the GPSC.

354.

FCS and FAST policies were violated by Defendant FCS who failed to:

a. Appropriately discipline Vandel;

b. Investigate complaints raised by students, employees, and parents regarding sexual harassment, physical abuse, or inappropriate contact of students by Vandel;

c. Protect female students at FAST including Jane Doe II from sexual harassment, physical abuse or inappropriate contact by Vandel;

d. Adequately supervise Vandel despite knowing he posed substantial risk of harm to female students;

e. Adequately supervise and monitor female students, including Jane Doe II;

f. Know of the whereabouts of all employees and students;

g. Suspend, discipline, remove, or report Vandel, who had a history of inappropriate contact with female students;

h. Properly notify parents/legal guardians of the inappropriate conduct by Vandel towards female students;

i. Institute reasonable corrective measures to prevent Vandel as a known aggressor and harasser from grooming, sexually harassing, and sexually

assaulting female students, including Jane Doe II;

j.  Warn students, parents/legal guardians, and other employees of Vandel's history of inappropriate contact with students;

k.  Make a record of incidents involving harassment, abuse or inappropriate contact by Vandel;

l.  Remove Vandel from his position; and

m.  Report cases of sexual harassment and inappropriate contact between Vandel and female students to the GPSC.

355.

FCS and FAST policies were violated by Defendant FAST who failed to:

a.  Appropriately discipline Vandel;

b.  Investigate complaints raised by students, employees, and parents regarding sexual harassment, physical abuse, or inappropriate contact of students by Vandel;

c.  Protect female students at FAST including Jane Doe II from sexual harassment, physical abuse or inappropriate contact by Vandel;

d.  Adequately supervise Vandel despite knowing he posed substantial risk of harm to female students;

e.  Adequately supervise and monitor female students, including Jane Doe II;

f.  Know of the whereabouts of all employees and students;

g.  Suspend, discipline, remove, or report Vandel, who had a history of inappropriate contact with female students;

h.  Properly notify parents/legal guardians of the inappropriate conduct by Vandel towards female students;

i.  Institute reasonable corrective measures to prevent Vandel as a known aggressor and harasser from grooming, sexually harassing, and sexually assaulting female students, including Jane Doe II;

j.  Warn students, parents/legal guardians, and other employees of Vandel's history of inappropriate contact with students;

k.  Make a record of incidents involving harassment, abuse or inappropriate contact by Vandel;

l.  Remove Vandel from his position; and

m. Report cases of sexual harassment and inappropriate contact between Vandel and female students to the GPSC.

356.

FCS and FAST policies were violated by Defendant Higgins who failed to:

a.  Appropriately discipline Vandel;

b.  Investigate complaints raised by students, employees, and parents regarding sexual harassment, physical abuse, or inappropriate contact of students by Vandel;

c.  Protect female students at FAST including Jane Doe II from sexual harassment, physical abuse or inappropriate contact by Vandel;

d.  Adequately supervise Vandel despite knowing he posed substantial risk of harm to female students;

e.  Adequately supervise and monitor female students, including Jane Doe II;

f.  Know of the whereabouts of all employees and students;

g.  Suspend, discipline, remove, or report Vandel, who had a history of inappropriate contact with female students;

h.  Properly notify parents/legal guardians of the inappropriate conduct by Vandel towards female students;

i.  Institute reasonable corrective measures to prevent Vandel as a known aggressor and harasser from grooming, sexually harassing, and sexually assaulting female students, including Jane Doe II;

j.  Warn students, parents/legal guardians, and other employees of Vandel's history of inappropriate contact with students;

k.  Make a record of incidents involving harassment, abuse or inappropriate contact by Vandel;

l.  Remove Vandel from his position; and

m. Report cases of sexual harassment and inappropriate contact between Vandel and female students to the GPSC.

357.

FCS and FAST policies were violated by Defendant Mahoney who failed to

a.  Appropriately discipline Vandel;

b.  Investigate complaints raised by students, employees, and parents regarding sexual harassment, physical abuse, or inappropriate contact of students by Vandel;

c.  Protect female students at FAST including Jane Doe II from sexual harassment, physical abuse or inappropriate contact by Vandel;

d.  Adequately supervise Vandel despite knowing he posed substantial risk of harm to female students;

e.  Adequately supervise and monitor female students, including Jane Doe II;

f.  Know of the whereabouts of all employees and students;

g.  Suspend, discipline, remove, or report Vandel, who had a history of inappropriate contact with female students;

h.  Properly notify parents/legal guardians of the inappropriate conduct by Vandel towards female students;

i.  Institute reasonable corrective measures to prevent Vandel as a known aggressor and harasser from grooming, sexually harassing, and sexually assaulting female students, including Jane Doe II;

j.  Warn students, parents/legal guardians, and other employees of Vandel's

history of inappropriate contact with students;

k. Make a record of incidents involving harassment, abuse or inappropriate contact by Vandel;

l. Remove Vandel from his position; and

m. Report cases of sexual harassment and inappropriate contact between Vandel and female students to the GPSC.

