UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JANE DOE I, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FULTON COUNTY SCHOOLS, et al., <br><br> Defendants. | CIVIL ACTION NO. <br> 1:23-CV-00799-JPB |

## ORDER

This matter comes before the Court on several motions to dismiss. [Doc. 58]; [Doc. 59]; [Doc. 60]; [Doc. 61]; [Doc. 62]; [Doc. 63]; [Doc. 64]; [Doc. 65]; [Doc. 66]; [Doc. 67]; [Doc. 68]. The Court finds as follows:

## BACKGROUND

**A.    The Parties and Claims in Plaintiffs' Amended Complaint**

Jane Doe I and John Doe (collectively, "Plaintiffs") are parents and natural guardians of a minor child, Jane Doe II. [Doc. 51, p. 6]. Plaintiffs bring this action individually and on behalf of Jane Doe II based on events that occurred during Jane Doe II's time as a student at Fulton Academy of Science and Technology, culminating in the sexual assault of Jane Doe II by her teacher, Robert Allen Vandel ("Vandel"). [Doc. 51]. Specifically, Plaintiffs bring claims against:  (i)

Fulton County Schools ("FCS"), which "operated and maintained, at all relevant times, the public-school system for school-age children in Fulton County;" (ii) Fulton Academy of Science and Technology ("FAST"), a local "charter school within FCS public-school system" and the school which Jane Doe II attended during the 2019 to 2020 school year; and (iii) Founding Fourteen, Inc. ("FFI"), the "Georgia Nonprofit Corporation that contracted with Fulton County Schools to operate FAST." Id. at 7, 16–17.  In addition to these entities, Plaintiffs also bring claims against several FAST administrators, FFI board members and FCS superintendents and officials.  Id. at 7–15.

**B.     Factual History**

The Court derives these facts from Plaintiffs' Amended Complaint.  The gravamen of this suit concerns Defendants' hiring and continued employment of Vandel, who was a teacher at FAST from 2017 to June of 2020.  Id. at 76.  In 2003, several years prior to applying to work at FAST, Vandel was employed as a teacher at Midland Middle School in Columbus, Georgia.  Id. at 18.  Plaintiffs allege that, while employed at Midland Middle School, Vandel engaged in misconduct toward female students and teachers resulting in criminal charges, an investigation by the Georgia Professional Standards Commission and a two-year suspension of his teaching certificate.  Id. at 18–24.

Plaintiffs claim that, despite FCS and FAST policies which "require fingerprinting of all new hires, background checks, and a pay-for-service investigation search engine for all their hires," a FAST principal hired Vandel in 2017 to work at the school as a science teacher. Id. at 10–11, 25. Plaintiffs argue that Defendants knew or should have known about "Vandel's history of misconduct and discipline" at the time Vandel was hired. Id. at 25. Moreover, according to Plaintiffs, Vandel's misconduct did not stop when he arrived at FAST, and Plaintiffs allege that "FAST school officials and board members, and FFI board members had actual knowledge of multiple prior incidents involving Vandel and female students and staff at FAST" leading up to Vandel's sexual assault of Jane Doe II. Id. at 25. Specifically, Plaintiffs claim that "Vandel's pattern of grooming, sexual harassment, and sexual assault at FAST was almost identical to his behavior at Midland." Id. at 26.

During his time at FAST, Plaintiffs allege that Vandel exhibited much of the same misconduct toward Jane Doe II that he engaged in at Midland. Id. at 43–44. For instance, Plaintiffs contend that Vandel "groomed Jane Doe II by showing her favoritism," invited her to spend lunch breaks in his classroom and touched her inappropriately. Id. In early 2020, when Jane Doe II was a seventh-grade student at FAST, Plaintiffs allege that Vandel isolated Jane Doe II in his classroom and

3

raped her. Id. at 3, 44. Eventually, Vandel left FAST on June 9, 2020, after a FAST technology director discovered inappropriate messages between Vandel and female students. Id. at 45–46. Jane Doe II eventually reported the rape to her mother in August of 2021, and Vandel was later arrested on September 2, 2021. Id. at 46–47. According to Plaintiffs, "Vandel admitted to and pleaded guilty to the sexual assault, rape, and imprisonment of Jane Doe II" and was criminally convicted of these crimes. Id. at 45.