358.

FCS and FAST policies were violated by Defendant Stinger who failed to:

a. Appropriately discipline Vandel;

b. Investigate complaints raised by students, employees, and parents regarding sexual harassment, physical abuse, or inappropriate contact of students by Vandel;

c. Protect female students at FAST including Jane Doe II from sexual harassment, physical abuse or inappropriate contact by Vandel;

d. Adequately supervise Vandel despite knowing he posed substantial risk of harm to female students;

e. Adequately supervise and monitor female students, including Jane Doe II;

f. Know of the whereabouts of all employees and students;

g. Suspend, discipline, remove, or report Vandel, who had a history of inappropriate contact with female students;

h.  Properly notify parents/legal guardians of the inappropriate conduct by Vandel towards female students;

i.  Institute reasonable corrective measures to prevent Vandel as a known aggressor and harasser from grooming, sexually harassing, and sexually assaulting female students, including Jane Doe II;

j.  Warn students, parents/legal guardians, and other employees of Vandel's history of inappropriate contact with students;

k.  Make a record of incidents involving harassment, abuse or inappropriate contact by Vandel;

l.  Remove Vandel from his position; and

m. Report cases of sexual harassment and inappropriate contact between Vandel and female students to the GPSC.

359.

FCS and FAST policies were violated by Defendant Beiner who failed to:

a.  Appropriately discipline Vandel;

b.  Investigate complaints raised by students, employees, and parents regarding sexual harassment, physical abuse, or inappropriate contact of students by Vandel;

c.  Protect female students at FAST including Jane Doe II from sexual harassment, physical abuse or inappropriate contact by Vandel;

d. Adequately supervise Vandel despite knowing he posed substantial risk of harm to female students;

e. Adequately supervise and monitor female students, including Jane Doe II;

f. Know of the whereabouts of all employees and students;

g. Suspend, discipline, remove, or report Vandel, who had a history of inappropriate contact with female students;

h. Properly notify parents/legal guardians of the inappropriate conduct by Vandel towards female students;

i. Institute reasonable corrective measures to prevent Vandel as a known aggressor and harasser from grooming, sexually harassing, and sexually assaulting female students, including Jane Doe II;

j. Warn students, parents/legal guardians, and other employees of Vandel's history of inappropriate contact with students;

k. Make a record of incidents involving harassment, abuse or inappropriate contact by Vandel;

l. Remove Vandel from his position; and

m. Report cases of sexual harassment and inappropriate contact between Vandel and female students to the GPSC.

360.

FCS and FAST policies were violated by Defendant Erickson who failed to:

a.  Appropriately discipline Vandel;

b.  Investigate complaints raised by students, employees, and parents regarding sexual harassment, physical abuse, or inappropriate contact of students by Vandel;

c.  Protect female students at FAST including Jane Doe II from sexual harassment, physical abuse or inappropriate contact by Vandel;

d.  Adequately supervise Vandel despite knowing he posed substantial risk of harm to female students;

e.  Adequately supervise and monitor female students, including Jane Doe II;

f.  Know of the whereabouts of all employees and students;

g.  Suspend, discipline, remove, or report Vandel, who had a history of inappropriate contact with female students;

h.  Properly notify parents/legal guardians of the inappropriate conduct by Vandel towards female students;

i.  Institute reasonable corrective measures to prevent Vandel as a known aggressor and harasser from grooming, sexually harassing, and sexually assaulting female students, including Jane Doe II;

j.  Warn students, parents/legal guardians, and other employees of Vandel's history of inappropriate contact with students;

k.  Make a record of incidents involving harassment, abuse or inappropriate

contact by Vandel;

l.  Remove Vandel from his position; and

m. Report cases of sexual harassment and inappropriate contact between Vandel and female students to the GPSC.

361.