Thereafter, Plaintiffs brought this suit, alleging claims against Defendants for negligent hiring; negligent supervision, retention and undertaking; violation of substantive due process; violation of equal protection; and deliberate indifference under Title IX. Id. at 49–205. Plaintiffs also seek injunctive relief, a declaratory judgment, compensatory damages and attorneys' fees. Id. at 205–07. Plaintiffs incorporate the following chart as an exhibit to their responses to Defendants' motions to dismiss, detailing the breakdown of the allegations in their Amended Complaint:[1]

---

[1] See, e.g., [Doc. 70-1]. The Court notes that Plaintiffs number their claims I through XII, but do not appear to allege a "Count XI." [Doc. 51]. As such, the Court will refer to Plaintiffs' final claim asserted under Title IX—for deliberate indifference to the rape of Jane Doe II against FAST and FCS—as "Count XI."

4

| CAUSES OF ACTION | FFI | FAST | Higgins | Mahoney | Stinger | Beiner | Epstein | Erickson | Akpan | FCS | Looney | Loe | Rose | Gatewood |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Count I (Negligent Hiring) | X | | X | | | | | | | | | | | |
| Count II (Negligent Hiring) | | X | X | | | | | | | | | | | |
| Count III (Negligent Supervision, Retention, Undertaking) | X | X | X | X | X | X | X | X | X | | | | | |
| Count IV (Negligent Undertaking) | | | | | | | | | | X | X | X | X | X |
| Count V (1983; Violation of Substantive Due Process - Failure to follow policies) | | X | X | X | X | X | | X | X | | | | | |
| Count VI (1983; Violation of Substantive Due Process - Failure to Take Corrective Action) | | X | X | X | X | X | | X | X | | | | | |
| Count VII: (1983; Violation fo Substantive Due Process - Failure to follow policies) | | | | | | | | | | X | X | X | X | X |
| Count VIII (1983; Equal Protection) | | X | X | X | X | X | | X | X | X | | | | |
| Count IX (Title IX; Deliberate Indifference to Vandel's History) | | X | | | | | | | | X | | | | |
| Count X (Title IX; Deliberate Indifference to Vandel's Sexual Harassment at FAST) | | X | | | | | | | | X | | | | |
| Count XII (Title IX; Deliberate Indifference to Rape of Jane Doe II) | | X | | | | | | | | X | | | | |

C.      **Procedural History**

Plaintiffs filed suit against Defendants on February 22, 2023. [Doc. 1]. Thereafter, FCS and some individual Defendants filed an Answer to Plaintiffs' Original Complaint. [Doc. 10]. All other Defendants filed motions to dismiss Plaintiffs' Original Complaint. [Doc. 11]; [Doc. 12]; [Doc. 13]; [Doc. 14]; [Doc. 15]; [Doc. 16]; [Doc. 17]; [Doc. 18]. After the motions to dismiss were fully briefed, the Court entered an order on February 7, 2024, dismissing Plaintiffs' Original Complaint without prejudice as an impermissible shotgun pleading and

denying all pending motions to dismiss without prejudice to refile in light of Plaintiffs' amended complaint. [Doc. 50].

On February 28, 2024, Plaintiffs filed their Amended Complaint, now the operative complaint in this action. [Doc. 51]. In response to Plaintiffs' Amended Complaint, all Defendants filed motions to dismiss. [Doc. 58]; [Doc. 59]; [Doc. 60]; [Doc. 61]; [Doc. 62]; [Doc. 63]; [Doc. 64]; [Doc. 65]; [Doc. 67]; [Doc. 68]. These motions are now ripe for review.

## LEGAL STANDARD

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). In determining whether this action should be dismissed for failure to state a claim, Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although detailed factual allegations are not necessarily required, the pleading must contain more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Importantly, "a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

## ANALYSIS

### A.     FAST's Motion to Dismiss

The Court will first consider FAST's Motion to Dismiss, wherein FAST argues that the Court should dismiss all counts against it pursuant to Rule 12(b)(6). [Doc. 60].  At the outset, FAST contends that the Court must dismiss the claims against it because FAST is not an entity capable of being sued.  Id. at 7.  As explained below, the Court agrees.  However, Plaintiffs request that, if the Court finds that FAST is not capable of being sued, the Court allow Plaintiffs to amend their complaint to correct the misnomer as to FAST.  [Doc. 72, pp. 17–18].