FCS and FAST Policies were violated by Defendant Akpan who failed to:

a.  Appropriately discipline Vandel;

b.  Investigate complaints raised by students, employees, and parents regarding sexual harassment, physical abuse, or inappropriate contact of students by Vandel;

c.  Protect female students at FAST including Jane Doe II from sexual harassment, physical abuse or inappropriate contact by Vandel;

d.  Adequately supervise Vandel despite knowing he posed substantial risk of harm to female students;

e.  Adequately supervise and monitor female students, including Jane Doe II;

f.  Know of the whereabouts of all employees and students;

g.  Suspend, discipline, remove, or report Vandel, who had a history of inappropriate contact with female students;

h.  Properly notify parents/legal guardians of the inappropriate conduct by Vandel towards female students;

176

i.   Institute reasonable corrective measures to prevent Vandel as a known aggressor and harasser from grooming, sexually harassing, and sexually assaulting female students, including Jane Doe II;

j.   Warn students, parents/legal guardians, and other employees of Vandel's history of inappropriate contact with students;

k.   Make a record of incidents involving harassment, abuse or inappropriate contact by Vandel;

l.   Remove Vandel from his position; and

m.  Report cases of sexual harassment and inappropriate contact between Vandel and female students to the GPSC.

362.

Defendant FAST's failure and refusal to act in accordance with FAST and FCS policy, training and procedures were because the reports made against Vandel were for his sexual harassment of female students.

363.

Defendant FCS's failure and refusal to act in accordance with FAST and FCS policy, training and procedures were because the reports made against Vandel were for his sexual harassment of female students.

364.

Defendant Higgins' failure and refusal to act in accordance with FAST and

177

FCS policy, training and procedures were because the reports made against Vandel were for his sexual harassment of female students.

365.

Defendant Mahoney's failure and refusal to act in accordance with FAST and FCS policy, training and procedures were because the reports made against Vandel were for his sexual harassment of female students.

366.

Defendant Stinger's failure and refusal to act in accordance with FAST and FCS policy, training and procedures were because the reports made against Vandel were for his sexual harassment of female students.

367.

Defendant Beiner's failure and refusal to act in accordance with FAST and FCS policy, training and procedures were because the reports made against Vandel were for his sexual harassment of female students.

368.

Defendant Erickson's failure and refusal to act in accordance with FAST and FCS policy, training and procedures were because the reports made against Vandel were for his sexual harassment of female students.

369.

Defendant Akpan's failure and refusal to act in accordance with FAST and

FCS policy, training and procedures were because the reports made against Vandel were for his sexual harassment of female students.

370.

Defendant FAST's failure and refusal to intervene in the ongoing harassment of female students, including Jane Doe II was based upon the sex and gender of the female students as well as Vandel's sex and gender.

371.

Defendant FCS's failure and refusal to intervene in the ongoing harassment of female students, including Jane Doe II was based upon the sex and gender of the female students as well as Vandel's sex and gender.

372.

Defendant Higgins' failure and refusal to intervene in the ongoing harassment of female students, including Jane Doe II was based upon the sex and gender of the female students as well as Vandel's sex and gender.

373.

Defendant Mahoney's failure and refusal to intervene in the ongoing harassment of female students, including Jane Doe II was based upon the sex and gender of the female students as well as Vandel's sex and gender.

374.

Defendant Stinger's failure and refusal to intervene in the ongoing harassment of female students, including Jane Doe II was based upon the sex and gender of the female students as well as Vandel's sex and gender.

375.

Defendant Beiner's failure and refusal to intervene in the ongoing harassment of female students, including Jane Doe II was based upon the sex and gender of the female students as well as Vandel's sex and gender.

376.

Defendant Akpan's failure and refusal to intervene in the ongoing harassment of female students, including Jane Doe II was based upon the sex and gender of the female students as well as Vandel's sex and gender.

377.

Defendant Erickson's failure and refusal to intervene in the ongoing harassment of female students, including Jane Doe II was based upon the sex and gender of the female students as well as Vandel's sex and gender.

378.

Defendant FAST would have intervened to stop the harassment and would have disciplined Vandel if male students were subjected to the same harassment as

the female victims of Vandel, including Jane Doe II.

379.

Defendant FCS would have intervened to stop the harassment and would have disciplined Vandel if male students were subjected to the same harassment as the female victims of Vandel, including Jane Doe II.

380.

Defendant Higgins would have intervened to stop the harassment and would have disciplined Vandel if male students were subjected to the same harassment as the female victims of Vandel, including Jane Doe II.

381.

Defendant Mahoney would have intervened to stop the harassment and would have disciplined Vandel if male students were subjected to the same harassment as the female victims of Vandel, including Jane Doe II.

382.

Defendant Stinger would have intervened to stop the harassment and would have disciplined Vandel if male students were subjected to the same harassment as the female victims of Vandel, including Jane Doe II.

383.

Defendant Beiner would have intervened to stop the harassment and would

have disciplined Vandel if male students were subjected to the same harassment as the female victims of Vandel, including Jane Doe II.

384.

Defendant Erickson would have intervened to stop the harassment and would have disciplined Vandel if male students were subjected to the same harassment as the female victims of Vandel, including Jane Doe II.

385.

Defendant Akpan would have intervened to stop the harassment and would have disciplined Vandel if male students were subjected to the same harassment as the female victims of Vandel, including Jane Doe II.