#### i.     Whether FAST is an entity capable of being sued.

FAST argues that Plaintiffs' claims against it necessarily fail because FAST is not a separate entity from FFI, but rather, is "nothing more than the *name* of a public charter school," and therefore cannot be sued. [Doc. 60, p. 8].  In response, Plaintiffs maintain that they adequately alleged in their Amended Complaint that FFI and FAST are separate entities and that these allegations are sufficient to prevail at the motion to dismiss stage.  [Doc. 72, pp. 16–17].  Plaintiffs further argue that, in advocating for dismissal on this basis, FAST only cites case law

7

involving lawsuits against universities within the state of Georgia, which "are operated by a single government entity," whereas FAST—as a local charter school—"is operated by an independent non-profit corporation but still exists within a school system." Id. at 17.

Federal Rule of Civil Procedure 17(b) requires that, when a plaintiff names a defendant that is not an individual or an entity, the defendant's "capacity to sue or be sued is determined . . . by the law of the state where the district court is located." Accordingly, the Court looks to Georgia law to determine whether FAST is an entity capable of being sued. In Georgia, there are three classes of legal entities capable of being sued: "(1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue." Ga. Insurers Insolvency Pool v. Elbert County, 368 S.E.2d 500, 502 (Ga. 1998). By process of elimination, a local charter school such as FAST, which is neither an individual nor itself incorporated, would necessarily need to fit into the third category.

While Plaintiffs did allege in their Amended Complaint that FFI and FAST are separate entities, Plaintiffs failed to otherwise demonstrate that FAST is an entity capable of being sued. In their response brief, Plaintiffs cite no case law to support their argument that FAST, as a local charter school, is a body

8

corporate capable of suing and being sued. [Doc. 72, pp. 16–17]. For instance, Plaintiffs argue that "FAST exists within FCS but, unlike public schools, is operated by a distinct non-profit corporation—FFI." Id. at 17. However, Plaintiffs fail to argue, much less show, why FAST itself is an entity capable of being sued. Rather, Plaintiffs' assertions seem to support FAST's argument that it is FFI—the "distinct non-profit corporation"—that is unlike a public school, and therefore capable of being sued. Moreover, while Plaintiffs assert that FAST and FFI are separate legal entities, the Court is not required to "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Upon examination of the parties' arguments and the relevant case law, the Court finds that FAST is not an entity capable of being sued. When it comes to schools, Georgia courts have held that only certain school entities are capable of being sued. Compare Foster v. Cobb Cnty. Bd. of Educ., 213 S.E.2d 38, 39 (Ga. Ct. App. 1975) (noting that Georgia courts have "held on numerous occasions that a school district is a body corporate with the capacity to sue and be sued" and collecting cases) with Nore v. Fulton Cnty. Bd. of Educ., No. 8-CV-0311, 2008 WL 11334076, at *2 (N.D. Ga. Aug. 19, 2008) ("It is well settled under Georgia law that school boards are not legal entities that are subject to suit absent a special

9

act of the legislature." (citing Cook v. Colquitt Cnty. Bd. of Educ., 412 S.E.2d 828, 828–29 (Ga. 1992)).  Moreover, Georgia law treats each *state* charter school as its own local educational agency for administrative purposes.  See O.C.G.A. § 20-2-2090.  In other words, a state charter school must operate as its own school district or school system.  However, *local* charter schools, such as FAST, are part of local education agencies.  O.C.G.A. § 20-2-2062(2) ("[A] charter for a local charter school, if approved, shall be a three-party agreement between a charter petitioner, a local board of education, and the State Board of Education.").  As such, FAST itself is more akin to a public school in this way, which is not an entity capable of being sued.  See, e.g., Schick v. Bd. of Regents of Univ. Sys. of Ga., 779 S.E.2d 452, 453 n.1 (Ga. Ct. App. 2015) (noting that a Georgia public college was not a separate legal entity from its board, and therefore could not sue or be sued).

The Court also finds it telling that, in surveying Georgia case law concerning local charter schools, such cases are brought by or against the nonprofit entity which operates the charter school, rather than the charter school itself.  See Cobb Cnty. Sch. Distr. v. Learning Ctr. Found. of Cent. Cobb, Inc., 821 S.E.2d 127 (Ga. Ct. App. 2018) (considering a suit brought against the school district by the entity operating a local charter school); Atlanta Indep. Sch. Sys. v.