386.

Defendant FAST treated reports of sexual harassment and sexual violence against female students differently than it treated other reports.

387.

Defendant FCS treated reports of sexual harassment and sexual violence against female students differently than it treated other reports.

388.

Defendant Higgins treated reports of sexual harassment and sexual violence against female students differently than she treated other reports.

389.

Defendant Mahoney treated reports of sexual harassment and sexual violence against female students differently than he treated other reports.

390.

Defendant Stinger treated reports of sexual harassment and sexual violence against female students differently than she treated other reports.

391.

Defendant Beiner treated reports of sexual harassment and sexual violence against female students differently than it treated other reports.

392.

Defendant Erickson treated reports of sexual harassment and sexual violence against female students differently than it treated other reports.

393.

Defendant Akpan treated reports of sexual harassment and sexual violence against female students differently than it treated other reports.

394.

Upon information and belief FAST would have conducted investigations in a manner that involved more thorough inquiry and less shaming of the victims, filed reports, and terminated employees accused of grooming, sexual harassment, and sexual assault of male students.

395.

Upon information and belief FCS would have conducted investigations in a manner that involved more thorough inquiry and less shaming of the victims, filed reports, and terminated employees accused of grooming, sexual harassment, and sexual assault of male students.

396.

Upon information and belief Higgins would have conducted investigations in a manner that involved more thorough inquiry and less shaming of the victims, filed reports, and terminated employees accused of grooming, sexual harassment, and sexual assault of male students.

397.

Upon information and belief Mahoney would have conducted investigations in a manner that involved more thorough inquiry and less shaming of the victims, filed reports, and terminated employees accused of grooming, sexual harassment, and sexual assault of male students.

398.

Upon information and belief Stinger would have conducted investigations in a manner that involved more thorough inquiry and less shaming of the victims, filed reports, and terminated employees accused of grooming, sexual harassment, and sexual assault of male students.

399.

Upon information and belief Beiner would have conducted investigations in a manner that involved more thorough inquiry and less shaming of the victims, filed reports, and terminated employees accused of grooming, sexual harassment, and sexual assault of male students.

400.

Upon information and belief Akpan would have conducted investigations in a manner that involved more thorough inquiry and less shaming of the victims, filed reports, and terminated employees accused of grooming, sexual harassment, and sexual assault of male students.

401.

Upon information and belief Erickson would have conducted investigations in a manner that involved more thorough inquiry and less shaming of the victims, filed reports, and terminated employees accused of grooming, sexual harassment, and sexual assault of male students.

402.

Defendant FAST's actions in treating reports about female students being groomed, sexually harassed, sexually assaulted differently is a violation of Equal Protection.

403.

Defendant FCS's actions in treating reports about female students being groomed, sexually harassed, sexually assaulted differently is a violation of Equal Protection.

404.

Defendant Higgins' actions in treating reports about female students being groomed, sexually harassed, sexually assaulted differently is a violation of Equal Protection.

405.

Defendant Mahoney's actions in treating reports about female students being groomed, sexually harassed, sexually assaulted differently is a violation of Equal Protection.

406.

Defendant Stinger's actions in treating reports about female students being groomed, sexually harassed, sexually assaulted differently is a violation of Equal Protection.

407.

Defendant Beiner's actions in treating reports about female students being groomed, sexually harassed, sexually assaulted differently is a violation of Equal Protection.

408.

Defendant Akpan's actions in treating reports about female students being groomed, sexually harassed, sexually assaulted differently is a violation of Equal Protection.

409.

Defendant Erickson's actions in treating reports about female students being groomed, sexually harassed, sexually assaulted differently is a violation of Equal Protection.

410.

As the direct and proximate cause of the violation of her equal protection, Jane Doe II suffered physical, emotional and psychological injury.

411.

Plaintiffs are entitled to recover from Defendants FAST, FCS Higgins, Mahoney, Stinger, Beiner, Erickson and Akpan all compensatory, special, economic, consequential, general, and all other damages permissible under federal law.

## Count IX: Title IX Claim (20 U.S.C. § 1681(a)) – Deliberate Indifference to Vandel's History of Sexual Harassment.
## (Defendants FCS and FAST)

412.

Defendant FCS is a Title IX funding recipient.

413.

Defendant FAST is a Title IX funding recipient.

414.

Jane Doe II was subjected to sexual harassment, sexual assault, and rape while enrolled in an education program or activity that receives federal financial assistance.

415.

The violence that Jane Doe II was subjected to at FAST by Vandel constituted "sexual harassment" within the meaning of Title IX.

416.

Vandel's attack on Jane Doe II was motivated by Vandel's sexual desire for Jane Doe II.