Atlanta Neighborhood Charter Sch., Inc., 748 S.E.2d 884 (Ga. 2013) (discussing a suit brought by a collection of non-profits operating local charter schools); DeKalb Cnty. Sch. Dist. v. DeKalb Agric. Tech. & Env't, Inc., 894 S.E.2d 646 (Ga. Ct. App. 2023), overruled on other grounds by Pollard v. Great Dane, LLC, 903 S.E.2d 338 (Ga. Ct. App. 2024) (involving a suit brought by seven incorporated entities operating various local charter schools); Greene Cnty. Dev. Auth. v. State, 770 S.E.2d 595 (Ga. 2015) (discussing an appeal brought by a nonprofit entity operating a local charter school).

Because it does not appear that FAST is anything more than the name of a charter school, the Court finds that FAST itself is not a body corporate with the capacity to sue or be sued. Accordingly, to the extent that FAST's Motion to Dismiss seeks dismissal of the claims against it on this basis, FAST's Motion [Doc. 60] is **GRANTED**.

### ii. Whether Plaintiffs should be permitted to amend their complaint.

In their response to FAST's Motion to Dismiss, Plaintiffs request that, if the Court finds that FAST is not an entity capable of being sued, they be allowed to amend the complaint to "correct any misnomer." [Doc. 72, pp. 17–18]. In response, FAST argues that the Court should reject Plaintiffs' request to amend because "Plaintiffs' assertion of claims against FAST [was] not an oversight," but

11

rather, that "Plaintiffs intentionally named FFI and FAST as separate entities and pursued a small sub-set of claims against FFI." [Doc. 92, p. 7 n.2]. FAST also argues that Plaintiffs were on notice that FAST was not a proper defendant because, in FFI's first Motion to Dismiss,[2] it stated that FAST and FFI were the same legal entity. Id.; [Doc. 17, p. 1 n.1].[3]

Pursuant to Rule 15(a)(2), a party seeking to amend its complaint when amending as a matter of course is not available may do so "only by leave of court or by written consent of the adverse party; and leave shall be freely given

---

[2] In response to Plaintiff's Original Complaint, FFI filed a Motion to Dismiss on behalf of both itself and FAST, titled "Founding Fourteen, Inc. d/b/a/ Fulton Academy of Science and Technology's Motion to Dismiss." [Doc. 17, p. 1].

[3] FAST also argues that the Court should not grant Plaintiffs' leave to amend their complaint because Plaintiffs failed to request amendment in the proper form. [Doc. 92, p. 7 n.2]. As an initial matter, the Court finds that this is not fatal to Plaintiffs' request, because it is within the Court's discretion to grant leave to amend *sua sponte*. See Fed. R. Civ. P. 15(a) (noting that a party may amend its pleading "only with the opposing party's written consent or the court's leave" and that the court "should freely give leave when justice so requires"). The Court acknowledges that, ordinarily, "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been properly raised." Rosenberg v. Gould, 554 F.3d 962, 967 (11th Cir. 2009) (quoting Posner v. Essex Ins. Co., 178 F.3d 1209, 1222 (11th Cir. 1999)). This is because, "[w]hen moving the district court for leave to amend its complaint, the plaintiff must 'set forth the substance of the proposed amendment or attach a copy of the proposed amendment' to its motion." Newton v. Duke Energy Fla., LLC, 895 F.3d 1270, 1277 (11th Cir. 2018) (quoting Cita Tr. Co. AG v. Fifth Third Bank, 879 F.3d 1151, 1157 (11th Cir. 2018)). Here, however, where Plaintiffs only seek to correct a misnomer and not necessarily the content of their claims, the Court finds that Plaintiffs have sufficiently set forth the substance of the proposed amendment in their request—namely, correcting the misnomer concerning FAST and FFI.

12

Case 1:23-cv-00799-JPB    Document 97    Filed 03/10/25    Page 13 of 20

when justice so requires." Smith v. Sch. Bd. of Orange Cnty., 487 F.3d 1361, 1366 (11th Cir. 2007) (quoting Fed. R. Civ. P. 15(a)).  With regard to the requirement that courts grant leave freely, the Supreme Court of the United States has made clear that "this mandate is to be heeded."  Foman v. Davis, 371 U.S. 178, 182 (1962).  However, the decision of whether to grant leave to amend a pleading is committed to the sound discretion of the trial court.  Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir. 1999).

Denial of leave to amend is only appropriate in the following circumstances: "(1) where there has been an undue delay, bad faith, dilatory motive or repeated failures to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile."  Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001).  Moreover, if a party seeks leave to amend after the deadline set forth in the Scheduling Order, the party must also show that the requested amendment meets the "good cause" standard as required under Federal Rule of Civil Procedure 16(b)(4).  To show good cause, a party must establish that, despite its diligence, the deadline could not be met.  Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1998) (citing Fed. R. Civ. P. 16 Advisory Committee's Note).