417.

Prior to the attack on Jane Doe II, Defendant FAST through their employees and agents: Higgins, Mahoney, Stinger, Beiner, Akpan, and Erickson along with other teachers and staff at FAST, had actual knowledge of Vandel having inappropriate contact and sexually harassing minor students at other schools prior to his employment at with FCS.

418.

Prior to the attack on Jane Doe II, Defendant FCS through their employees and agents: Higgins, Mahoney, Stinger, Beiner, Akpan, and Erickson along with other teachers and staff at FAST, had actual knowledge of Vandel having inappropriate contact and sexually harassing minor students at other schools prior to his employment at with FCS.

419.

Defendant FCS had actual knowledge of the threat that Vandel posed to students, including Jane Doe II, at FAST through:

    a.  The certification status for Robert Vandel held with the GPSC;

    b.  The final decision, findings of facts, case summary, and investigations performed by the GPSC into reports of sexual harassment by Vandel against other minor female students; and

    c.  The work history of Vandel, which demonstrates repeated firings and removal from the schools.

420.

Defendant FAST had actual knowledge of the threat that Vandel posed to students, including Jane Doe II, at FAST through:

    a.  The certification status for Robert Vandel held with the GPSC;

    b.  The final decision, findings of facts, case summary, and investigations

performed by the GPSC into reports of sexual harassment by Vandel
against other minor female students; and

c.  The work history of Vandel, which demonstrates repeated firings and
removal from the schools.

421.

The pervasive sexual harassment, physical abuse and inappropriate contact
perpetrated by Vandel against Jane Doe II had the effect of damaging equal access
to education.

422.

Defendant FCS's employees, Defendants Looney, Loe, Rose, Gatewood,
Higgins, Mahoney, Stinger, Beiner, Akpan, and Erickson were appropriate people
to address or remedy the threat posed by Vandel to students at FAST.

423.

Defendant FAST's employees, Defendants Looney, Loe, Rose, Gatewood,
Higgins, Mahoney, Stinger, Beiner, Akpan, and Erickson were appropriate people
to address or remedy the threat posed by Vandel to students at FAST.

424.

FCS acted with deliberate indifference to the threat posed by Robert Vandel
to the students at FAST including Jane Doe II, by:

a.  Hiring Vandel, despite his history of sexual harassment of female

middle school students, to teach female middle school students;

b.  Failing to protect students like Jane Doe II from sexual harassment, physical abuse or inappropriate contact;

c.  Failing to adequately supervise Vandel who they knew posed a substantial risk of harm to others;

d.  Failing to adequately supervise and monitor students who had close contact with Vandel;

e.  Failing to monitor and employ effective key control measures;

f.  Failing to suspend, discipline, remove, or report employees like Vandel who had a history of inappropriate contact with students;

g.  Failing to institute reasonable corrective measures aimed at preventing known aggressors and harassers like Vandel from assaulting students;

h.  Failing to warn students, parents/legal guardians, and other employees of Vandel's history of inappropriate contact with students; and

i.  Failing to adequately train school employees on how to handle complaints of sexual harassment, physical abuse or inappropriate contact.

These actions and inactions of FCS were clearly unreasonable.

425.

FAST acted with deliberate indifference to the threat posed by Robert Vandel

to the students at FAST including Jane Doe II, by:

    a. Hiring Vandel, despite his history of sexual harassment of female middle school students, to teach female middle school students;

    b. Failing to protect students like Jane Doe II from sexual harassment, physical abuse or inappropriate contact;

    c. Failing to adequately supervise Vandel who they knew posed a substantial risk of harm to others;

    d. Failing to adequately supervise and monitor students who had close contact with Vandel;

    e. Failing to monitor and employ effective key control measures;

    f. Failing to suspend, discipline, remove, or report employees like Vandel who had a history of inappropriate contact with students;

    g. Failing to institute reasonable corrective measures aimed at preventing known aggressors and harassers like Vandel from assaulting students;

    h. Failing to warn students, parents/legal guardians, and other employees of Vandel's history of inappropriate contact with students; and

    i. Failing to adequately train school employees on how to handle complaints of sexual harassment, physical abuse or inappropriate contact.

These actions and inactions of FAST were clearly unreasonable.

426.

Jane Doe II was subjected to sexual harassment due to Defendants FAST's deliberate indifference to the history of sexual violence perpetrated by Vandel.

427.

Jane Doe II was subjected to sexual harassment due to Defendant FCS's deliberate indifference to the history of sexual violence perpetrated by Vandel.

428.

The sexual harassment, sexual assault, and rape to which Jane Doe II was subjected was so severe, pervasive, and objectively offensive that it barred Jane Doe II's access to educational opportunities and benefits.