13

As to misnomer, "the 'misnomer rule' generally allows for correction of a defendant's name pursuant to Rule 15 at any time where a plaintiff has sued a defendant by an incorrect name." Williams v. DeKalb Cnty. Gov't, No. 12-CV-0705, 2014 WL 12997819, at *4 (N.D. Ga. June 30, 2014) (quoting Pears v. Mobile County, 645 F. Supp. 2d 1062, 1082 (S.D. Ala. 2009)).  Specifically, "Rule 15 allows amendment of a claim" to alter the name of either party "provided that the defendant will not be prejudiced in maintaining a defense on the merits and knows or should have known but for a mistake concerning the identity of the proper party, the action would have been brought against the proper party." Marco's Franchising, LLC v. Marco's Italian Exp., Inc., 239 F.R.D. 686, 687 (M.D. Fla. 2007).  "[T]he purpose of the rule is to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors." Id.  As such, "courts have routinely allowed a plaintiff to correct his pleadings under Rule 15 to designate a defendant's name properly, provided that the defendant has notice of the proceedings and knows or should know that the action was being brought against it." Pears, 645 F. Supp. 2d at 1083.

Here, the Court finds that granting Plaintiffs leave to amend their complaint to correct the misnomer as to FAST and FFI is appropriate.  Because the Court

did not establish until the date of this order that FAST is an entity that cannot be sued under Georgia law, Plaintiffs did not exhibit undue delay, bad faith or dilatory motive by failing to previously request to amend their complaint to name FFI, rather than FAST.  For the same reason, the Court finds that the Plaintiffs have met the good cause standard required by Rule 16.[4]  Moreover, the Court finds that FFI and other Defendants will not suffer prejudice, because allowing amendment solely to correct misnomer will not cause substantial delay.  See Holmes v. Nat'l R.R. Passenger Corp., No. 20-CV-00131, 2021 WL 9624563, at *2 (N.D. Ga. Nov. 8, 2021) ("[T]here is no prejudice to a party in having to litigate a case: 'the inquiry is whether prejudice results from the *delay*, not from having to continue to litigate the case.'" (quoting Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1357 (11th Cir. 2009)).  Moreover, as to FFI, it has had notice of this case—including the claims asserted against both it and FAST—since the outset.  Finally, the Court does not find, at this stage in the proceedings, that

---

[4] The Scheduling Order in this case incorporates by reference the "time limits for . . . amending the pleadings . . . as are set out in the Federal Rules of Civil Procedure and the Local Rules of this Court." [Doc. 55, p. 1].  Because Plaintiffs' instant request to amend their complaint falls past the time frame to amend as a matter of course, the Court also analyzes whether Plaintiffs have shown good cause to amend under Rule 16.  See Fed. R. Civ. P. 15(a)(1) (stating that a party may amend its pleading as a matter of course within twenty-one days of service or, for a responsive pleading, within twenty-one days of service of the responsive pleading or service of a motion under Rule 12(b), (e) or (f)).

Plaintiffs' claims as alleged against FFI would be futile.  See Montes v. M & M Mgmt. Co., No. 15-80142-CIV, 2015 WL 11254703, at *1 (S.D. Fla. May 12, 2015) ("[L]eave to amend should not be denied on the ground of futility unless the proposed amendment is clearly insufficient or frivolous on its face.").

Nevertheless, FAST argues that Plaintiffs should not be permitted leave to amend because their failure to name FFI as opposed to FAST was intentional. [Doc. 92, p. 7 n.2].  The Court finds the Eleventh Circuit Court of Appeals' opinion in Santiago v. Wood instructive here.  904 F.2d 673 (11th Cir. 1990) (per curiam).  In Santiago, the Eleventh Circuit considered whether a district court properly denied a *pro se* plaintiff's motion for reconsideration and her motion to amend where the plaintiff sought to amend her complaint after the district court entered an order granting summary judgment against her.  Id. at 674.  The plaintiff had filed an employment discrimination suit against her individual employers—who worked for the school—rather than the school board.  Id.  In denying the plaintiff leave to amend and denying her motion for reconsideration, the district court in Santiago noted that "the defendants raised the defense that they were not 'employers' within the meaning of Title VII in their answer to the complaint, and the plaintiff had failed to move to amend until after" the district court granted summary judgment against her.  Id. at 675.