429.

As a direct result of Defendant FCS's deliberate indifference Jane Doe II has been excluded from participation in and has been denied the benefit of her education due to her sex.

430.

As a direct result of Defendant FAST's deliberate indifference Jane Doe II has been excluded from participation in and has been denied the benefit of her education due to her sex.

431.

FCS and FAST are liable to Plaintiffs under the implied right of action to

enforce Title IX for damages in such amount as will compensate Jane Doe II for the educational opportunities and benefits Jane Doe II has lost and will lose; the physical, and mental injuries Jane Doe II has suffered and will suffer; and the medical and rehabilitation expenses for Jane Doe II's care that Jane Doe I, John Doe and Jane Doe II or any one of them have incurred or will incur as a result of FCS and FAST's violation of Jane Doe II's rights under Title IX.

432.

FCS and FAST are liable to Plaintiffs under the implied right of action to enforce Title IX for reasonable attorney's fee, including experts' fees, as part of the costs in this action.

**Count X:    Title IX Claim (20 U.S.C. § 1681(a)) – Deliberate Indifference to Vandel's Sexual Harassment at FAST.
(Defendants FCS and FAST)**

433.

Defendant FCS is a Title IX funding recipient.

434.

Defendant FAST is a Title IX funding recipient.

435.

Jane Doe II was subjected to harassment while enrolled in an education program or activity that receives Federal financial assistance.

194

436.

The violence that Jane Doe II was subjected to at FAST by Vandel constituted "sexual harassment" within the meaning of Title IX.

437.

Vandel's attack on Jane Doe II was motivated by Vandel's sexual desire for Jane Doe II.

438.

Prior to the attack on Jane Doe II, Defendant FAST through their employees and agents: Higgins, Mahoney, Stinger, Beiner, Akpan, and Erickson along with other teachers and staff at FAST, had actual knowledge of Vandel having inappropriate contact and sexually harassing minor students at other schools prior to his employment at with FCS.

439.

Prior to the attack on Jane Doe II, Defendant FCS through their employees and agents: Higgins, Mahoney, Stinger, Beiner, Akpan, and Erickson along with other teachers and staff at FAST, had actual knowledge of Vandel having inappropriate contact and sexually harassing minor students at other schools prior to his employment at with FCS.

440.

Defendant FCS had actual knowledge of the threat that Vandel posed to

students, including Jane Doe II, at FAST through:

a.  Reports from at least five (5) teachers at FAST academy;

b.  Reports from at least three (3) students at FAST academy; and

c.  At least one report from a parent at FAST academy.

Each of these reports regarded Vandel's grooming, sexual harassment, and sexual assault of female students and staff at FAST.

441.

Defendant FAST had actual knowledge of the threat that Vandel posed to students, including Jane Doe II, at FAST through:

a.  Reports from at least five (5) teachers at FAST academy;

b.  Reports from at least three (3) students at FAST academy; and

c.  At least one report from a parent at FAST academy.

Each of these reports regarded Vandel's grooming, sexual harassment, and sexual assault of female students and staff at FAST.

442.

The pervasive sexual harassment, physical abuse and inappropriate contact perpetrated by Vandel against Jane Doe II had the effect of damaging equal access to education.

443.

Defendants Looney, Loe, Rose, Gatewood, Higgins, Mahoney, Stinger,

Beiner, and Epstein were the appropriate employees/agents of FCS to address and remedy the ongoing inappropriate contact and sexual harassment by Vandel towards student at FAST, and to address FAST's failure to follow FCS's policies and procedures.

444.

Defendants Higgins, Mahoney, Stinger, Beiner, and Epstein were appropriate employees/agents of FAST, during their tenures as Principals and Assistant Principals respectively to address or remedy the ongoing inappropriate contact and sexual harassment by Vandel towards students at FAST.

445.

FCS through its employees and agents acted with deliberate indifference to the multiple reports regarding sexual: multiple reports regarding sexual harassment, physical abuse and inappropriate contact in its programs and activities by failing to:

    a.  Appropriately discipline employees, including Vandel;

    b.  Investigate complaints raised by students and employees regarding sexual harassment, physical abuse, or inappropriate contact by Vandel;

    c.  Protect students like Jane Doe II from sexual harassment, physical abuse or inappropriate contact;

    d.  Adequately supervise employees like Vandel that posed a substantial risk of harm to others;

e.  Adequately supervise and monitor students like Jane Doe II;

f.  Know of the whereabouts of all employees and students;

g.  Monitor and employ effective key control measures;

h.  Suspend, discipline, remove, or report employees like Vandel who had a history of inappropriate contact with students;

i.  Properly notify parents/legal guardians whenever an employee engaged in inappropriate conduct with a student;

j.  Institute reasonable corrective measures aimed at preventing known aggressors and harassers like Vandel from assaulting students;

k.  Warn students, parents/legal guardians, and other employees of employees like Vandel that have a history of inappropriate contact with students;

l.  Adequately train school employees on how to handle complaints of sexual harassment, physical abuse or inappropriate contact;

m. Make a record of incidents involving harassment, abuse or inappropriate contact involving employees like Vandel; and

n.  Remove violent and dangerous employees, like Vandel, from their positions.