16

On appeal, the Eleventh Circuit in Santiago reversed the district court's decision and found that, "[a]lthough the defendants did raise the defense that eventually won them summary judgment early in the[] proceedings, [the plaintiff was] not required to consider their arguments as properly stating the law." Id at 676.  The appellate court further noted that:

> [i]n the context of this case, where the school board has been providing a defense for the named defendants throughout the proceedings, and the substance of the plaintiff's claims would remain the same even if the school board were named as a defendant, the district court abused its discretion by failing to allow the plaintiff to amend her complaint.

Id.

Here, FFI received notice of this case—and, by extension, the claims asserted against both it and FAST—since the start of this action.  See [Doc. 5] (noting that FFI mailed in a waiver of service as to Plaintiffs' Original Complaint on February 28, 2023).  Further, to the extent they have appeared in filings both separately and together, FFI and FAST have been represented by the same counsel throughout this litigation.  See, e.g., [Doc. 17]; [Doc. 58]; [Doc. 60] (listing attorneys from Coles Barton LLP as counsel for FFI and FAST).  While FFI argued that it was not a separate entity from FAST in its first Motion to Dismiss, it did not argue that the claims against FAST should be dismissed on this ground, but rather, proceeded to respond to Plaintiffs' claims against both it and FAST. [Doc. 17].  Moreover,

17

Plaintiffs were "not required to consider [FFI's] arguments as properly stating the law." Santiago, 904 F.2d at 676.

Further supporting amendment in this case, the Court finds that the ends of justice will be best served by allowing Plaintiffs to correct their misnomer here. See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); see also Woldeab v. DeKalb Cnty. Bd. of Educ., 885 F.3d 1289, 1291 (11th Cir. 2018) ("A district court's discretion to deny leave to amend a complaint is 'severely restricted' by Fed. R. Civ. P. 15. . . ."). Plaintiffs assert several claims against FAST that they do not assert against FFI.[5] Thus, refusing to allow Plaintiffs to amend would effectively foreclose the non-overlapping claims against FAST without evaluating those claims on the merits. Given the Eleventh Circuit's "strong preference for deciding cases on the merits," the Court finds that allowing Plaintiffs to amend their complaint to correct the misnomer is appropriate. Perez v. Wells Fargo N.A., 774 F.3d 1329, 1332 (11th Cir. 2014). This is especially true where, as here, the properly

---

[5] Specifically, in the Amended Complaint, Plaintiffs assert only state law claims against FFI for negligent hiring (Count I) and for negligent supervision, retention and undertaking (Count III). [Doc. 51]. Against FAST, on the other hand, Plaintiffs assert claims for negligent hiring (Count II), negligent supervision, retention and undertaking (Count III), violation of substantive due process (Counts V and VI), violation of equal protection (Count VIII) and three counts for deliberate indifference under Title IX (Counts IX, X and XI). Id.

named party (FFI) has "been providing a defense for the named defendants throughout the proceedings, and the substance of [Plaintiffs'] claims would remain the same even if [FFI] were named as a defendant." Santiago, 904 F.2d at 676.

Accordingly, the Court finds that Plaintiffs should be given leave to amend their complaint to correct the misnomer concerning Defendants FFI and FAST.

## CONCLUSION

For the reasons stated herein, Defendant FAST's Motion to Dismiss [Doc. 60] is **GRANTED**. However, the Court will allow Plaintiffs leave to amend their complaint. Accordingly, the remaining pending Motions to Dismiss are **DENIED** without prejudice to refile in light of Plaintiffs' amended complaint.[6] [Doc. 58]; [Doc. 59]; [Doc. 61]; [Doc. 62]; [Doc. 63]; [Doc. 64]; [Doc. 65]; [Doc. 66]; [Doc. 67]; [Doc. 68]. Plaintiffs are **ORDERED** to file their amended complaint within seven days of the date of this order and are instructed to limit their amendment to correcting of the misnomer discussed herein. If Plaintiffs fail to file an amended

---

[6] The Court notes that many Defendants' arguments will not be materially affected in the event that Plaintiffs file an amended complaint correcting the misnomer. In regard to these unaffected Defendants, the parties are welcome to file the same motions, responses and reply briefs as were previously filed with the Court.

19

complaint within the time period set forth by this order, the Clerk is **DIRECTED** to resubmit the above-listed Motions to Dismiss.

**SO ORDERED** this 10th day of March, 2025.

_____
**J. P. BOULEE**
United States District Judge