446.

FAST through its employees and agents acted with deliberate indifference to

multiple reports regarding sexual harassment, physical abuse and inappropriate

contact in its programs and activities by failing to:

a.  Appropriately discipline employees, including Vandel;

b.  Investigate complaints raised by students and employees regarding sexual harassment, physical abuse, or inappropriate contact by Vandel;

c.  Protect students like Jane Doe II from sexual harassment, physical abuse or inappropriate contact;

d.  Adequately supervise employees like Vandel that posed a substantial risk of harm to others;

e.  Adequately supervise and monitor students like Jane Doe II;

f.  Know of the whereabouts of all employees and students;

g.  Monitor and employ effective key control measures;

h.  Suspend, discipline, remove, or report employees like Vandel who had a history of inappropriate contact with students;

i.  Properly notify parents/legal guardians whenever an employee engaged in inappropriate conduct with a student;

j.  Institute reasonable corrective measures aimed at preventing known aggressors and harassers like Vandel from assaulting students;

k.  Warn students, parents/legal guardians, and other employees of employees like Vandel that have a history of inappropriate contact with

students;

l.   Adequately train school employees on how to handle complaints of sexual harassment, physical abuse or inappropriate contact;

m.  Make a record of incidents involving harassment, abuse or inappropriate contact involving employees like Vandel; and

n.   Remove violent and dangerous employees, like Vandel, from their positions.

447.

Jane Doe II was subjected to sexual harassment, sexual assault, and rape due to Defendants FCS and FAST's deliberate indifference to the previous reports of sexual misconduct made against Vandel.

448.

As a direct result of Defendant FCS's deliberate indifference Jane Doe II lost all confidence with regard to her safety at FAST, suffered depression and a loss of self-confidence all of which have and will continue to require professional counseling.

449.

As a direct result of Defendant FAST's deliberate indifference Jane Doe II lost all confidence with regard to her safety at FAST, suffered depression and a loss of self-confidence all of which have and will continue to require professional

counseling.

450.

The sexual harassment, sexual assault, and rape to which Jane Doe II was subjected was so severe, pervasive, and objectively offensive that it barred Jane Doe II's access to educational opportunities and benefits.

451.

As a direct result of Defendant FCS's deliberate indifference Jane Doe II has been excluded from participation in and has been denied the benefit of her education due to her sex.

452.

As a direct result of Defendant FAST's deliberate indifference Jane Doe II has been excluded from participation in and has been denied the benefit of her education due to her sex.

453.

FCS and FAST are liable to Plaintiffs under the implied right of action to enforce Title IX for damages in such amount as will compensate Jane Doe II for the educational opportunities and benefits Jane Doe II has lost and will lose; the physical, and mental injuries Jane Doe II has suffered and will suffer; and the medical and rehabilitation expenses for Jane Doe II's care that Jane Doe I, John Doe and Jane Doe II or any one of them have incurred or will incur as a result of FCS's

violation of Jane Doe II's rights under Title IX.

454.

FCS and FAST are liable to Plaintiffs under the implied right of action to enforce Title IX for reasonable attorney's fee, including experts' fees, as part of the costs in this action.

**Count XII: Title IX Claim (20 U.S.C. § 1681(a)) – Deliberate Indifference to the Sexual Harassment, Sexual Assault, and Rape of Jane Doe II. (Defendants FCS and FAST)**

455.

Defendant FCS is a Title IX funding recipients.

456.

Defendant FAST is a Title IX funding recipients.

457.

Jane Doe II was subjected to harassment while enrolled in an education program or activity that receives Federal financial assistance.

458.

The violence that Jane Doe II was subjected to at FAST by Vandel constituted "sexual harassment" within the meaning of Title IX.

459.

Vandel's attack on Jane Doe II was motivated by Vandel's sexual desire for Jane Doe II.

460.

Defendants FCS through its employees or agents, Stan Beiner and Peter Epstein obtained actual knowledge of the sexual harassment, sexual assault, and rape of Jane Doe II after Vandel was arrested and the police contacted the school.

461.

Defendant FAST through its employees or agents Stan Beiner and Peter Epstein obtained actual knowledge of the sexual harassment, sexual assault, and rape of Jane Doe II after Vandel was arrested and the police contacted the school.

462.

In his capacity as Principal of FAST, and an employee of FCS and FAST, Stan Beiner sent an email to all parents of FAST regarding Vandel, and implied that Jane Doe II was not to believed.

463.

The email sent by Stan Beiner demonstrated deliberate indifference to the knowledge that Vandel had sexually harassed, sexually assaulted, and raped Jane Doe II.  This was especially egregious given Stan Beiner's knowledge of previous reports by teachers, students, and parents of Vandel's sexual misconduct.

464.

The pervasive sexual harassment and inappropriate contact perpetrated by

Vandel against Jane Doe II had the effect of damaging equal access to education.

465.

The email sent by Beiner in his capacity as Principal of FAST and an employee of FCS was so severe, pervasive, and objectively offensive that it barred Jane Doe II's access to educational opportunities and benefits.

466.

As a direct result of Defendant FCS's deliberate indifference Jane Doe II and her parents were re-traumatized and forced to once again feel that they were not supported or protected by FCS.

467.

As a direct result of Defendant FAST's deliberate indifference Jane Doe II and her parents were re-traumatized and forced to once again feel that they were not supported or protected by FCS.

468.

As a direct result of Defendant FCS's deliberate indifference Jane Doe II has been excluded from participation in, and has been denied the benefit of her education due to her sex.

469.

As a direct result of Defendant FAST's deliberate indifference Jane Doe II has been excluded from participation in, and has been denied the benefit of her

education due to her sex.

470.

FCS and FAST are liable to Plaintiffs under the implied right of action to enforce Title IX for damages in such amount as will compensate Jane Doe II for the educational opportunities and benefits Jane Doe II has lost and will lose; the physical, and mental injuries Jane Doe II has suffered and will suffer; and the medical and rehabilitation expenses for Jane Doe II's care that Jane Doe I, John Doe and Jane Doe II or any one of them have incurred or will incur as a result of FCS's violation of Jane Doe II's rights under Title IX.

471.

FCS and FAST are liable to Plaintiffs under the implied right of action to enforce Title IX for reasonable attorney's fee, including experts' fees, as part of the costs in this action.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial with respect to all issues so triable as a matter of right.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Jane Doe II, and Jane Doe I and John Doe, as Parents, Natural Guardians and Next Friends of Jane Doe II, respectfully pray for the following relief:

(a) A permanent mandatory injunction requiring Defendants to take specific measures to safeguard the bodily integrity of their students from invasion by sexual predators, including other students, on school premises and in school facilities and programs;

(b) That the Court declare Defendants' actions, policies, and practices complained herein violated the rights of Jane Doe II as secured by 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a);

(c) Judgment in Plaintiffs' favor against Defendants that includes all damages allowed by law, including but not limited to the following:

(i) Damages in such amount as will fully compensate Jane Doe II for the educational opportunities and benefits she has lost and will continue to lose, for injury, for pain and suffering, and for the medical and rehabilitation costs she has incurred and may incur as a direct and proximate result of Defendants' violations of her constitutionally-protected rights and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a);

(ii) Damages in such amount as will fully compensate Jane Doe I and John Doe I for the medical and rehabilitation expenses they have incurred and will incur on behalf of and for the care of Jane Doe II as a

direct and proximate result of Defendant's violations of Jane Doe II's constitutionally-protected rights and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a); and

(iii) Damages in such amount as will fully compensate Jane Doe II for the injuries she has suffered as a direct and proximate result of Defendants' violations of her constitutionally-protected rights under Title IX, including but not limited to damages for personal injuries; past, present and future pain and suffering; past, present and future medical expenses; mental anguish; lost wages and future loss of wages; loss of the capacity for the enjoyment of life; incidental expenses and consequential damages to be proven at trial;

(d) All costs of this action, including reasonable attorneys' fees and experts' fees; and

(e) Such other relief as this Honorable Court may deem just and proper.

**BAYUK PRATT, LLC**

*/s/ Bradley W. Pratt*
Frank T. Bayuk
Georgia Bar No.: 142596
Bradley W. Pratt,
Georgia Bar No. 586672
Christopher D. M. Lambden,
Georgia Bar No. 334003
*Attorneys for Plaintiffs*

4401 Northside Parkway, Suite 390
Atlanta, Georgia 30327
(404) 500-2669
bradley@bayukpratt.com
frank@bayukpratt.com
christopher@bayukpratt.com

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 5.1 C</u>

I HEREBY CERTIFY that the foregoing document was prepared in Times New Roman, 14-point font, as approved by Local Rule 5.1 C.

<u>*/s/ Bradley W. Pratt*</u>
Bradley W. Pratt
*Attorney for Plaintiffs*